**Pierce Bainbridge Beck Price & Hecht LLP**
Thomas D. Warren (SBN 160921)
Janine Cohen (SBN 203881)
355 S. Grand Ave., Suite 4400
Los Angeles, California 90071
Telephone: (213) 262-9333
twarren@piercebainbridge.com
jcohen@piercebainbridge.com

Jonathan A. Sorkowitz
(admission *pro hac vice* to be requested)
20 West 23rd Street, Fifth Floor
New York, New York 10010
Telephone: (212) 484-9866
jsorkowitz@piercebainbridge.com

Attorneys for Plaintiff and for the
proposed Class

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISA WINEBARGER,** on behalf of herself and all others similarly situated**,**<br><br>        Plaintiff,<br><br>        v.<br><br>**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY** and **NELNET, INC.**<br><br>        Defendants. | Case No.  2:19-cv-01503<br>Hon.<br><br>**CLASS ACTION COMPLAINT** |

1    Plaintiff Lisa Winebarger, on behalf of herself and all others
2  similarly situated, alleges the following against Defendants
3  Pennsylvania Higher Education Assistance Agency ("PHEAA") and
4  Nelnet, Inc. ("Nelnet"):

5  **I.   NATURE OF THE CASE**

6    1.    This class action seeks to rectify a pattern and practice by
7  Defendants of failing to credit student loan borrowers for qualifying
8  payments toward the Congressionally-mandated Public Service Loan
9  Forgiveness ("PSLF") program.  This practice contravenes Defendants'
10 duties under their servicing contracts with the federal government and
11 under applicable law, and it financially impairs thousands, if not
12 millions, of student loan borrowers eligible or potentially eligible for
13 debt relief under the PSLF program.

14   2.    Plaintiff Lisa Winebarger is a case in point.  She has diligently
15 made payments which meet all the statutory and regulatory
16 requirements to count as "qualifying payments" toward the 120
17 qualifying payments required for loan forgiveness under the PSLF
18 program.   However, PHEAA – which serves as the exclusive loan
19 servicer for borrowers actively pursuing PSLF – has furnished
20 Ms. Winebarger with vastly fluctuating payment counts that do not
21 reflect the full number of qualifying payments she has made.

22   3.    Ms. Winebarger now seeks to remedy the situation on behalf of
23 herself and those similarly situated, public servants who have borrowed
24 money to fund their education but have found their progress toward
25 promised loan forgiveness stymied by Defendants' negligence and
26 malfeasance.

27

28

**Class Action Complaint**

## II.  JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, which provides federal courts with jurisdiction over cases in which any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5.    Plaintiff is a resident of California.

6.    Defendant PHEAA is a public corporation headquartered in Pennsylvania.

7.    Defendant Nelnet is a corporation headquartered in Nebraska.

8.    In the aggregate, the claims of all class members exceed $5,000,000, exclusive of interest and costs, based on the allegations herein.  Given the value of the loans eligible or potentially eligible for forgiveness under the PSLF program (which run to the hundreds of billions of dollars), it is readily apparent that Defendants' negligence and malfeasance have caused much more than $5,000,000 in qualifying payments for PSLF to go uncredited.

9.    Additionally, this Court has federal-question jurisdiction over Plaintiff's claim under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367(a).

## III. PARTIES

*Plaintiff Lisa Winebarger*

10.    Plaintiff Lisa Winebarger is a public interest attorney who resides in Los Angeles, California.  She graduated from American University Washington College of Law in May 2012.

11.   Student loans for which the federal government is the lender and owner of the promissory note are called "Direct Loans." To finance law school, Ms. Winebarger borrowed a total original principal amount of $211,227 in Direct Loans. Specifically, Ms. Winebarger was issued $129,227 in Direct PLUS Loans; $34,000 in Direct Subsidized Loans; and $48,000 in Direct Unsubsidized Loans.

12.   Ms. Winebarger went to law school to become a public interest attorney and serve others. To cope with the heavy cost of law school, she planned to seek Public Service Loan Forgiveness, a federal program designed to incentivize public-sector and nonprofit work through the forgiveness of U.S.-government-disbursed student debt.

13.   Ms. Winebarger's first job after graduating from law school and passing the California bar exam was as Counsel for Compassion Over Killing. Compassion Over Killing is an advocacy organization that combats cruelty to animals in agriculture, and at all relevant times has been a tax-exempt nonprofit entity under section 501(c)(3) of the Internal Revenue Code. Ms. Winebarger was employed by Compassion Over Killing from April 1, 2013, to October 28, 2016.

14.   Ms. Winebarger left Compassion Over Killing to join Alliance for Children's Rights as a Staff Attorney in the Education Program. Alliance for Children's Rights is a legal services organization that protects the rights of impoverished, abused, and neglected children, and at all relevant times has been a tax-exempt nonprofit under section 501(c)(3) of the Internal Revenue Code. Ms. Winebarger was employed by Alliance for Children's Rights from October 31, 2016, to May 18, 2018.

15.   Ms. Winebarger left Alliance for Children's Rights to join The Greenfield Project, where she has been employed since June 4, 2018 as

Class Action Complaint

1   Program Director of Policy. The Greenfield Project is a policy
2   organization dedicated to improving agricultural practices, which has
3   at all relevant times been a tax-exempt nonprofit under section
4   501(c)(3) of the Internal Revenue Code.

5   16.    Ms. Winebarger made her first payment on her Direct Loans on
6   January 10, 2013.

7   17.    Ms. Winebarger has been enrolled in a PSLF-eligible income-
8   driven repayment ("IDR") plan for each of her Direct Loans since at
9   least April 2013.

10  *Defendant Pennsylvania Higher Education Assistance Agency*

11  18.    Defendant Pennsylvania Higher Education Assistance Agency
12  ("PHEAA") is a student loan servicer with headquarters located at 1200
13  North 7th Street, Harrisburg, Pennsylvania 17102.

14  19.    PHEAA is a public corporation organized under the laws of the
15  Commonwealth of Pennsylvania.  In 1963, the Pennsylvania legislature
16  created PHEAA as a public corporation with a mission to improve
17  higher education opportunities for Pennsylvanians by funding student
18  loans and grants.

19  20.    With respect to its loan-servicing activities described herein,
20  PHEAA acts autonomously as a commercial entity in the marketplace,
21  rather than as an arm of the Commonwealth of Pennsylvania.

22  21.    Over the decades since its founding, PHEAA has evolved into a
23  major commercial student loan servicer, servicing loans for millions of
24  borrowers nationwide that collectively comprise over a quarter of the
25  nation's $1.4 trillion in outstanding student loan debt.  This immense
26  business dwarfs PHEAA's statutory mandate to fund student loans and
27  grants for Pennsylvania residents.

28

**Class Action Complaint**

22.    According to its 2018 Annual Financial Report, which presents data through June 30, 2018, PHEAA services approximately $425 billion in student loans, including approximately $320 billion attributable to federal loan servicing.  Per the same report, PHEAA's noninterest revenue (*i.e.*, revenue not derived from interest received on student loans or investments, a significant portion of which is comprised of per-loan servicing fees) was $484,620,000 for the year ending June 30, 2018 and $519,031,000 for the year ending June 30, 2017.

