John C. Grugan
(admission *pro hac vice* to be requested)
gruganj@ballardspahr.com
Thomas F. Burke
(admission *pro hac vice* to be requested)
burket@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

Mark S. Kokanovich (230286)
kokanovichm@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LISA WINEBARGER, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY and NELNET, INC.,

Defendants.

NO. 2:19-CV-01503

**DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES 12(B)(1) AND 12(B)(6)**

Hearing Date: July 15, 2019, 1:30 p.m.

Hon. John F. Walter
Courtroom 7A
United States Courthouse
350 W. 1st Street
Los Angeles, CA 90012

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 15, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7A, Honorable John F. Walter presiding, located at the United States Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendant Pennsylvania Higher Education Assistance Agency will and hereby does move this Honorable Court, to dismiss Plaintiff Lisa Winebarger's claims under Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, supporting exhibits, the pleadings and papers on file herein, and any further material and argument presented to the Court at the time of the hearing.

The Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 18, 2019.

DATED this 26th day of April, 2019.

**BALLARD SPAHR LLP**

By: */s/ Mark S. Kokanovich*
John C. Grugan
Thomas F. Burke
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Mark S. Kokanovich
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

# Table of Contents

Page

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

I. The HEA and Direct Loan Program ..... 2

II. The PSLF Program ..... 3

III. PHEAA's Loan Servicing on Behalf of the Department ..... 3

IV. Winebarger's Federal Student Loans and Qualifying Payment History ..... 4

V. Winebarger's Complaint and Alleged Harm ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 6

I. The Court lacks subject matter jurisdiction because Winebarger has failed to adequately plead standing. ..... 6

A. Winebarger has not alleged an injury-in-fact. ..... 6

1. The possibility that Winebarger will overpay for loan forgiveness in five years is too speculative to confer standing. ..... 7

2. Winebarger's uncertainty regarding when she can begin searching for a private-sector job does not confer standing. ..... 8

B. Winebarger's claims are not ripe. ..... 10

II. Winebarger's state-law claims are preempted ..... 11

A. The HEA expressly preempts Winebarger's state-law claims. ..... 11

B. Winebarger's claims are also preempted under conflict preemption. ..... 13

III. Each of Winebarger's claims should be dismissed for several reasons apart from lack of standing and preemption. ..... 14

A. Winebarger fails to state a claim under the ECOA. ..... 14

B. Winebarger's negligence claim fails because, under California law, PHEAA owes no duty of care to Winebarger. ..... 16

1. A loan servicer does not owe a common law duty of care to a borrower. ....16

2. Even if the Pennsylvania FCEUA applies, the FCEUA claim fails. ....17

3. The Servicing Contract—to which Winebarger is not a party—does not impose a duty of care. ....17

4. Federal regulations do not impose a duty of care on PHEAA. ....19

5. PHEAA is not a party to the MPNs and therefore does not owe a duty of care to Winebarger based on them. ....20

C. Winebarger's breach-of-fiduciary claim fails because PHEAA owes no fiduciary duty to student borrowers. ....20

D. Winebarger's breach-of-contract claim fails because she is not a third-party beneficiary of PHEAA's contract with the Department. ....21

E. In the absence of consideration and definite terms, Winebarger has not alleged an implied-in-fact contract with PHEAA. ....22

F. Winebarger lacks standing to pursue her UCL claim and otherwise fails to state a claim. ....23

1. Winebarger lacks standing to bring a UCL claim. ....23

2. Winebarger's allegations are insufficient to state a claim under the UCL. ....24

CONCLUSION ....25


Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABA v. U.S. Dep't of Educ.*, Civil Action No. 16-2476 (TJK), 2019 U.S. Dist. LEXIS 28148 (D.D.C. Feb. 22, 2019) .......... 18

*Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774 (9th Cir. 2012) .......... 10

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) .......... 11

*Arzamendi v. Wells Fargo Bank, N.A.*, No. 1:17-cv-01485-LJO-SKO, 2018 U.S. Dist. LEXIS 38382 (E.D. Cal. Mar. 8, 2018) .......... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 6

*ASP Props. Grp. v. Fard, Inc.*, 35 Cal. Rptr. 3d 343 (Ct. App. 2005) .......... 22

*Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000) .......... 6

*Bard v. Kent*, 122 P.2d 8 (Cal. 1942) .......... 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 6

*Billy v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992) .......... 16

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2000) .......... 8, 9

*Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009) .......... 10

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) .......... 14

*Brannon v. United Student Aid Funds, Inc.*,
94 F.3d 1260 (9th Cir. 1996) .......... 13

*Cal. Serv. Station Etc. Ass'n v. Am. Home Assur. Co.*,
73 Cal. Rptr. 2d 182 (Ct. App. 1998) .......... 19

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) .......... *passim*

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) .......... 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 7

*Contra Costa Cty. Deputy Sheriffs Ass'n v. Mitchoff*,
Case No. 15-cv-00261-THE, 2015 U.S. Dist. LEXIS 37148 (N.D. Cal. Mar. 24, 2015) .......... 7

*D'Angelo Dev. & Constr. Corp. v. Cordovano*,
995 A.2d 79 (Conn. App. Ct. 2010) .......... 20

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) .......... 25

*Decker v. Nw. Envtl. Def. Ctr.*,
568 U.S. 597 (2013) .......... 12

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990) .......... 11

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) .......... 24

*Free v. Bland*,
369 U.S. 663 (1962) .......... 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 7

*Goonewardene v. ADP, LLC*,
434 P.3d 124 (Cal. 2019) .......... *passim*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

*Gratz v. Bollinger*,
539 U.S. 244 (2003) .......... 7

*Gross v. U.S. Small Bus. Admin.*,
669 F. Supp. 50 (N.D.N.Y. 1987) .......... 15

*Hillsborough County, Florida v. Automated Med. Labs., Inc.*,
471 U.S. 707 (1985) .......... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 6

*Krottner v. Starbucks* Corp.,
628 F.3d 1139 (9th Cir. 2010) .......... 7

*La Reunion Francaise SA v. Barnes*,
247 F.3d 1022 (9th Cir. 2001) .......... 6

*Ladas v. Cal. State Auto. Ass'n*,
23 Cal. Rptr. 2d 810 (Ct. App. 1993) .......... 23

*LaMarca v. United States*,
34 F. Supp. 3d 796 (N.D. Ohio 2016) .......... 18

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
No. 1:17-CV-253, 2018 U.S. Dist. LEXIS 199048 (N.D. Fla. Sept. 20, 2018) .......... 12, 13

*Linsley v. FMS Inv. Corp.*,
No. 3:11-cv-961, 2012 U.S. Dist. LEXIS 53735 (D. Conn. Apr. 17, 2012) .......... 12

*Low v. Linkedin Corp.*,
No. 11-CV-01468-LHK, 2011 U.S. Dist. LEXIS 130840 (N.D. Cal. Nov. 11, 2011) .......... 7