23.    All of PHEAA's funds, including loan servicing revenues, "may be utilized at the discretion of the board of directors for carrying out any of the corporate purposes of the agency," and "no obligation of the agency shall be a debt of the [Commonwealth of Pennsylvania]."  24 Pa. Stat. § 5104(3).

24.    PHEAA's revenues and profits are so substantial that, since 1988, it has received no public appropriations and has operated as a private business that is financially independent of the Commonwealth of Pennsylvania.

25.    PHEAA has the power to sue and be sued, to enter into contracts, and to own, encumber, and dispose of property.

26.    Since 2009, PHEAA has been a servicer for loans owned by the United States government, pursuant to its contract with the U.S. Department of Education ("DOE").  PHEAA arranges for the extension, renewal, and continuation of credit, and participates in decisions regarding such transactions as an assignee of the original creditor, *i.e.* the U.S. government.

27.    In 2012, DOE awarded PHEAA an exclusive contract to manage two federal programs created by Congress to address the

**Class Action Complaint**

disconnect between the rising cost of higher education and society's need for skilled workers in low-paying but vital public sector jobs: the Teacher Education Assistance for College and Higher Education ("TEACH") Grant program, and the PSLF program. This action relates only to PHEAA's management of the PSLF program.

28.    PHEAA conducts its student loan servicing operations for federally-owned loans under the trade name FedLoan Servicing ("FedLoan").

*Defendant Nelnet*

29.    Defendant Nelnet, Inc. is a corporation organized under the laws of Nebraska. Nelnet is a student loan servicer with its principal executive offices located at 121 S. 13th Street, Suite 100, Lincoln, Nebraska. Shares in Nelnet trade publicly on the New York Stock Exchange under the ticker symbol NNI.

30.    Nelnet's subsidiaries Nelnet Servicing LLC ("Nelnet Servicing") and Great Lakes Educational Loan Services ("Great Lakes") are two of four private sector companies to which DOE awarded a contract to service student loans owned by DOE. Nelnet acquired Great Lakes in February 2018.

31.    According to Nelnet's most-recent Annual Report, as of year-end 2018 the company serviced, the federal student loans of 5.8 million borrowers by and through Nelnet Servicing, amounting to $179.5 billion of student loan debt, and a further 7.5 million borrowers and $232.7 billion of student loan debt through Great Lakes.

## IV. FACTUAL BACKGROUND

### A. Federal Student Loans

32.    The federal government provides student loans to American citizens to enable them to improve their lives through education,

1    regardless of their economic circumstances.    Millions have availed
2    themselves of federal-government-issued student loans in order to
3    invest in their education and improve their career options.

4        33.    DOE's program for disbursement of government-issued student
5    loans, known as the William D. Ford Federal Direct Loan Program, was
6    created in 1992.  Four types of Direct Loans are available under this
7    program:

8        •    Direct    Subsidized    Loans    are    made    to    eligible
9             undergraduate students who demonstrate financial need,
10            to help cover the costs of higher education at a college or
11            career school;

12       •    Direct    Unsubsidized    Loans    are    made    to    eligible
13            undergraduate,    graduate,    and    professional    students,
14            regardless of financial need;

15       •    Direct PLUS Loans, including Direct Parent PLUS
16            Loans, are made to graduate or professional students and
17            parents of dependent undergraduate students to help pay
18            for education expenses not covered by other financial aid,
19            regardless of financial need; and

20       •    Direct Consolidation Loans allow borrowers to combine
21            eligible federal student loans into a single loan with a
22            single loan servicer.

23       34.    Before 2010, the federal government also provided guarantees
24    to loans held by private institutions under the Federal Family
25    Education Loan ("FFEL") program.  The FFEL program was
26    discontinued by the Health Care and Education Reconciliation Act of
27    2010.  Once that law became effective, the Direct Loan program, rather
28    than federally guaranteed but privately held loans such as FFEL loans,

**Class Action Complaint**

1  has been the source of all new federal student loans (although private
2  lenders still issue private student loans independent of any government
3  backing).

4      35.   As of June 2018, over 33 million student-loan borrowers owed
5  approximately $1.1 trillion in Direct Loans.

6      36.   The federal government lends Direct Loans pursuant to Master
7  Promissory Notes ("MPN") owned by the federal government.   Each
8  borrower completes an MPN before loan proceeds are disbursed.

9      37.   MPNs are standardized for each loan type and, for a given loan
10  type (*i.e.* Direct Subsidized Loans, Direct Unsubsidized Loans, Direct
11  PLUS Loans or Direct Consolidation Loans), each borrower's MPN has
12  identical terms.

13      38.   The terms of all MPNs state that they are to be interpreted in
14  compliance with governing regulation and law applicable to the Direct
15  Loan program.

16  **B.    Repayment Plans**

17      39.   DOE regulations provide for a number of repayment plans for
18  Direct Loans.

19      40.   Borrowers repaying their loans under the Standard Repayment
20  Plan (fixed payments over ten years), Graduated Repayment Plan
21  (gradually-increasing  payments  over  ten  years),  or  Extended
22  Repayment Plan (fixed or graduated payments over 25 years) are not
23  eligible for PSLF.

24      41.   DOE  authorizes  a  number  of  Income-Driven  Repayment
25  ("IDR") plans, which are eligible for Public Service Loan Forgiveness.
26  These IDR plans include Pay-As-You-Earn ("PAYE"), Revised Pay-As-
27  You-Earn ("REPAYE"), Income-Based Repayment ("IBR"), and Income-
28  Contingent Repayment ("ICR").   Each of these plans calculates monthly

1  payments based on the borrower's income, in varying proportions, and
2  provides that after 20 or 25 years (depending on the plan), any
3  outstanding balances will be forgiven.

4  42.  To enroll in an IDR plan, a borrower must summit an IDR Plan
5  Request form prescribed by the DOE.

6  43.  Since required payment levels under IDR plans are calculated
7  based on a percentage of income, each year borrowers who have elected
8  an IDR plan must recertify their income level and family size by
9  submitting to their loan servicer a new IDR application and proof of
10  income.  Absent this recertification, all accrued interest is capitalized
11  (*i.e.* added to the borrower's principal loan balance) and the payment
12  level is reset to an amount consistent with the standard ten-year
13  repayment plan.

14  44.  When a loan servicer receives a timely IDR renewal request,
15  the servicer must "promptly" process the renewal and must in the
16  meantime "maintain the borrower's current scheduled monthly
17  payment amount."  34 C.F.R. § 685.221.

18  **C.  The Public Service Loan Forgiveness Program**

19  45.  Congress created the PSLF program in 2007, as part of the
20  College Cost Reduction and Access Act, 20 U.S.C. § 1087e(m) (the
21  "CCRAA").