*Maldonado v. Morales*,
556 F.3d 1037 (9th Cir. 2009) .......... 10

*Marks v. Ocwen Loan Servicing*,
No. C 07-2133 SI, 2009 U.S. Dist. LEXIS 35251 (N.D. Cal. Apr. 10, 2009) .......... 16

*Marques v. Fed. Home Loan Mortg. Corp.*,
No. 12cv1873 – IEG (MDD), 2013 U.S. Dist. LEXIS 66498 (S.D. Cal. May 8, 2013) ........ 25

*Martinez v. Socoma Cos.*,
521 P.2d 841 (Cal. 1974) ........ 22

*McClellan v. I-Flow Corp.*,
776 F.3d 1035 (9th Cir. 2015) ........ 13

*McVicar v. Goodman Global, Inc.*,
1 F. Supp. 3d 1044 (C.D. Cal. 2014) ........ 24

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ........ 11

*Monreal v. GMAC Mortg., LLC*,
948 F. Supp. 2d 1069 (S.D. Cal. 2013) ........ 20

*Moody v. Ocwen Loan Servicing, LLC*,
CV 15-5186-DMG, 2016 U.S. Dist. LEXIS 190592 (C.D. Cal. Feb. 22, 2016) ........ 24

*Nelson v. Great Lakes Educ. Loan Servs.*,
No. 3:17-00183, 2017 U.S. Dist. LEXIS 208331 (S.D. Ill. Dec. 19, 2017) ........ 12

*Nioopour v. Ocwen Loan Servicing, LLC*,
No. 17cv2015-MMA (WVG), 2018 U.S. Dist. LEXIS 29761 (S.D. Cal. Feb. 23, 2018) ........ 24

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983) ........ 10

*Pastoria v. Nationwide Ins.*,
6 Cal. Rptr. 3d 148 (Ct. App. 2003) ........ 23

*Pok v. Am. Home* Mortg. *Servicing, Inc.*,
No. Civ. 2:09-2385 WBS EFB, 2010 U.S. Dist. LEXIS 9016 (E.D. Cal. Feb. 3, 2010) ........ 16

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

*Rice v. Sunbeam Prods.*,
No. CV 12-7923-CAS-(AJWx), 2013 U.S. Dist. LEXIS 7467 (C.D. Cal. Jan. 7, 2013) .......... 25

*Ross v. Gordon & Weinberg, P.C.*,
No. 3:09cv482, 2011 U.S. Dist. LEXIS 97505 (W.D.N.C. Aug. 30, 2011) .......... 17

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) .......... 24

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
85 Cal. Rptr. 2d 301 (Ct. App. 1999) .......... 25

*Scripps Clinic v. Superior Court*,
134 Cal. Rptr. 2d 101 (Ct. App. 2003) .......... 24

*Shepherd v. Am. Home Mortg. Servs.*,
No. CIV. 2:09-1916 WBS GGH, 2009 U.S. Dist. LEXIS 108523 (E.D. Cal. Nov. 20, 2009) .......... 16

*In re Silicon Graphics Inc. Secs. Litig.*,
183 F.3d 970 (9th Cir. 1999) .......... 4

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 7

*Stefanowicz v. SunTrust Mortg.*,
No. 18-1680, 2019 U.S. App. LEXIS 9423 (3d Cir. Mar. 29, 2019) .......... 15

*Steiner v. Thexton*,
226 P.3d 359 (Cal. 2010) .......... 23

*Sturm v. Harb Dev., LLC*,
2 A.3d 859 (Conn. 2010) .......... 19, 20

*Texas v. United States*,
523 U.S. 296 (1998) .......... 10

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 1999) (en banc) .......... 10

*Turner v. JPMorgan Chase, N.A.*,
No. TDC-14-0576, 2015 U.S. Dist. LEXIS 111252 (D. Md. Aug. 21, 2015) .......... 8, 15



Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

*Warth v. Seldin*,
422 U.S. 490 (1975) ....... 9

*Watts v. Decision One Mortg. Co.*,
Case No. 09 CV 0043 JM (BLM), 2009 U.S. Dist. LEXIS 59694 (S.D. Cal. July 13, 2009) ....... 16

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
135 F.3d 658 (9th Cir. 1998) ....... 6

**Statutes**

73 Pa. Cons. Stat. § 2270.3 ....... 17

73 Pa. Cons. Stat. § 2270.4 ....... 16, 17

73 Pa. Cons. Stat. § 2270.5 ....... 17

5 U.S.C. § 702 ....... 18

15 U.S.C. § 1691 ....... 14

20 U.S.C. §§ 1070–1099c ....... *passim*

20 U.S.C. §§ 1071–1087-4 ....... 2, 12

20 U.S.C. § 1078 ....... 11

20 U.S.C. § 1082 ....... 4, 5

20 U.S.C. § 1087e ....... 3, 4

20 U.S.C. § 1087f ....... 3

20 U.S.C. § 1091a ....... 11

20 U.S.C. § 1098g ....... 2, 11

Cal. Bus. & Prof. Code § 17200 ....... 23

Cal. Bus. & Prof. Code § 17204 ....... 24

California Civil Code § 1605 ....... 22

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**Other Authorities**

34 C.F.R. § 682.209 .......... 3
34 C.F.R. § 682.700 .......... 3
34 C.F.R. § 685.208 .......... 3
34 C.F.R. § 685.219 .......... 3
83 Fed. Reg. 10620 .......... 19
83 Fed. Reg. 10621 .......... *passim*
Federal Rule of Civil Procedure 12(b)(1) .......... 6
Federal Rule of Civil Procedure 12(b)(6) .......... 6
U.S. Constitution Article III .......... 1, 6, 7

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**INTRODUCTION**

Plaintiff Lisa Winebarger may or may not one day avail herself of student loan forgiveness under the Public Service Loan Forgiveness ("PSLF") Program, a federal program administered on behalf of the federal government by the Pennsylvania Higher Education Assistance Agency ("PHEAA"), a student loan servicer. The PSLF Program requires that a borrower, over the course of at least ten years, make 120 separate qualifying monthly student loan payments, while working for an eligible public interest employer, after which the remaining balance of the borrower's student loans will be forgiven. Until the borrower has completed those 120 qualifying payments, however, she has no vested interest of any kind and is entitled to no financial benefit. And by all accounts, Winebarger is many years away from completing her 120 qualifying payments, if she completes them at all.

Winebarger, however, has already filed a lawsuit in connection with the PSLF program, based on the allegation that three billing statements generated by PHEAA incorrectly tallied the PSLF-qualifying payments she made. Winebarger does not contend that this harmed her financially in any way. Instead, she says that if PHEAA fails to correct her payment tally before 2023—when she first may become eligible for loan forgiveness, depending on her loan payments and employment record over the next four years—she will have been harmed at that time. She also claims that the attendant uncertainty about her progress toward loan forgiveness may impact her ability to look for a new job. These speculative contentions, though, do not establish the "actual and imminent" harm necessary for Article III standing. As a result, Winebarger's complaint must be dismissed for lack of subject-matter jurisdiction.