22  46.  Under the PSLF program, a public service worker's Direct Loan
23  debt is forgiven entirely after 120 qualifying payments.  Per the CCRAA
24  and its implementing regulations, 34 C.F.R. § 685.219, a borrower "may
25  obtain loan forgiveness under [the PSLF] program" if the borrower
26  meets requirements including making "120 separate monthly payments
27  after October 1, 2007, on eligible Direct loans for which forgiveness is
28

**Class Action Complaint**

1     sought." 34 C.F.R. § 685.219(c). The 120 qualifying payments need not
2     be consecutive.

3         47.    A Direct Loan payment counts as a "qualifying payment"
4     toward PSLF when it is (i) for the full monthly amount due under the
5     qualifying payment plan; (ii) made within fifteen days of the due date;
6     (iii) made while the borrower is working for a "covered employer" (or
7     multiple covered employers) in full time position (defined as the greater
8     of the employer's definition of full time or thirty hours per week).
9     Covered employers include government organizations at any level, not-
10    for-profit organizations that are tax-exempt under Section 501(c)(3) of
11    the Internal Revenue Code, and non-tax-exempt not-for-profit
12    organizations whose primary purpose is to provide certain types of
13    qualifying public services.

14        48.    The MPN for each Direct Loan states:

15     **Public Service Loan Forgiveness**
16     A Public Service Loan Forgiveness (PSLF) program is also
        available. Under this program, we will forgive the remaining
17     balance due on your eligible Direct Loan Program loans after you
        have made 120 payments on those loans (after October 1, 2007)
18     under certain repayment plans while you are employed full-time
        in certain public service jobs. The required 120 payments do not
19     have to be consecutive. Qualifying repayment plans include the
        REPAYE Plan, the PAYE Plan, the IBR Plan, the ICR Plan, and
20     the Standard Repayment Plan with a 10-year repayment period.
21
22     **Note:** Although the Standard Repayment Plan with a 10-year
        repayment period is a qualifying repayment plan for PSLF, to
23     receive any loan forgiveness under this program you must make
        the majority of the required 120 payments under the REPAYE
24     Plan, the PAYE Plan, the IBR Plan, or the ICR Plan.

25        49.    The requirements for loan forgiveness under the PSLF are
26    illustrated by the following slides from a November 2018 DOE
27
28    presentation.

**Class Action Complaint**

1      a. This slide displays the requirements for loan forgiveness

2          generally:

3



b. This slide sets forth the requirements for a qualifying

payment:



1    c. This slide sets forth the requirements for qualifying
2       employment:



50.   The CCRAA's legislative history shows that in creating the PSLF program Congress intended to address the growing number of individuals choosing to forego public service due to historically-high debt burdens that were the inevitable outgrowth of higher education costs that had for many years vastly outpaced inflation.

51.   The Consumer Financial Protection Bureau estimates that up to 25 percent of the U.S. workforce is in qualifying employment and may be eligible for public-service-oriented student loan debt forgiveness programs.

52.   Unfortunately, the intended benefits of PSLF have, in large part, proven illusory.  The first borrowers under the PSLF program became eligible for loan forgiveness in October 2017, ten years after the program went into effect (*i.e.*, sufficient time for borrowers to have made

**Class Action Complaint**

1    120 qualifying payments).  But approximately 99% of borrowers who
2    applied for loan forgiveness in 2017 did not have their loans forgiven.

3    53.    According to a September 2018 report from the Government
4    Accountability Office entitled "Public Service Loan Forgiveness:
5    Education Needs to Provide Better Information for the Loan Servicer
6    and Borrowers," as of April 2018, only 55 applications for forgiveness
7    had been granted out of over one million borrowers who had sought loan
8    forgiveness under the PSLF program.

9    **D.    Defendants' Roles And Responsibilities As Loan**
10    **Servicers**

11    54.    The MPNs for each type of Direct Loan state that a third party
12    may service the loan, and they direct borrowers to their servicers for
13    loan-related issues, including repayment issues.

14    55.    DOE's website refers students to their loan servicers for
15    questions about their loans, asking, "[w]hy pay for help with your
16    federal student loans when your loan servicer will help you for FREE?
17    Contact your servicer to apply for income-driven repayment plans,
18    student loan forgiveness, and more."  The same page states:

19         A loan servicer is a company that handles the
20         billing and other services on your federal student
         loan. The loan servicer will work with you on
         repayment plans and loan consolidation and will
21         assist you with other tasks related to your federal
         student loan. It is important to maintain contact
22         with your loan servicer. If your circumstances
         change at any time during your repayment
23         period, your loan servicer will be able to help.

24    DOE also recommends, "[i]f you're no longer in school, contact your loan
25    servicer when you … need help making your loan payment; have a
26    question about your bill; or have other questions about your student
27    loan."    Federal Student Aid, "Loan Servicers" (*available at*
28

**Class Action Complaint**

1    https://studentaid.ed.gov/sa/repay-loans/understand/servicers)    (last
2    accessed February 28, 2019).

3        56.    Defendants hold themselves out as sources of information and
4    guidance to borrowers with respect to their Direct Loans and, in the
5    case of PHEAA, with respect to PSLF.  For example:

6            a. Nelnet's website asserts that the company "works with
7               [DOE] to help you achieve your educational goals,"
8               explaining that "we provide customer service on your federal
9               student loans, so we answer your questions, offer solutions
10              if your having trouble paying, and process your payments."

11           b. Nelnet's website asserts that the company is "here for"
12              student loan borrowers who have questions regarding their
13              loans, and offers extensive answers to borrowers' frequently
14              asked questions – including pages dedicated to IDR options
15              and PSLF.  Nelnet also makes available a call center to
16              address borrowers' questions and concerns.

17           c. In its public filings with the Securities and Exchange
18              Commission, Nelnet asserts that it "has designed its
19              servicing operations to comply with the Higher Education
20              Act" and "related laws, rules, regulations, and policies,"
21              which "regulate[] every aspect of the federally insured
22              student loan program," further asserting that the company
23              "regularly monitors [its] operations to maintain compliance."

24           d. PHEAA's (FedLoan's) website invites borrowers to "[c]ontact
25              a PSLF Specialist," and states, "[w]e are here to help you
26              with every step of the process. Contact one of our Public
27              Service Loan Forgiveness specialists at 855-265-4038 for
28              more information."

e. In the notice that PHEAA (FedLoan) sends to borrowers who have been newly transferred to PHEAA as their servicer, PHEAA (FedLoan) states "[w]e will calculate and provide you with notification of the number of qualifying payments you have made during the period(s) of qualifying employment, the estimated number of payments that are still required, and the date you are expected to be eligible to apply for forgiveness."

f. Billing statements from PHEAA (FedLoan) contain a legend stating the following: "Do you work in Public Service?  Your qualifying employment may make you eligible for loan forgiveness on your Direct Loans.  Learn more about eligibility for Public Service Loan Forgiveness (PSLF) at MyFedLoan.org/PSLF."

g. PHEAA advertises a dedicated Office of Consumer Advocacy, which it claims provides "assistance to consumers with problems and concerns related to their student loans that are owned or serviced by PHEAA."  PHEAA promises that "knowledgeable analysts will listen to and investigate [a user's] concerns and serve as [a] liaison with PHEAA's operational staff regarding [the] issue."  PHEAA further claims that it "strives to ensure that every consumer is treated fairly and that information regarding [ ] student loan(s) is communicated accurately, effectively, and professionally."