Winebarger's claims are also preempted by federal law. PHEAA's disclosures to Winebarger, which relate to a federal student loan program administered by PHEAA, a federal contractor, fall within the purview of the Higher Education Act, 20 U.S.C. §§ 1070–1099c (the "HEA"), which preempts "*any*

disclosure requirements of *any* State law" that purport to apply to federal student loans like Winebarger's. 20 U.S.C. § 1098g (emphasis added). Ninth Circuit law is unambiguous on this point. *See* *Chae v. SLM Corp.*, 593 F.3d 936, 942–43 (9th Cir. 2010) (finding preemption with respect to state-law misrepresentation claims). Conflict preemption, too, bars Winebarger's state-law claims because piecemeal state regulation of federal student loan servicers like PHEAA would undermine Congress's "unmistakable command" in enacting the HEA of "[e]stablish[ing] a set of rules that will apply across the board." *Id.* at 945. Such regulation would also impede the "uniquely Federal interests" involved in the servicing of federal student loans by federal contractors. 83 Fed. Reg. 10621.

These are not the only fatal deficiencies in Winebarger's claims. As set forth in greater detail herein, Winebarger has failed to plead essential elements of every one of her claims under the Equal Credit Opportunity Act ("ECOA") and California law. Winebarger's state-law claims are deficient because they mischaracterize her legal relationship with PHEAA, which services her student loan on behalf of the federal government. PHEAA owes Winebarger no duty of care and no fiduciary duty. Nor is she a third-party beneficiary to the servicing contracts between PHEAA and the federal government, or an implied-in-fact contractual counterparty to PHEAA. And Winebarger's claim under the California Unfair Competition Law ("UCL") fails because she lacks statutory standing and has not alleged specific policies providing that PHEAA's actions were unfair.

## FACTUAL BACKGROUND

### I. The HEA and Direct Loan Program

Under the HEA, and related statutes and regulations, the United States Department of Education (the "Department") has the authority to issue a variety of federal loans and grants to student borrowers. *See* 20 U.S.C. §§ 1071–1099c. In the 1990s, the federal government began originating loans under the William D. Ford Direct Loan Program. *See* 20 U.S.C. §§ 1087a–1087j; (Doc. 1 (Class Action

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Complaint ("CAC")) at ¶ 33). Congress directed the Department to enter into contracts for "servicing" these loans and "such other aspects of the direct student loan program as the Secretary determines are necessary." 20 U.S.C. § 1087f(a), (b)(2), (4).

Every aspect of the servicing of Direct Loans is highly regulated by the Department, including administration of loan repayment, 34 C.F.R. §§ 682.209, 685.208, income-based or income-contingent repayment plans, *id.* §§ 682.215, 685.209, deferments and forbearances, *id.* §§ 682.210–211, 685.204–205, and "a carefully crafted disclosure regime specifying what information must be provided [to student loan borrowers]," 83 Fed. Reg. at 10621. The Department has plenary authority to limit, suspend, or terminate the activities of a federal student loan servicer that violates its legal obligations or its contract with the Department. 34 C.F.R. § 682.700(a).

## II. The PSLF Program

The PSLF Program was created by Congress in 2007 and provides a conditional opportunity for qualifying student borrowers to seek complete forgiveness of their outstanding student loan balance. *See* 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219; (*see* CAC at ¶¶ 45–47). Under the PSLF, the federal government will forgive any remaining balance on qualifying Direct Loans after *(a)* 120 on-time payments; *(b)* made under a qualifying repayment plan; *(c)* while the borrower is working full-time; *(d)* for qualifying public-service employers. 34 C.F.R. § 685.219. Qualifying repayment plans include, among others, Income-Driven Repayment ("IDR") plans. (CAC at ¶ 48).

## III. PHEAA's Loan Servicing on Behalf of the Department

In 2009, PHEAA was selected through a competitive process by the Department to service federal loans and grants on a national basis. (CAC at ¶ 26). The Department's contract with PHEAA (the "Servicing Contract") requires PHEAA to service loans issued under the Direct Loan program. In addition to

requiring that PHEAA "meet all statutory and legislative requirements," (Exhibit 1 (the "2009 Servicing Contract") at 26)[1], the Servicing Contract specifies over 200 enumerated obligations for the servicer. (Exhibit 1 at 26–41, 45–54). In 2012, the Department awarded PHEAA an exclusive contract to administer the PSLF program. (CAC at ¶ 27).

The Department monitors PHEAA's performance under the Servicing Contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices; PHEAA, in turn, is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed." (Exhibit 1 at 30). PHEAA is not paid for loans "not being serviced in compliance with the Requirements, Policy and Procedures for servicing federally held debt due to the fault of the servicer." (Exhibit 1 at 15).

**IV. Winebarger's Federal Student Loans and Qualifying Payment History**

Winebarger's Direct Loans are governed by standardized Master Promissory Notes ("MPNs") that constitute her loan contracts with the Department. (CAC at ¶ 36; *see also* Exhibits 2–4 ("Winebarger's MPNs")). The MPNs are developed by the Department pursuant to instructions from Congress. *See* 20 U.S.C. §§ 1082(m)(1)(D), 1087e(a)(1). PHEAA is not a party to the MPNs between Winebarger and the Department, and PHEAA was not the initial servicer for Winebarger's student loans.

Since April 2013, Winebarger has been enrolled in a PSLF-eligible IDR plan for each of her Direct Loans. (CAC at ¶ 17). Through servicers other than PHEAA, Winebarger made 35 qualifying payments toward the 120 qualifying payment threshold for PSLF eligibility. (CAC at ¶¶ 48, 88). In August 2016, Winebarger's

[1] Winebarger's Complaint has incorporated the Servicing Contract between PHEAA and the Department by reference. (*See, e.g.*, CAC at ¶ 132); *In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

loans were transferred to PHEAA for servicing. (CAC at ¶ 89). From that time forward, as part of Winebarger's monthly statements, PHEAA disclosed Winebarger's tally of qualifying payments. (*See* CAC at ¶¶ 93, 94).

Winebarger takes no issue with PHEAA's reporting of her qualifying payment total until her October 2018 statement, which reported 54 qualifying payments rather than what she alleges to be the correct total of 58. (*See* CAC at ¶ 93). For the next two months, in November and December 2018, her bill reflected 20 and 26 qualifying payments, respectively. (CAC at ¶ 94–95). Even so, the complaint establishes that Winebarger, by her own count, remained around 60 qualifying payments—equivalent to five years—short of meeting the PSLF eligibility threshold. (*See* CAC at ¶¶ 46, 48, 97 (alleging that as of "early February 2019, Plaintiff has made at least 59" qualifying payments)). In other words, under no circumstances will Winebarger obtain PSLF loan forgiveness before late 2023.