57.  As the exclusive servicer for the loans of public-servant borrowers tracking toward PSLF, PHEAA (acting as FedLoan Servicing) is responsible for managing all aspects of borrowers'

**Class Action Complaint**

interaction with the PSLF program, guiding borrowers in pursuing employment certification, evaluating borrowers' qualifying payments, and submitting borrowers' loan forgiveness applications to DOE.

58.    Borrowers seeking loan forgiveness under the PSLF program may submit Employment Certification Forms ("ECF") to DOE to confirm that their current employment qualifies as public service employment under the PSLF program.  Borrowers are not required to submit these forms before they apply for loan forgiveness under the PSLF program but may choose to do so to track their progress towards loan forgiveness.

59.    Aside from this ECF process, PSLF borrowers may not interact directly with DOE regarding PSLF, and must instead turn to PHEAA for service and support related to PSLF.  A borrower's submission of an ECF to DOE triggers a process whereby PHEAA (FedLoan) takes over the servicing of that loan.  From that point forward, PHEAA (FedLoan) is the sole point of contact for borrowers who seek PSLF.  PHEAA collects payments on behalf of the federal government and periodically reports to borrowers the number of qualifying payments the borrower has made toward PSLF.

60.    Where a borrower has indicated an intention to seek PSLF by filing an Employment Certification Form, PHEAA provides periodic statements summarizing the payments made by a borrower to date on that borrower's PHEAA-serviced loans, and it characterizes whether each payment qualifies for PSLF.

61.    Once a borrower has made 120 qualifying monthly payments, they must complete a PSLF application in order to receive loan forgiveness.  DOE relies on PHEAA's determinations in evaluating whether to grant loan forgiveness with respect to individual student

borrowers.   Because of this, borrowers who receive statements from PHEAA which tell them they have fewer than 120 qualifying payments justifiably rely on these representations in waiting until they have 120 payments credited by PHEAA, correct or not, to apply for PSLF.

**E.      Defendants'     Obligations     Under     Their     Servicing Contracts**

62.   In 2009, DOE awarded contracts to PHEAA and Nelnet to service Direct Loans (the "Servicing Contracts").   These contracts impose a number of obligations on Defendants that govern their dealings with student borrowers.

63.   The Servicing Contracts, the terms of which continue to apply today, make clear that Defendants are obligated to service Direct Loans in a manner that would allow for proper and accurate accounting of qualifying payments under the PSLF program.   For example, the Servicing Contracts:

   a. State that Defendants "will be required to meet all statutory and legislative requirements;"

   b. Mandate that Defendants implement "[s]pecific compliance activities," including but not limited to "a system of internal controls consistent with federal laws, regulations, policies and authoritative guidance;"

   c. Require Defendants to "provide innovative measures," and for "incentives [to] be based on performing assets, rather than transaction or activity based delinquency incentives;"

   d. Ensure that Defendants "will be responsible for maintaining a full understanding of all federal and state laws and regulations and FSA requirements and ensuring that all

**Class Action Complaint**

1    aspects of the service continue to remain in compliance as

2    changes occur;" and

3    e. Require Defendants to have "a service flexible enough to

4    handle new requirements generated by Congress and

5    respond to legislative mandates and policy changes."

6    64.   The Servicing Contracts also make clear that Defendants are

7    obligated to service loans for the benefit of borrowers.  For example, the

8    Servicing Contracts state that "the intent of the Department [is] to

9    procure a performance-based contract(s) that . . . provides best of

10    business services.  To achieve this goal, the Department expects each

11    servicer to provide commercially available services that will yield high

12    performing portfolios and high levels of customer satisfaction."

13    65.   DOE and Defendants entered into, and subsequently modified

14    in 2014, the Servicing Contracts for the benefit of the borrowers.

15    According to DOE's August 29, 2014 press statement on the 2014

16    servicing contract modification, DOE:

17    renegotiated the terms of its contracts with
      federal student loan servicers [including
18    Defendants] in order to strengthen incentives for
      them to provide excellent customer service and
19    help borrowers stay up-to-date on their
      payments. This action will help ensure that
20    borrowers receive the highest quality support as
      they repay their federal student loans and help
21    [DOE] better monitor the performance of loan
22    servicers to help them continue to improve."

23    66.   Borrowers, including Plaintiffs and all those similarly situated,

24    are thus intended third-party beneficiaries of the Servicing Contracts.

25    67.   The Servicing Contracts contain no provision disclaiming the

26    intent to benefit borrowers, including Plaintiff and all those similarly

27    situated, as third-party beneficiaries.

28

1    68.    In addition to its obligations under the Servicing Contract,
2    PHEAA has taken on additional contractual responsibilities to
3    borrowers pursuant to its exclusive contract with DOE to "handle day-
4    to-day activities associated" with the PSLF program.    These
5    responsibilities include responding to borrower inquiries, making
6    preliminary determinations about whether borrowers' employment and
7    loans qualify for PSLF, and processing loan forgiveness applications.

8    **F.    Defendants' Pattern and Practice of Undercrediting**
9    **Qualifying Payments for PSLF Borrowers**

10    69.    The federal government compensates Defendants based on the
11    volume of loans they service.    The more loans Defendants service at any
12    given time, the more revenue they collect.    It is therefore in Defendants'
13    interest to service each loan for as long as possible.    This incentivizes
14    Defendants to delay borrowers' eligibility for loan forgiveness.    For
15    instance, PHEAA has an economic incentive to not credit qualifying
16    payments under the PSLF program, as each qualifying payment toward
17    the required 120 brings PHEAA a step closer to losing one of the loans
18    that it services.    The time horizon for forgiveness is longer for a non-
19    PSLF IDR repayment plan, but there is a similar incentive to avoid or
20    delay loan forgiveness under these plans as well.

21    70.    In June 2017, the Consumer Financial Protection Bureau
22    ("CFPB") released a report that chronicled the problems that public
23    servants face as they attempt to repay their education loans.

24    71.    The CFPB's report includes an analysis of the extensive
25    database of borrower complaints to CFPB.    CFPB found that many
26    borrowers who attempt to repay their student loans encounter industry
27    practices that delay, defer, or deny access to critical consumer
28    protections such as the PSLF program.

**Class Action Complaint**

72.   In particular, CFPB identified:

    a.  Servicers that did not tell borrowers that they qualify for PSLF;

    b.  Problems enrolling in and recertifying income under IDR plans;

    c.  Problems related to payment processing;

    d.  Problems with allocation of payments, either across multiple loans or to principal and interest for a single loan;

    e.  Servicers that fail to provide borrowers with access to accurate and actionable information to avoid default.

73.   Public servants who pursue PSLF commonly encounter miscalculation of their payments.  These borrowers often find that they have been credited with fewer – in many cases far fewer – qualifying payments than they actually have made.   PHEAA frequently tells borrowers that years of payments do not qualify for PSLF even though those payments comply with the applicable regulations.