**V. Winebarger's Complaint and Alleged Harm**

Winebarger filed her complaint in February 2019, alleging that the temporary misreporting of her qualifying payment count has caused her harm because (1) she "will be required" to make more student loan payments than if credited with the full amount of qualifying payments she has made. (CAC ¶¶ 97, 125, 130, 137, 144, 152, 156). She further "has been unable to make rational and informed decisions as to whether and when to consider private sector (i.e., non-PSLF-eligible) employment." (CAC ¶ 98). Winebarger concedes, however, that she "does not realistically have the freedom to look beyond employment at PSLF-eligible covered employers until her loan is forgiven." (*Id.*). Her protest is that she cannot currently assess whether she might be able to seek private-sector employment in five years (based on her October 2018 tally) or eight years (based on November and December 2018 tally).

Winebarger alleges six causes of action against PHEAA, including negligence, breach of fiduciary duty, breach of contract, breach of implied-in-fact contract, violation of the federal ECOA, and violation of the California UCL.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing only the power authorized to them by statute and by the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376 (1994). In reviewing a motion under Federal Rule of Civil Procedure 12(b)(1), the Court must presume that it lacks subject-matter jurisdiction over any claims until the plaintiff proves otherwise. *See, e.g.*, *id.* at 377; *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1026 (9th Cir. 2001). The burden of proof rests with the party asserting jurisdiction. *See Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

When considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule 12(b)(6). *Id*.

## ARGUMENT

### I. The Court lacks subject matter jurisdiction because Winebarger has failed to adequately plead standing.

#### A. Winebarger has not alleged an injury-in-fact.

A federal district court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S.

Constitution. To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). In a class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and must be dismissed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Here, Winebarger alleges two injuries: (1) that she "will be required" to make more than the necessary 120 payments to obtain PSLF loan forgiveness; and (2) that she has been unable to consider whether and when to pursue unspecified private sector employment. Because both injuries are hypothetical, neither are sufficient to confer standing.

**1. The possibility that Winebarger will overpay for loan forgiveness in five years is too speculative to confer standing.**

Although the "possibility of future injury" can confer standing, such a threat must be "credible" and "both real and immediate, not conjectural or hypothetical." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (citations omitted); *see also* *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (holding that an injury-in-fact cannot rely on a "speculative chain of possibilities" that were not "certainly impending"); *Low v. Linkedin Corp.*, No. 11-CV-01468-LHK, 2011 U.S. Dist. LEXIS 130840, at *9 (N.D. Cal. Nov. 11, 2011) (rejecting as "too theoretical" the plaintiff's fear that "sensitive information *may* be [in the future] transmitted via his browser history."). Where an injury is years away from materializing, the injury is not "immediate." *See* *Contra Costa Cty. Deputy Sheriffs Ass'n v. Mitchoff*, Case

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

No. 15-cv-00261-THE, 2015 U.S. Dist. LEXIS 37148, at *26 (N.D. Cal. Mar. 24, 2015) (dismissing claim on standing grounds where it would be over one year before the Court would know if actual harm arose); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 (9th Cir. 2000) (recognizing no injury-in-fact based on "conjectural and hypothetical nature" of claim that Apple earbuds could eventually cause hearing loss).

Here, Winebarger's principally alleged harm is that she "will be required" to make more than the necessary 120 payments to obtain PSLF loan forgiveness. (CAC at ¶¶ 96, 125, 130, 137, 144, 152, 156). But that injury is hypothetical. Winebarger may or may not make her loan payments over the next five years; she may or may not work for a qualifying employer for the entirety of that time; and PHEAA, of course, may correct the allegedly incorrect qualifying payment tally. Thus, Winebarger's fear that she *may* need to make more than 120 qualifying payments to obtain PSLF loan forgiveness in the year 2023 or thereafter is too speculative and distant to confer standing.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**2. Winebarger's uncertainty regarding when she can begin searching for a private-sector job does not confer standing.**

A plaintiff's purported inability to consider alternative courses of action that may or may not exist does not constitute an injury-in-fact. For example, in *Gerbery v. Wells Fargo Bank, N.A.*, the plaintiffs contended that they were deprived of "opportunities to obtain an alternative loan with more favorable terms." No. 13-CV-614-MMA(DHB), 2013 U.S. Dist. LEXIS 107744, at *19 (S.D. Cal. July 31, 2013). The court held that no standing existed because the plaintiffs had failed to offer "details of other loans available to them, whether they sought quotes from other lenders, or whether other lenders had offered more favorable loan terms to borrowers with credit ratings similar to [the p]laintiffs." *Id.* at *20. Similarly, in *Burton v. Time Warner Cable Inc.*, the court dismissed for lack of standing based on plaintiff's purported inability to make "informed decisions" with respect to privacy, because

the plaintiff did not detail a specific decision tied to the defendant's conduct. No. 12-CV-06764 JGB (AJWx), 2013 U.S. Dist. LEXIS 94310, at *25–26 (C.D. Cal. Mar. 20, 2013).

Here, Winebarger contends that she has "been unable to make rational and informed decisions as to whether and when to consider private sector (i.e., non-PSLF eligible) employment." (CAC at ¶¶ 98, 125, 130, 137, 144, 152, 156). But in the same breath, she observes that because of her loan interest accruals to date, she "does not realistically have the freedom to look beyond employment at PSLF-eligible covered employers until her loan is forgiven." (CAC at ¶ 98). Winebarger's uncertainty, then, concerns whether she might be able to seek private-sector employment in five years (based on her October 2018 tally) versus eight years (based on November and December 2018 tally). She cites no specific employer or job offer in connection with that inquiry, and does not state that her search has in fact begun.

Winebarger's inability to make "rational and informed decisions," as alleged, is not an "actual and imminent" harm. Like the plaintiff in *Gerbery*, Winebarger does not allege that she was offered private employment and turned it down based on PHEAA's conduct, or had some other inability to choose between two actual employment prospects occasioned by her PSLF payment reporting. Instead the Complaint makes clear that Winebarger seeks only the certainty of knowing whether she might leave public service in five versus eight years. That alleged harm is not an injury-in-fact and thus not sufficient to confer constitutional standing.[2]

[2] Although not part of the allegations for any cause of action, Winebarger also alleges that she has been harmed by having "fewer opportunities to make qualifying payments that, absent [PHEAA's alleged] failures, she otherwise would have made." (CAC at ¶ 96). But Winebarger fails to provide any detail on personal missed payment opportunities, and instead alleges that *others* may have missed opportunities. (*See* CAC at ¶ 92). That allegation is insufficient to confer standing on Winebarger. *See Birdsong*, 590 F.3d at 960–61 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.")).



Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**B. Winebarger's claims are not ripe.**

A claim is not ripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and quotation marks omitted). "Ripeness is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009). Courts consider two factors in the ripeness analysis: (1) whether delayed review of the issue would cause hardship to the parties and (2) whether the issues are fit for judicial decision or would benefit from further factual development. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). The Ninth Circuit has characterized ripeness as "standing on a timeline" and, as a result, recognizes that the inquiries largely overlap. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 1999) (en banc).

The key concept embodied by the ripeness doctrine is that adjudication of a particular matter not be dependent upon a contingent event in the future. That prohibition exists "because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (citing *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009)). Thus, a claim must be dismissed if it is "based solely on harms stemming from events that have not yet occurred, and may never occur, because the plaintiffs raising such [a] claim[] have not 'suffered an injury that is concrete and particularized enough to survive the standing/ripeness inquiry.'" *Id*. (quoting *Bova*, 564 F.3d at 1096–97)).

Here, Winebarger's claimed concerns about overpayment and an inability to consider other positions several years from now are speculative, because they depend on, at a minimum, two critical contingencies: (1) Winebarger completing the

necessary 120 qualifying payments for loan forgiveness, and satisfying all other PSLF program requirements during that time; and (2) PHEAA failing to restore Winebarger's qualifying payment count to the state she alleges is correct. The appropriate time to adjudge whether those contingencies have occurred, and thus whether or not Winebarger has been harmed, will be several years from now, when Winebarger has applied for (and either been granted or denied) loan forgiveness under PSLF.

**II. Winebarger's state-law claims are preempted.**

The Supremacy Clause states that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Free v. Bland*, 369 U.S. 663, 666 (1962). This inquiry "is guided by the rule that '[t]he purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The two types of preemption relevant here are express preemption and conflict preemption. *Chae*, 593 F.3d at 942.

**A. The HEA expressly preempts Winebarger's state-law claims.**

Express preemption applies where Congress has stated in the statutory language that its enactments preempt state law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). In the HEA, Congress enacted several express preemption provisions applicable to FFELP Loans and Direct Loans. *See, e.g.*, 20 U.S.C. §§ 1078(d), 1091a(a)(2)(B), 1091a(b)(1)–(3), 1098g. Relevant here, 20 U.S.C. § 1098g provides that FFELP and Direct Loans "shall not be subject to *any* disclosure requirements of *any* State law." *Id.* § 1098g (emphasis added). All five of Winebarger's state law claims are grounded in allegedly inaccurate disclosures that PHEAA made to Winebarger. (*See, e.g.*, CAC at ¶¶ 123 (describing PHEAA's alleged "fail[ure] to communicate significant information to borrowers"), 128, 134, 140 (alleging

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

PHEAA's alleged failure to "provide sound information"), 141, 154)). These claims are preempted by Section 1098g.

The Ninth Circuit, among other courts, has held that Section 1098g preempts claims under the laws Winebarger invokes here. *See, e.g.*, *Chae*, 593 F.3d at 942–43 (concluding that the HEA preempts a misrepresentation claim because "the state-law prohibition on misrepresenting a business practice '[was] merely the converse' of a state-law requirement that alternate disclosures be made" (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 527 (1992))).[3]

The Department itself has endorsed the reasoning of *Chae* and its progeny. In an interpretation issued last year, the Department declared that state servicing laws that "attempt to impose new prohibitions on misrepresentation or the omission of material information . . . run afoul of express preemption provision in 20 U.S.C. § 1098g." 83 Fed. Reg. 10621. Such laws thus are "barred whether they are enacted legislatively or implied judicially in the context of a tort suit." *Id.* Agency determinations of this nature are entitled to substantial deference. *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 613 (2013) ("When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation." (internal marks omitted)).

Here, each of Winebarger's state claims rests on an alleged misrepresentation—that PHEAA provided an inaccurate qualifying payment count for PSLF eligibility. Under binding precedent, these claims are preempted because

[3] *See also* *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, No. 1:17-CV-253, 2018 U.S. Dist. LEXIS 199048, at *8–9 (N.D. Fla. Sept. 20, 2018), *appeal pending* No. 18-14490-JJ (11th Cir.) (claim that loan servicer misrepresented to borrowers that their FFELP loans were eligible for public service loan forgiveness is preempted); *Nelson v. Great Lakes Educ. Loan Servs.*, No. 3:17-00183, 2017 U.S. Dist. LEXIS 208331, at *18–19 (S.D. Ill. Dec. 19, 2017) (concluding that the HEA preempted the plaintiff's negligent misrepresentation claim); *Linsley v. FMS Inv. Corp.*, No. 3:11-cv-961, 2012 U.S. Dist. LEXIS 53735, at *7–10 (D. Conn. Apr. 17, 2012) (claim that loan servicer sent a letter that "failed to accurately describe the HEA's rehabilitation and consolidation provisions and . . . regulations" is preempted).

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

the failure to provide accurate information is, in essence, disclosure. *Chae*, 593 F.3d at 942–43; *see also* *Lawson-Ross*, 2018 U.S. Dist. LEXIS 199048, at *9. Winebarger's state claims are therefore expressly preempted.

**B. Winebarger's claims are also preempted under conflict preemption.**

Conflict preemption is implicit preemption of state law that occurs when either (1) "compliance with both federal and state regulations is a physical impossibility" or (2) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015) (citing *Hillsborough County, Florida v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).

Through the HEA, Congress provided "a clear command for uniformity." *Chae*, 593 F.3d at 945. *Chae* recognized that the HEA preempted claims under California law related to a loan servicer's allegedly fraudulent misrepresentations in billing statements. *See id.* at 950. Speaking to Congress's objectives through FFELP, *Chae* noted that "one need not have an advanced degree in risk management and financial practices to believe . . . that 'exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans.'" *Id.* at 934 (quoting *Brannon v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996)). The same uniformity concerns motivated the Direct Loan Program. *Id.*; *see also* 83 Fed. Reg. at 10621 ("[T]he purpose of the Direct Loan Program [was] to establish a uniform, streamlined, and simplified lending program managed at the Federal level."). Thus, the HEA embodies an "unmistakable command" from Congress "to implement the student-loan statutes" with "a set of rules that will apply across the board." *Chae*, 593 F.3d at 945.

The Department of Education, of course, agrees with the general *Chae* holding on preemption. *See* 83 Fed. Reg. at 10621 ("These conflicts with statutes,

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

regulations, Federal contracts, and congressional objectives suggest that State regulation of loan servicers would be preempted by Federal law.”). And it notes that this result is evident as it applies to the Direct Loan Program because “[s]tate regulation [of that Program] implicates uniquely Federal interests.” *Id.* (explaining that “there is no question that the ‘imposition of liability on Government contractors will directly affect the terms of Government contracts,’ at the very least by raising the price of such contracts and ‘the interests of the United States will be directly affected’” (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988))).