74.   CFPB's report specifically identifies this pattern and practice of inaccurate qualifying payment counts:

> **Borrowers complain that upon submitting their ECF, their servicer provides inaccurate counts of qualified payments made by borrowers.** If an ECF submitted by a borrower is approved for qualified employment, the servicer will then review the account to provide an up-to-date count of qualified payments made for purposes of PSLF. This review allows borrowers to monitor their progress towards PSLF, and if necessary, alert their servicer to issues related to their qualified payments prior to applying for PSLF. Borrowers complain that when their servicer reports a qualified payment count that borrowers believe to be inaccurate, borrowers struggle to get their

servicer to correct the error or explain why payments were not qualified.

75.    In its reports, statements, and other communications to borrowers pursuing PSLF, PHEAA routinely miscounts, or fails to denote, qualifying payments, which lengthens the time before a borrower reaches 120 payments and thus forces the borrower to overpay.

76.    PHEAA routinely deprives borrowers of "qualifying" status on their payments.    For example, PHEAA regularly fails to credit qualifying payments or miscalculates the number of qualifying payments a borrower has made.

77.    PHEAA also regularly miscounts payments made by borrowers in "paid ahead" status – where a borrower pays more than their repayment plan requires, thereby reducing the amount required for the following month.  In such cases, PHEAA does not credit both payments towards forgiveness.

78.    These errors are the result of PHEAA's own negligence and malfeasance during the time PHEAA serviced the loan.  In certain instances, for example that of Ms. Winebarger, these errors are also the result of the negligence and malfeasance of prior loan servicer Nelnet, which was responsible for servicing certain loans prior to transfer to PHEAA, and from whom PHEAA acquired loan data and records when it took on responsibility for servicing PSLF-eligible loans of previously-Nelnet-serviced borrowers.

79.    Undercounting of qualifying payments causes borrowers to suffer injury. When borrowers are not given credit toward PSLF for qualifying payments, they are forced to make more than 120 qualifying payments before their remaining loan balances are forgiven.

**Class Action Complaint**

80.    Moreover, undercounts and general uncertainty regarding the timing of PSLF eligibility prevents borrowers from being able to make rational and informed decisions as they weigh whether and when to consider private sector (i.e. non-PSLF-eligible) employment.

**G.    Plaintiff's Qualifying Payments Are Repeatedly Miscounted, And Defendants' Negligence And Malfeasance Cause Additional Payments To Not Be Counted As "Qualifying"**

81.    Plaintiff began making payments toward her Direct Loans in January 2013.

82.    She has received statements from PHEAA which misstate the number of qualifying payments she has made.  Indeed, the number of qualifying payments that PHEAA credits to Plaintiff has fluctuated wildly.

83.    Plaintiff's loans were initially serviced by ACS Education Services (now known as Conduent).  She was approved for an IDR plan in April 2013, and made her first qualifying payment toward PSLF in May 2013 while working for Compassion Over Killing.

84.    Plaintiff made two on-time payments for the full amount quoted on her loan statement while working in non-profit employment (*i.e.* two qualifying payments toward PSLF) in May 2013 and June 2013.

85.    In July 2013, Plaintiff's loans were transferred to a new servicer: Nelnet.

86.    Immediately upon transfer to Nelnet, Plaintiff's loans were placed in a 60-day administrative forbearance.  That forbearance, which was not communicated to Plaintiff at the time, ended in or about September 2013.

87.    In September 2013, while her loans were still under administrative forbearance, Plaintiff made a full monthly payment on her Direct Loans, an action she took out of an abundance of caution having received no communication from Nelnet.  Although Plaintiff was employed full-time at a covered employer at the time of this payment, and although the administrative forbearance was (unbeknownst to Plaintiff) set to expire in short order, the forbearance is a technicality that allows for the payment not to be counted as "qualifying." Compounding the harm, the payment while under forbearance put Plaintiff into "paid ahead" status, meaning that she was not billed for December 2013 and could not make a qualifying payment for that month.

88.    Between September 2013 and July 2016, Plaintiff made 33 additional qualifying payments, for a total of 35 to that point.

89.    On July 13, 2016, Plaintiff submitted an Employment Certification form for PSLF.  In August 2016, Plaintiff's loans were transferred to PHEAA (FedLoan).

90.    On or about December 13, 2016, Plaintiff submitted an ECF that certified that her July 28, 2016 payment occurred while she was employed full-time for a covered employer (and thus that the payment was a "qualifying payment").  PHEAA, however, continues not to count this payment as qualifying, despite PHEAA's verbal confirmation to Plaintiff that its records indicate that she has a submitted valid ECF for the time period at issue.

91.    After the transfer to PHEAA and through October 1, 2018, Plaintiff made 24 on-time payments for the full amount quoted on her loan statement, while working full time for a covered employer.  This raised the number of her qualifying payments toward PSLF to 59.

92.   In January 2018, without any notice to or permission from Plaintiff, PHEAA (FedLoan) placed Plaintiff's loans into a so-called "disaster forbearance."  Fortuitously, Plaintiff happened to notice the change in status and to have it removed in time for her next billing cycle, but on information and belief other members of the Class did come to make fewer qualifying payments due to PHEAA's implementation of, and failure to communicate, unnecessary disaster forbearances.

93.   In October 2018, Plaintiff's billing statement from PHEAA (FedLoan) stated that she had made 54 qualifying payments toward PSLF, four less than the correct total.  Plaintiff made another qualifying payment in October 2018.

94.   In November 2018, Plaintiff's billing statement from PHEAA (FedLoan) reflected only 20 qualifying payments toward PSLF. Plaintiff made another qualifying payment in November 2018.

95.   In December 2018, Plaintiff's billing statement PHEAA (FedLoan) reflected 26 qualifying payments toward PSLF.

96.   Plaintiff has been harmed by Defendants' failures to properly service her loans, in particular their failures to communicate significant changes in status, and their failures to properly maintain information pertinent to PSLF.  Because of the latter failures, Plaintiff has been credited with fewer qualifying payments than she actually made.  In addition, Defendants' failures to communicate have caused Plaintiff to have fewer opportunities to make qualifying payments that, absent those failures, she otherwise would have made.

97.   Plaintiff has been harmed by the failure to credit her with the correct number of qualifying payments.  As of early February 2019, Plaintiff has made at least 59 on-time payments for the full amount billed by her loan servicer under a qualifying payment plan, while

working for a covered employer.  Yet Plaintiff had received credit for only 26 such payments as of December 2018.  Based on this disparity, and assuming all future payments are properly counted, Plaintiff will be required to make more than 150 payments in order to receive credit for the 120 payments required for forgiveness of her remaining loan balance, causing her injury in the amount of her last 37 student loan payments.

98.    The inconsistencies and inaccuracies in Plaintiff's qualifying payment count have also harmed Plaintiff in that she has been unable to make rational and informed decisions as to whether and when to consider private sector (i.e. non-PSLF-eligible) employment.  Given the large amount of interest that has accrued during the nearly six years she has been on the PSLF track, Plaintiff does not realistically have the freedom to look beyond employment at PSLF-eligible covered employers until her loan is forgiven.  The timing of this event is now highly uncertain as a result of Defendants' negligence and malfeasance.