Here, as recognized in *Chae* and by the Department, Winebarger’s state law claims would undermine Congress’s objective of uniformity. As Winebarger’s own lawsuit demonstrates, numerous state law claims can rest on alleged acts or omissions. With the HEA, Congress did not call on the courts of fifty states—interpreting myriad causes of action—to determine whether loan servicers’ representations and conduct are adequate. Rather, it envisioned that such questions would be resolved by federal law—embodied by the Department’s regulation over and contracts with loan servicers. Like the claims held to be preempted in *Chae*, Winebarger accuses PHEAA of making misrepresentations on billing statements. Thus, the HEA preempts all of the state-law claims brought by Winebarger through conflict preemption.

## III. Each of Winebarger’s claims should be dismissed for several reasons apart from lack of standing and preemption.

### A. Winebarger fails to state a claim under the ECOA.

The ECOA states it is unlawful for a creditor to discriminate against any applicant (1) “on the basis of race, color, religion, national origin, sex or marital status, or age”; (2) “because all or part of the applicant’s income derives from any public assistance program”; or (3) “because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.” 15 U.S.C. § 1691(a). The statute defines “applicant” as any person who applies to a creditor directly for an

extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit. *Id.* § 1691a(b). "Creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." *Id.* § 1691a(e).

Here, Winebarger contends that PHEAA discriminated against her based on her receipt of public assistance program income. Winebarger's claim fails for three reasons. First, Winebarger must establish that she *receives* income from any public assistance program. Although she alleges that loan forgiveness is a form of income, (CAC at ¶ 147), she does not allege that any of her loans have been forgiven. Because the statute requires that a potential plaintiff's *current* income "derives" from a public assistance program, Winebarger's claim fails. Second, PHEAA was not acting as a "creditor" in servicing Winebarger's loans. Rather, the creditor remains the Department. Third, Winebarger has failed to tie the discrimination to the fact that Winebarger received public assistance program income. *See, e.g.*, *Turner v. JPMorgan Chase, N.A.*, No. TDC-14-0576, 2015 U.S. Dist. LEXIS 111252, at *15–16 n.2 (D. Md. Aug. 21, 2015) ("Other than stating that she made JPMorgan Chase aware that she received public assistance, Turner alleges no facts from which the Court could infer that JPMorgan Chase denied her modifications *because* she received such assistance." (emphasis added)); *Gross v. U.S. Small Bus. Admin.*, 669 F. Supp. 50, 54 (N.D.N.Y. 1987). Thus, Winebarger has failed to state a prima facie case under the ECOA.

To the extent Winebarger attempts to state a claim for discrimination based on income level, (*see* CAC at ¶ 27 (stating PSLF participants tend to be minimally paid)), the claim similarly fails. The ECOA does not recognize income level as a suspect classification *and* courts have rejected that the ECOA covers discrimination based on level of income. *See, e.g.*, *Stefanowicz v. SunTrust Mortg.*, No. 18-1680,

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

2019 U.S. App. LEXIS 9423, at *14 (3d Cir. Mar. 29, 2019) (affirming a district court ECOA dismissal where the plaintiff "alleged only that her financial condition at the relevant time was that of 'poverty'").

**B. Winebarger's negligence claim fails because, under California law, PHEAA owes no duty of care to Winebarger.**

"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Billy v. Arthur Young & Co.*, 834 P.2d 745, 760 (Cal. 1992) (citations omitted). "Whether the essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court." *Id.* at 761 (citation omitted).

Here, Winebarger lists five vague potential sources for a duty of care, including (1) a common law duty to prevent foreseeable harm, (2) the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Cons. Stat. § 2270.4(b)(5), (3) PHEAA's Servicing Contract with the Department, (4) the MPNs, and (5) unspecified federal regulations. (CAC at ¶ 122). None of these sources impose a duty of care on PHEAA.

**1. A loan servicer does not owe a common law duty of care to a borrower.**

Federal district courts in the Ninth Circuit have unanimously concluded that "loan servicers do not owe a duty to the borrowers of the loans they service." *Pok v. Am. Home* Mortg. *Servicing, Inc.*, No. Civ. 2:09-2385 WBS EFB, 2010 U.S. Dist. LEXIS 9016, at *10 (E.D. Cal. Feb. 3, 2010); *see also Shepherd v. Am. Home Mortg. Servs.*, No. CIV. 2:09-1916 WBS GGH, 2009 U.S. Dist. LEXIS 108523, at *5 (E.D. Cal. Nov. 20, 2009); *Watts v. Decision One Mortg. Co.*, Case No. 09 CV 0043 JM (BLM), 2009 U.S. Dist. LEXIS 59694, at *6–7 (S.D. Cal. July 13, 2009); *Marks v. Ocwen Loan Servicing*, No. C 07-2133 SI, 2009 U.S. Dist. LEXIS 35251, at *20

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

(N.D. Cal. Apr. 10, 2009). As a result, the common law is not a source of a duty of care owed by PHEAA to Winebarger.

### 2. Even if the Pennsylvania FCEUA applies, the FCEUA claim fails.

Actions relying on the FCEUA must be brought in Pennsylvania. *See* 73 Pa. Cons. Stat. § 2270.5(b) ("An action to enforce any liability created by this act may be brought in any court of competent jurisdiction in this Commonwealth within two years from the date on which the violation occurs."); *see also* *Ross v. Gordon & Weinberg, P.C.*, No. 3:09cv482, 2011 U.S. Dist. LEXIS 97505, at *17 (W.D.N.C. Aug. 30, 2011) (dismissing FCEUA-based claim because it was not brought in Pennsylvania). Actions under the FCEUA also must involve a defendant acting as a "creditor," defined as "[a] person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed." 73 Pa. Cons. Stat. § 2270.3.

This Court is not in the Commonwealth of Pennsylvania, and therefore lacks jurisdiction over a negligence claim relying on the FCEUA. And in any event, PHEAA is acting as a loan servicer, not a creditor or debt collector, and therefore does not fall within the ambit of the FCEAU.

### 3. The Servicing Contract—to which Winebarger is not a party—does not impose a duty of care.

Whether a contracting party owes a contractually derived duty of care to a third party is a matter of public policy. *Goonewardene v. ADP, LLC*, 434 P.3d 124, 138 (Cal. 2019). California courts consider the following factors: (1) "the extent to which the transaction was intended to affect the plaintiff"; (2) "the foreseeability of harm to [the plaintiff]"; (3) "the degree of certainty that the plaintiff suffered injury"; (4) "the closeness of the connection between the defendant's conduct and the injury suffered"; (5) "the moral blame attached to the defendant's conduct"; (5) "the policy of preventing future harm"; (6) whether imposing a duty of care would "impose

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

liability out of proportion to fault"; (7) whether a duty of care would "be unnecessary in light of the prospect of private ordering"; and (8) whether imposition of a duty of care "would likely have an adverse effect on the availability" of services. *Id.* at 138–39.