**H.    Equal Credit Opportunity**

99.    PHEAA services billions of dollars in loans held by it and by private institutions separate and apart from the PSLF program.

100. PHEAA's pattern and practice of miscalculating and undercrediting PSLF qualifying payments affects public servants seeking PSLF for Direct Loans but does not affect other borrowers whose loans are serviced by PHEAA.

101. PHEAA's pattern and practice of miscalculating and undercrediting PSLF qualifying payments constitutes disparate treatment of borrowers seeking to improve their financial situation through public service loan forgiveness.

102. PHEAA's pattern and practice of miscalculating and undercrediting PSLF qualifying payments has a disparate impact on borrowers seeking to improve their financial situation through public service loan forgiveness.

103. Public service loan forgiveness under the College Cost Reduction and Access Act constitutes income from a public assistance program. Although the IRS has specifically exempted loan forgiveness from PSLF in particular from income taxation, canceled or forgiven debt is generally considered income.

104. Decisions by PHEAA whether to credit payments for PSLF, and its issuance of statements to borrowers like Plaintiff that set forth these decisions, are aspects of a credit transaction, *i.e.* the borrowing of Direct Loans by students and their repayment of same.

# V.    CLASS ACTION ALLEGATIONS

105. Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of herself and all other similarly situated individuals, as defined below.

106. The Class shall be defined as:

> All individuals who (1) are borrowers under the William D. Ford Direct Loan Program; (2) have had at least one loan serviced by PHEAA (acting in its own name or as FedLoan Servicing) since 2007 (the "Loan(s)"); (3) have made one or more qualifying payments toward the Loan(s), as set forth in 34 C.F.R. § 685.209(c)(4) (the "Qualifying Payment(s)"); and (4) have been credited by PHEAA with fewer Qualifying Payments than the individual borrower has actually made.

107. The Nelnet Sub-Class shall be comprised of all members of the Class whose Loans affected by undercounting of Qualifying Payments were at any time serviced by Defendant Nelnet.

108.  The California Sub-Class shall be comprised of all members of the Class residing in California when they made any Qualifying Payment(s).

109.  The California Nelnet Sub-Class shall be comprised of all members of the Nelnet Sub-Class who made any Qualifying Payment(s) to Defendant Nelnet while residing in California.

110.  Excluded from the Class are Defendants, any of Defendants' past or present officers, directors, employees, agents, or affiliates, any judge who presides over this action, and all counsel of record.

111.  Plaintiff reserves the right to expand, limit, modify or amend the Class or Sub-Class definitions, and the right to introduce additional Sub-Classes as may be desirable or appropriate.

112.  <u>Numerosity</u>.  The Class is so numerous and geographically dispersed that the joinder of all Class members is impracticable.  There are at least thousands of members of the Class.

113.  <u>Ascertainability</u>.  Class members may be identified through objective means and notified of this action by recognized methods of notice, such as by mail, email, or publication in print or on the Internet.

114.  <u>Commonality and Predominance</u>.  This action implicates common questions of law and fact which predominate over the individual issues of each Class member.  The questions of law or fact common to the class are substantially similar. Common questions include:

      a.  Whether Defendants exhibit a pattern and practice of undercrediting and/or miscounting qualifying payments with respect to Direct Loan borrowers;

      b.  Whether Defendants exhibit a pattern and practice of failing to maintain accurate records of information

1    pertinent to PSLF, including but not limited to payment
2    timing, payment amounts, employment status, and
3    repayment plan type.
4    c. Whether PHEAA's determinations as to qualifying
5    payments are relied upon by the DOE in granting or
6    denying applications for PSLF;
7    d. Whether PHEAA's undercounting of qualifying payments is
8    motivated by its incentive to keep a high volume of serviced
9    loans;
10    e. Whether members of the Class and/or the Sub-Classes have
11    been injured by Defendants' negligence or malfeasance.

12    115. Typicality. Plaintiff is typical of the members of the Class and
13    of all Sub-Classes described above. She is a Direct Loan borrower and
14    California resident who has been injured by failure to credit payments
15    Qualifying Payments that she has made toward PSLF.

16    116. Adequacy. Plaintiff is an adequate representative of the Class
17    and all Sub-Classes because she is a member of the Class and all Sub-
18    Classes and is committed to pursuing this matter to obtain relief for
19    herself, the Class, and all Sub-Classes. Plaintiff has no conflict of
20    interest with the Class. Plaintiff's attorneys are competent and
21    experienced in class action litigation and are free of conflicts of interest.
22    Plaintiff and her undersigned counsel will fairly and adequately
23    represent the interests of the Class and all Sub-Classes.

24    117. Superiority. Class action treatment is superior to individual
25    adjudication of this controversy with respect to each Class member. The
26    amount in controversy with respect to each Class member's qualifying
27    payments not credited by PHEAA is sufficiently small as to make
28    individual actions impracticable in the face of the cost and burden of

Class Action Complaint

1  such litigation.  Moreover, Class members are public servants who

2  borrowed money to further their education; it may be fairly inferred

3  that by and large they are people of modest means unlikely to pursue

4  individual actions.

5  118. <u>General Applicability</u>.  PHEAA's conduct in undercrediting

6  qualifying payments toward PSLF is generally applicable to the Class

7  as a whole.

8  119. <u>Classwide Equitable Relief</u>.  PHEAA and Nelnet have acted or

9  refused to act on grounds that apply generally to, respectively, the Class

10  and the Nelnet Sub-Class, such that final injunctive relief or

11  corresponding declaratory relief is appropriate respecting the Class and

12  the Nelnet Sub-Class as a whole.

13  **VI.  CAUSES OF ACTION**

14  **<u>First Cause of Action</u>**

15  **Negligence,**
**against PHEAA on behalf of Plaintiff and the Class, and**
16  **against Nelnet on behalf of Plaintiff and the Nelnet Sub-Class**

17  120.  Plaintiff incorporates the allegations set forth in paragraphs 1

18  through 119 as if fully set forth herein.

19  121.  Defendants exhibit a pattern and practice of failing to credit,

20  and/or failing to keep data and records sufficient to allow accurate

21  crediting of, payments which meet the requirements set forth by

22  Congress and DOE for qualifying payments under the PSLF program.

23  122.  Defendants have a duty of care to Plaintiff and the Class and/or

24  the Nelnet Sub-Class to use reasonable care in counting qualifying

25  payments toward PSLF, communicating significant information to

26  borrowers, maintaining accurate records of payment timing and

27  amounts, and/or maintaining accurate records of other information

28

1    pertinent to qualifying payment eligibility including employment status
2    and repayment plan type.  This duty of care arises from the servicing
3    contracts between Defendants and the federal government; Defendants'
4    status as an agent of the federal government in its collection of
5    payments under the Master Promissory Notes under which loans are
6    disbursed to student borrowers; the federal regulations governing
7    qualifying payments; the Pennsylvania Fair Credit Extension
8    Uniformity Act, 73 Pa. Stat. § 2270.4(b)(5); and/or the common law duty
9    to prevent foreseeable harm.