In *Goonewardene*, the California Supreme Court rejected that a payroll company owed a duty of care to employees related to calculating the employees' wages based on contracts between employers and the payroll company. *Id.* at 139. The court pointed to a number of policy considerations in its holding, including: (1) the employer could provide a remedy to the employee; (2) employers could enforce due care through their contracts with the payroll company; (3) employees were not third-party beneficiaries under the contracts; (4) imposing tort liability—potentially greater than liability under the contracts—"may induce the payroll company to place the employee's interests above those of the employer"; and (5) imposition of a duty of care would burden the judicial system. *Id.* at 139–40. Thus, despite employees "unquestionably hav[ing] an important and fundamental interest in the accurate and timely payment of wages as required by the applicable labor statutes and wage orders," the contracts did not impose a duty of care on the payroll company to the employees. *Id.* at 139.

The same analysis applies here. First, to the extent Winebarger believes she has been deprived of a student-loan-related benefit made available to her under federal law, her potential recourse is through the Department—not PHEAA—under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. *See* *LaMarca v. United States*, 34 F. Supp. 3d 796, 809 (N.D. Ohio 2016) ("Congress has provided a comprehensive statutory scheme for addressing claims under the HEA and provided for no private right of action or judicial review outside of the APA."); *see also* *ABA v. U.S. Dep't of Educ.*, Civil Action No. 16-2476 (TJK), 2019 U.S. Dist. LEXIS 28148, at *78–79 (D.D.C. Feb. 22, 2019) (remanding denial letters under PSLF to the Department for further consideration).

Second, PHEAA's contract with the Department "specifies in detail [its] responsibilities and obligations" for servicing Direct Loans, "program[s] such as [PSLF]" and "income-driven repayment plans." 83 Fed. Reg. at 10620. The contract "includ[es] provisions governing [PHEAA's] financial controls, internal monitoring, communications with borrowers, and many other topics." *Id.* Thus, the Department has several mechanisms to enforce due care by PHEAA.

Third, as described *supra* at Section III.D, Winebarger is not a third-party beneficiary under the Servicing Contract. Fourth, as with the payroll companies, the threat of tort liability would dwarf liability under the Servicing Contract and cause loan servicers to favor borrowers over the Department. As noted in the Complaint, "[a]s of June 2018, over 33 million student-loan borrowers owed approximately $1.1 trillion in Direct Loans," creating the possibility for courts to face a tsunami of lawsuits against servicers if the contracts imposed a duty of care not otherwise recognized by California law. These factors establish that PHEAA owes no duty of care to Winebarger as a matter of public policy.

**4. Federal regulations do not impose a duty of care on PHEAA.**

"The creation of a negligence duty of care involves fundamental policy decisions . . . that cannot be delegated to an administrative body." *Cal. Serv. Station Etc. Ass'n v. Am. Home Assur. Co.*, 73 Cal. Rptr. 2d 182, 188 (Ct. App. 1998). Rather, it must be the legislature that imposes a duty of care or expressly authorizes the administrative body to do so. *Id.* at 188–89. Here, Winebarger's vague reference to federal regulations is unaccompanied by a reference to a statute authorizing imposition of a duty of care. Moreover, even if that authorization existed, the regulations referenced in the Complaint outline the PSLF program and indicate that borrowers "may obtain loan forgiveness," (*see* CAC at ¶ 46)—they do not establish a duty of care.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**5. PHEAA is not a party to the MPNs and therefore does not owe a duty of care to Winebarger based on them.**

As described above, California law recognizes that a duty of care may arise in various ways. PHEAA is aware of no California case law, however, establishing that an entity may be subject to a duty of care arising from contract to which it is not a party, i.e., the MPN. Other jurisdictions have recognized the opposite: "There is no question that a duty of care may arise out of a contract, but when the claim is brought against a defendant who is not a party to the contract, the duty must arise from something other than mere failure to perform properly under the contract." *Sturm v. Harb Dev., LLC*, 2 A.3d 859, 871 (Conn. 2010) (quoting *D'Angelo Dev. & Constr. Corp. v. Cordovano*, 995 A.2d 79, 91 (Conn. App. Ct. 2010)). Despite that, Winebarger argues that because the MPN between her and the Department stated "that a third party may service the loan," the MPN thus imposes a duty of care on the non-party servicer. (*See* CAC at ¶ 54). Because that argument has no basis in California law, it should be rejected.

**C. Winebarger's breach-of-fiduciary claim fails because PHEAA owes no fiduciary duty to student borrowers.**

Loan servicers, which are paid by and contractually bound to their lenders, are not fiduciaries of the borrowers whose loans they service. *See, e.g.*, *Arzamendi v. Wells Fargo Bank, N.A.*, No. 1:17-cv-01485-LJO-SKO, 2018 U.S. Dist. LEXIS 38382 (E.D. Cal. Mar. 8, 2018) ("As a general rule, California loan servicers or financial institutions do not owe a fiduciary duty to a borrower when the relevant conduct is limited to the typical conduct of a lender." (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991))); *Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d 1069, 1078 (S.D. Cal. 2013) ("Similarly, loan servicers, like lenders do not owe borrowers any fiduciary obligations . . . .").

Here, Winebarger has not alleged any facts indicating that PHEAA acted beyond the "conventional role" as a loan servicer. Thus, while PHEAA must (and

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

does) comply with its many contractual and regulatory obligations, and strives to provide high-quality service at all times, PHEAA has no generalized fiduciary obligation to Winebarger. In the absence of such obligation, Winebarger cannot maintain a claim for breach of a fiduciary duty.

**D. Winebarger's breach-of-contract claim fails because she is not a third-party beneficiary of PHEAA's contract with the Department.**

"[U]nder California's third party beneficiary doctrine, a third party—that is, an individual or entity that is not a party to a contract—may bring a breach of contract action against a party to a contract." *Goonewardene*, 434 P.3d at 126. Such a claim requires the third party to establish "not only (1) that it is likely to benefit from the contract, but also (2) that a motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Id.* at 126–27.

For the second element relating to the motivating purpose of the contract, it is insufficient to have "knowledge that a benefit to the third party may follow from the contract." *Id.* at 133. For example, in *Goonewardene*, a payroll company's contracts with employers provided a benefit to employees through the provision of wages but the "relevant motivating purpose [was] to provide a benefit *to the employer* [relating] to the cost and efficiency of the tasks" the payroll company performed. *Id.* at 137 (emphasis in original).

Element three calls for "a judgment regarding the potential effects that permitting third party enforcement would have on the parties' contracting goals, rather than a determination whether the parties actually anticipated third party enforcement at the time the contract was entered into." *Id.* at 133. This element is less likely to be met where contracts establish specific administrative processes to resolve breaches and whether substantial additional costs would be imposed if a third

party beneficiary is recognized. *Id.* at 134, 137 (citing *Martinez v. Socoma Cos.*, 521 P.2d 841 (Cal. 1974)). For example, *Goonewardene* held the third element was not met because the employers were "available and . . . fully capable of pursuing a breach of contract action" against the payroll company, so "permitting an employee to sue [the payroll company] for an alleged breach of its contractual obligations to [employers] is not necessary to effectuate the objectives of the contract." *Id.* at 137.