10    123.  Defendants' patterns and practices of failing to properly credit
11    qualifying payments toward PSLF, failing to communicate significant
12    information to borrowers, and/or failing to properly maintain accurate
13    records pertinent to PSLF breached, and continue to breach, the
14    applicable standard of care.

15    124. Plaintiff and the Class have been harmed as a direct and
16    proximate result of PHEAA's breach of the applicable standard of care.
17    Plaintiff and the Nelnet Sub-Class have been harmed by Nelnet's
18    breach of the applicable standard of care.

19    125. In particular, Plaintiff, the Class, and the Nelnet Sub-Class
20    will be required to make more student loan payments than they
21    otherwise would have to make because they have not been credited with
22    the full amount of qualifying payments that they have made.  Moreover,
23    because of the failure to credit the full amount of qualifying payments,
24    Plaintiff, the Class, and the Nelnet Sub-Class are unable to make
25    rational and informed decisions as they weigh whether and when to
26    consider private sector (i.e. non-PSLF-eligible) employment.

27

28

## <u>Second Cause of Action</u>

### Breach of Fiduciary Duty,
**against PHEAA on behalf of Plaintiff and the Class, and against Nelnet on behalf of Plaintiff and the Nelnet Sub-Class**

126. Plaintiff incorporates the preceding allegations as if fully set forth herein.

127. Defendants owe a fiduciary duty to borrowers whose loans they service. Defendants are not merely passive administrators of borrowers' loans. Rather, Defendants hold themselves out, and the federal government holds Defendants out, as trustworthy custodians of borrowers' interests with respect to their student loans.

128. By failing to accurately count qualifying payments toward PSLF, communicate significant information to borrowers, maintain accurate records of payment timing and amounts, and/or maintain accurate records of other information pertinent to qualifying payment eligibility including employment status and repayment plan type, PHEAA breached its fiduciary duty to Plaintiff and the Class, and Nelnet breached its fiduciary duty to Plaintiff and the Nelnet Sub-Class.

129. Plaintiff and the Class have been harmed as a direct and proximate result of PHEAA's breach of its fiduciary duties. Plaintiff and the Nelnet Sub-Class have been harmed by Nelnet's breach of its fiduciary duties.

130. In particular, Plaintiff, the Class, and the Nelnet Sub-Class will be required to make more student loan payments than they otherwise would have to make because they have not been credited with the full amount of qualifying payments that they have made. Moreover, because of the failure to credit the full amount of qualifying payments, Plaintiff, the Class, and the Nelnet Sub-Class are unable to make

1  rational and informed decisions as they weigh whether and when to

2  consider private sector (i.e. non-PSLF-eligible) employment.

3  **Third Cause of Action**

4  **Breach of Contract,**
**against PHEAA on behalf of Plaintiff and the Class, and**

5  **against Nelnet on behalf of Plaintiff and the Nelnet Sub-Class**

6  131.  Plaintiff incorporates the preceding allegations as if fully set

7  forth herein.

8  132.  Defendants' Servicing Contracts with DOE make clear that the

9  Contracts are entered into for the benefit of student borrowers such as

10  Plaintiff, the Class, and the Nelnet Sub-Class.  Statements by DOE and

11  Defendants confirm this, as set forth above.   DOE contracts with

12  Defendants specifically to service the loans of student borrowers.

13  133.  Plaintiff, the Class, and the Nelnet Sub-Class are intended

14  third-party beneficiaries of Defendants' Servicing Contracts with the

15  federal government.

16  134.  PHEAA breached its obligation under the Servicing Contracts

17  to Plaintiff and the Class, and Nelnet breached its obligation under the

18  Servicing Contracts to Plaintiff and the Nelnet Sub-Class, by failing to

19  accurately count qualifying payments toward PSLF, communicate

20  significant information to borrowers, maintain accurate records of

21  payment timing and amounts, and/or maintain accurate records of

22  other information pertinent to qualifying payment eligibility including

23  employment status and repayment plan type.

24  135.  These failures constitute breaches of Defendants' contractual

25  duties to (1) provide competent loan servicing, (2) provide proper

26  customer service, and (3) comply with all applicable laws and

27  regulations.

28

136. Plaintiff and the Class have been harmed as a direct and proximate result of PHEAA's breach of its obligations to Plaintiff and the Class under its Servicing Contract.  Plaintiff and the Nelnet Sub-Class have been harmed by Nelnet's breach of its obligations to Plaintiff and the Nelnet Sub-Class under its Servicing Contract.

137. In particular, Plaintiff, the Class, and the Nelnet Sub-Class will be required to make more student loan payments than they otherwise would have to make because they have not been credited with the full amount of qualifying payments that they have made.  Moreover, because of the failure to credit the full amount of qualifying payments, Plaintiff, the Class, and the Nelnet Sub-Class are unable to make rational and informed decisions as they weigh whether and when to consider private sector (i.e. non-PSLF-eligible) employment.

### **Fourth Cause of Action**

**Breach of Implied-in-Fact Contract,**
**against PHEAA on behalf of Plaintiff and the Class, and**
**against Nelnet on behalf of Plaintiff and the Nelnet Sub-Class**

138. Plaintiff incorporates the preceding allegations as if fully set forth herein.

139. Defendants each held themselves out as a source of sound information and counseling with respect to student loans, and each acquiesced in DOE's statements that Defendants would be a source of sound information and counseling with respect to student loans.  In so doing, PHEAA created an implied in-fact-contract with Plaintiff and the Class, and Nelnet created an implied-in-fact contract with Plaintiff and the Nelnet Sub-Class.

140. Under this implied-in-fact contract, student loan borrowers placed their loan(s) to be serviced by PHEAA or Nelnet in exchange for which PHEAA or Nelnet, among other things, committed to provide

sound information and counseling with respect to student loans, to comply with applicable laws and regulations, and to maintain accurate records of information pertinent to PSLF.

141.  PHEAA breached its obligation to Plaintiff and the Class, and Nelnet breached its obligation to Plaintiff and the Nelnet Sub-Class, under this implied-in-fact contract by failing to accurately count qualifying payments toward PSLF, communicate significant information to borrowers, maintain accurate records of payment timing and amounts, and/or maintain accurate records of other information pertinent to qualifying payment eligibility including employment status and repayment plan type.

142.  These failures constitute breaches of Defendants' implied-in-fact contractual duties to (1) provide competent loan servicing, (2) provide proper customer service, and (3) comply with all applicable laws and regulations.

143.  Plaintiff and the Class have been harmed as a direct and proximate result of PHEAA's breach of its obligations to Plaintiff and the Class under this implied-in-fact contract.  Plaintiff and the Nelnet Sub-Class have been harmed by Nelnet's breach of its obligations to Plaintiff and the Nelnet Sub-Class under this implied-in-fact contract

144.  In particular, Plaintiff, the Class, and the Nelnet Sub-Class will be required to make more student loan payments than they otherwise would have to make because they have not been credited with the full amount of qualifying payments that they have made.  Moreover, because of the failure to credit the full amount of qualifying payments, Plaintiff, the Class, and the Nelnet Sub-Class are unable to make rational and informed decisions as they weigh whether and when to consider private sector (i.e. non-PSLF-eligible) employment.