Here, like the contract in *Goonewardene*, neither element two nor element three are met by the Servicing Contract. First, the motivating purpose of the Servicing Contracts is to help the Department carry out its servicing obligations, *not* "to benefit its [borrowers] with regard to the amount [or accuracy] of [notices] they receive." *Id*. Although a recognizable benefit may be that borrowers may receive more accurate notices, it is not the *motivating* basis for the Servicing Contracts. Second, the Servicing Contracts provide ample opportunity for the Department to address potential breaches of contract. Indeed, the contracts allow the Department to withhold payment to PHEAA for loans that are not served in compliance with Department policy. (Exhibit 1 at 15). Further, the Department monitors PHEAA's performance under the servicing contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices. As a result, like in *Goonewardene*, elements two and three of the test are not met, and Winebarger's breach of contract claim fails.

**E. In the absence of consideration and definite terms, Winebarger has not alleged an implied-in-fact contract with PHEAA.**

A cause of action for a breach of an implied-in-fact contract "requires parties capable of consent, the consent of those parties, a lawful object, and sufficient consideration." *ASP Props. Grp. v. Fard, Inc.*, 35 Cal. Rptr. 3d 343, 351 (Ct. App. 2005). Under California Civil Code § 1605, consideration is "any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered,

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor." However, conferring a benefit or suffering prejudice "'must actually be bargained for as the exchange for the promise[]' [or, p]ut another way, the benefit or prejudice must have induced the promisor's promise." *Steiner v. Thexton*, 226 P.3d 359, 366 (Cal. 2010) (quoting *Bard v. Kent*, 122 P.2d 8, 10 (Cal. 1942)). Additionally, a contract is void and unenforceable where it is so uncertain and indefinite that the intention of the parties on material questions cannot be ascertained. *Ladas v. Cal. State Auto. Ass'n*, 23 Cal. Rptr. 2d 810, 814 (Ct. App. 1993).

Here, Winebarger has alleged no consideration to create an implied-in-fact contract. In 2009, the Department awarded PHEAA the Servicing Contracts that "impose a number of obligations [and] govern [PHEAA's] dealings with student borrowers." (CAC at ¶ 62). "In August 2016, [Winebarger's] loans were transferred to PHEAA." (CAC at ¶ 89). Winebarger did not *choose* PHEAA as a servicer. Thus, there was no bargained-for exchange and any contract between Winebarger and PHEAA would lack consideration.

Moreover, even if a contract was formed, the terms are too indefinite to be upheld by the Court. Winebarger describes PHEAA's duties under the contract as providing "sound information and counseling with respect to student loans." (CAC at ¶ 140). The vagueness of these duties renders any contract unenforceable.

**F. Winebarger lacks standing to pursue her UCL claim and otherwise fails to state a claim.**

**1. Winebarger lacks standing to bring a UCL claim.**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, it applies to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See* *Pastoria v. Nationwide Ins.*, 6 Cal. Rptr. 3d 148, 153 (Ct. App. 2003).

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

"To assert a UCL claim, a private plaintiff [must] have 'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'" *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting Cal. Bus. & Prof. Code § 17204). Where the allegations rely on a purported "obligation to pay a future . . . payment" and "the actual amount owed" is unknown, a plaintiff has not lost money or property. *Moody v. Ocwen Loan Servicing, LLC*, CV 15-5186-DMG (GJSx), 2016 U.S. Dist. LEXIS 190592, at *8 (C.D. Cal. Feb. 22, 2016).

Here, Winebarger alleges that she "*will be* required to make more student loan payments" and was "unable to make rational and informed decisions." (CAC at ¶ 156) (emphasis added). Neither of these harms involves a prior loss of money or property. As a result, Winebarger lacks standing to bring a UCL claim.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**2. Winebarger's allegations are insufficient to state a claim under the UCL.**

Consumer UCL claims are analyzed under either the public policy or balancing tests. *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014). Under the public policy test, a plaintiff must show that the defendant's alleged practice violates some identified public policy. *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 813 (N.D. Cal. 2011). In other words, a plaintiff's clam must "be tethered to some specific constitutional, statutory, or regulatory provisions." *McVicar*, 1 F. Supp. at 1054 (citing *Scripps Clinic v. Superior Court*, 134 Cal. Rptr. 2d 101 (Ct. App. 2003)). Failure to cite a California policy providing that the defendant's conduct is unfair is grounds for dismissal. *Nioopour v. Ocwen Loan Servicing, LLC*, No. 17cv2015-MMA (WVG), 2018 U.S. Dist. LEXIS 29761, at *18–19 (S.D. Cal. Feb. 23, 2018) (dismissing a claim that failed to tether an unfair practice to a *specific* constitution, statutory, or regulatory provision).

Here, Winebarger fails to identify any California policy violated by PHEAA's conduct, much less how any policy is violated. (*See* CAC at ¶ 154 (alleging that PHEAA has engaged in "unfair or deceptive practices")). Thus, under the public

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

policy test, even if Winebarger has standing to bring a UCL claim, it fails as a matter of law.

Next, under the balancing test, a business practice is "unfair" "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 316 (Ct. App. 1999). This test requires courts to "examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer," and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). Where the allegation is a failure to remedy, the defendant must have knowledge of the issue for conduct to be considered unscrupulous or substantially injurious. *See Rice v. Sunbeam Prods.*, No. CV 12-7923-CAS-(AJWx), 2013 U.S. Dist. LEXIS 7467, at *28–29 (C.D. Cal. Jan. 7, 2013). Further, allegations must allege facts to support how harm is weighed against the reasons for the harm. *See Marques v. Fed. Home Loan Mortg. Corp.*, No. 12cv1873 – IEG (MDD), 2013 U.S. Dist. LEXIS 66498, at *22 (S.D. Cal. May 8, 2013) (dismissing a claim where the plaintiffs "fail[ed] to allege facts to support their legal conclusion that injury was not outweighed" by reasons for the injury).

Winebarger's complaint fails to allege whether she notified PHEAA that her qualifying payments count was incorrect. She therefore has not pleaded that PHEAA's conduct was sufficiently unscrupulous or substantially injurious to support a UCL claim. As a result, Winebarger's UCL claims fail as a matter of law.

## CONCLUSION

Winebarger has suffered no injury-in-fact; her state-law claims are preempted; and she has otherwise failed to allege crucial elements of each claim individually. Her complaint should be dismissed with prejudice.

DATED this 26th day of April, 2019.

**BALLARD SPAHR LLP**

By: */s/ Mark S. Kokanovich*
John C. Grugan
Thomas F. Burke
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Mark S. Kokanovich
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400