**Fifth Cause of Action**

**Violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691e,
against PHEAA on behalf of Plaintiff and the Class**

145.  Plaintiff incorporates the preceding allegations as if fully set forth herein.

146.  PHEAA's pattern and practice of failing to credit toward PSLF borrowers' qualifying payments that meet applicable legal and regulatory standards constitutes discrimination against applicants for credit with respect to an aspect of a credit transaction because part of the applicant's income derives from a public assistance program.

147.  Loan forgiveness is a form of income.

148.  The PSLF program is a public assistance program.  It was established by Congress to aid borrowers whose earnings are limited because they work in public service occupations.

149. PHEAA's pattern and practice of miscalculating and undercrediting PSLF qualifying payments constitutes disparate treatment of borrowers who seek PSLF, as compared with other borrowers whose loans are serviced by PHEAA.

150. PHEAA's pattern and practice of miscalculating and undercrediting PSLF qualifying payments has a disparate impact on borrowers who seek PSLF, as compared with other borrowers whose loans are serviced by PHEAA.

151.  Plaintiff and the Class have been harmed as a direct and proximate result of PHEAA's discrimination against PSLF borrowers.

152.  In particular, Plaintiff and the Class will be required to make more student loan payments than they otherwise would have to make because PHEAA has not properly credited their qualifying payments. Moreover, because of the failure to credit the full amount of qualifying

**Class Action Complaint**

1  payments, Plaintiff and the Class are unable to make rational and
2  informed decisions as they weigh whether and when to consider private
3  sector (i.e. non-PSLF-eligible) employment.

4                        **Sixth Cause of Action**

5
6  **Unfair and Deceptive Acts and Practices Violating the
California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200,
against PHEAA on behalf of Plaintiff and the California Sub-Class,
and against Nelnet on behalf of Plaintiff
and the California Nelnet Sub-Class**
7
8

9  153.  Plaintiff incorporates the preceding allegations as if fully set
10  forth herein.

11  154.  Defendants' respective patterns and practices of failing to
12  accurately count qualifying payments toward PSLF, communicate
13  significant information to borrowers, and/or maintain accurate records
14  of information pertinent to PSLF constitute unfair or deceptive
15  practices, as the practices have, without explanation, deprived Plaintiff
16  and the California Sub-Class of qualifying payments to which they are
17  entitled under applicable law and regulations.

18  155.  Plaintiff and the California Sub-Class Class have suffered
19  injury as a direct and proximate result of PHEAA's unfair and deceptive
20  practices.  Plaintiff and the California Nelnet Sub-Class have suffered
21  injury as a direct and proximate result of Nelnet's unfair and deceptive
22  practices.

23  156. In particular, Plaintiff, the California Sub-Class, and the
24  Nelnet Sub-Class will be required to make more student loan payments
25  than they otherwise would have to make because they have not been
26  credited with the full amount of qualifying payments that they have
27  made.  Moreover, because of the failure to credit the full amount of
28  qualifying payments, Plaintiff, the California Sub-Class, and the Nelnet

1   Sub-Class are unable to make rational and informed decisions as they
2   weigh whether and when to consider private sector (i.e. non-PSLF-
3   eligible) employment.

4   **VII. PRAYER FOR RELIEF**

5   Plaintiff, individually and on behalf of Class members,
6   respectfully requests that the Court enter judgment in their favor and
7   against Defendants, as follows:

8   a.   Certifying this action as a class action, proper and
9        maintainable pursuant to Rule 23 of the Federal Rules of Civil
10       Procedure;

11  b.   Declaring that Plaintiff is a proper class representative;

12  c.   Appointing the undersigned as Class Counsel;

13  d.   Awarding Plaintiff and Class members compensatory,
14       consequential, and general damages in an amount to be
15       determined at trial;

16  e.   Ordering disgorgement and restitution of all earnings, profits,
17       compensation, and benefits received by Defendants as a result
18       of their unlawful acts, omissions, and practices;

19  f.   Awarding statutory damages, treble damages, and punitive or
20       exemplary damages, to the extent permitted by law;

21  g.   Awarding Plaintiff the costs and disbursements of the action,
22       along with reasonable attorneys' fees, costs, and expenses;

23  h.   Awarding prejudgment and post-judgment interest at the
24       maximum legal rate;

25  i.   Granting permanent injunctive relief, including but not limited
26       to the following:

27

28

**Class Action Complaint**

(1)   Enjoining Defendants from continuing the unlawful, unfair or fraudulent acts, omissions and practices described herein;

(2)   Ordering PHEAA to conduct an independent audit of all of PHEAA's Direct Loan borrowers to evaluate whether they are being credited with the correct number of qualifying payments toward Public Service Loan Forgiveness (the "PHEAA Audit");

(3)   Ordering Nelnet to conduct an independent audit of all of Nelnet's Direct Loan borrowers to evaluate whether they Nelnet is keeping accurate records of the employment of, and payments made by, its borrowers (the "Nelnet Audit");

(4)   Ordering Defendants to end the use of disaster forbearances without confirmation by an individual borrower that they have been affected by a natural disaster;

(5)   Requiring that for each borrower that the PHEAA Audit identifies as having not been credited with the correct number of Qualifying Payments, PHEAA is to correct the number of Qualifying Payments;

(6)   For each borrower that the Nelnet Audit identifies as having inaccurate records, correcting the records;

(7)   Issuing a corrective notice to inform borrowers that PHEAA (FedLoan) has undertaken the PHEAA Audit and taken appropriate corrective measures;

1    (8)  Issuing a corrective notice to inform borrowers that

2       Nelnet has undertaken the Nelnet Audit and taken

3       appropriate corrective measures; and

4    (9)  Reporting to the U.S. Department of Education

5       regarding the above in compliance with Defendants'

6       obligations in its servicing contracts; and

7  j.  Granting all such other relief as it deems just and proper.

## VIII.  JURY DEMAND

Plaintiff demands a trial by jury on all issues and claims for which a jury trial is available under the law.

Dated: February 28, 2019    Respectfully submitted,

**Pierce Bainbridge Beck Price & Hecht LLP**

By: */s/ Thomas D. Warren*
Thomas D. Warren (SBN 160921)
Janine Cohen (SBN 203881)
355 S. Grand Avenue, Suite 4400
Los Angeles, CA 90017
Telephone: (213) 262-9333
twarren@piercebainbridge.com
jcohen@piercebainbridge.com

Jonathan A. Sorkowitz
(admission *pro hac vice* to be requested)
20 West 23rd Street, Fifth Floor
New York, New York 10010
Telephone: (212) 484-9866
jsorkowitz@piercebainbridge.com

*Attorneys for Plaintiff and for the proposed Class*