Brownstein Hyatt Farber Schreck, LLP
Jonathan C. Sandler (State Bar No. 227532)
jsandler@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
Telephone: 310.500.4600
Facsimile: 310.500.4602

Attorneys for Defendant
NELNET SERVICING, LLC [ERRONEOUSLY SERVED AS NELNET, INC.]

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

LISA WINEBARGER, on behalf of herself and all others similarly situated,

Plaintiff,

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY and NELNET, INC.,

Defendants.

Case No. 2:19-CV-01503-JFW (RAOx)

**DEFENDANT NELNET SERVICING, LLC [ERRONEOUSLY SERVED AS NELNET, INC.] NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(b)(1) and 12(b)(6); MEMORANDUM POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Filed concurrently with Declaration of Jonathan C. Sandler and [Proposed] Order*]

Date: July 15, 2019
Time: 1:30 p.m.
Ctrm: 7A
Judge: Hon. John F. Walter

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION AND TO PLAINTIFF AND HER ATTORNEY OF RECORD:

PLEASE TAKE NOTICE THAT on July 15, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable John F. Walter, United States District Court Judge, in Courtroom 7A, of the United States District Court,

Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendant NELNET SERVICING, LLC [erroneously sued and served as Nelnet, Inc.] ("Nelnet") by and through its undersigned counsel, will move to dismiss certain claims asserted by Plaintiff LISA WINEBARGER, on behalf of herself and all others similarly situated ("Plaintiff" or "Winebarger").

Defendant's Motion is brought under Federal Rules of Civil Procedure Rule 12(b)(1) on the grounds that Plaintiff's claims are not ripe and that Plaintiff lacks standing to bring her claims against Nelnet and Rule 12(b)(6) on the grounds that Counts I, II, III, IV, and VI[1] of Plaintiff's Complaint ("Complaint") fail to state a claim for which relief may be granted. This Motion is based upon the accompanying Memorandum of Points and Authorities, the Declaration of Jonathan C. Sandler; the documentation on file and such other argument of counsel as the Court may wish to consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 18, 2019

Dated: April 26, 2019

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Jonathan C. Sandler
JONATHAN C. SANDLER
Attorneys for Defendant
NELNET, INC.

[1] Plaintiff's fifth cause of action is not against Nelnet.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. PROCEDURAL AND FACTUAL BACKGROUND .......... 2

A. Procedural History .......... 2

B. Factual Allegations .......... 2

III. STANDARD OF REVIEW .......... 5

A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction .......... 5

B. Rule 12(b)(6) – Failure to State a Claim for Relief .......... 5

IV. ARGUMENT .......... 6

A. This Court lacks subject matter jurisdiction because Plaintiff's claims are not ripe and because Plaintiff lacks standing .......... 6

1. Plaintiff's claims are not ripe because any alleged injuries she may suffer are contingent upon future events and she suffers no hardship having her claims dismissed .......... 6

2. Plaintiff lacks standing because she has not adequately alleged an injury-in-fact and, even if she has, her alleged injuries are not traceable to Nelnet .......... 8

a. Plaintiff has not alleged that she suffered an injury-in-fact because her alleged injuries are not actual or imminent .......... 9

b. Plaintiff's alleged injuries are not traceable to Nelnet because PHEAA exclusively administers the PSLF program .......... 10

B. Each of Plaintiff's claims against Nelnet is expressly preempted under 20 U.SC. § 1098g of the HEA because the Complaint's allegations against Nelnet relate to Nelnet's alleged failure to communicate information to Plaintiff .......... 11

C. Even if this Court has jurisdiction and Plaintiff's claims against Nelnet are not preempted, Plaintiff's claims still each fail as a matter of law .......... 14

1. Plaintiff's negligence claim against Nelnet must be dismissed with prejudice because she has not adequately alleged, nor could she, that Nelnet owes her a general duty of care and that she has suffered damages .......... 14

2. Plaintiff's breach of fiduciary duty claim must be dismissed with prejudice because she has not adequately alleged, nor could she, that Nelnet owes her a fiduciary duty and that she has suffered damages .......... 17

3. Plaintiff's breach of contract claim must be dismissed with prejudice because she has not adequately alleged, nor could she, that Nelnet's servicing contract with the DOE manifests a clear intent that borrowers may enforce its provisions .......... 18


BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

## TABLE OF CONTENTS
## (continued)

**Page**

4. Plaintiff's breach of implied contract claim fails for lack of mutual assent, consideration, and damages .......................... 21
5. Plaintiff's UCL claim must be dismissed because she has not alleged Nelnet acted Unlawfully or Unfairly ..................... 24
    a. Because Plaintiff's common law claims fail, her UCL claim for "unlawful" conduct also fails ................ 24
    b. Plaintiff's UCL claim under the "unfairness" prong fails because she has not suffered any injury ................. 25

V. CONCLUSION ......................................................................................... 25

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Wright*,
468 U.S. 737 (1984) .......... 5

*Armstrong v. Exceptional Child Care, Inc.*,
135 S. Ct. 1378 (2015) .......... 19

*Artichoke Joe's v. Norton*,
216 F. Supp. 2d 1084 (E.D. Cal. Aug. 5, 2002) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 6

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*,
563 U.S. 110 (2011) .......... 19, 20

*Azzini v. Countrywide Home Loans*,
No. 09cv787 DMS (CAB), 2009 WL 5218042 (S.D. Cal. Dec. 29, 2009) .......... 16

*Ballistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 2009) .......... 6

*Bergman v. Bank of Am.*,
No. C-13-00741 JCS, 2013 WL 5863057 (N.D. Cal. Oct. 23, 2013) .......... 21

*Bova v. City of Medford*,
564 F.3d 1093 (9th Cir. 2009) .......... 5

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) .......... 2, 3

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) .......... 19, 20

*Chae v. SLM Corp.*,
593 F. Supp. 936 (9th Cir. 2010) .......... 12, 14

*Conder v. Home Sav. of Am.*,
680 F. Supp. 2d 1168 (C.D. Cal. 2010) ........ 22

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007) ........ 24

*Dichter-Mad Family Partners, LLP v. U.S.*,
707 F. Supp. 2d 1016 (C.D. Cal. 2010), *aff'd* 709 F.3d 749 (9th Cir. 2013) ........ 5

*Edwards v. Ocwen Loan Servicing*,
LLC, 24 F. Supp. 3d 21 (D.D.C. 2014) ........ 22

*Gilbert v. Chase Home Fin.*,
LLC, No. 1:13-CV-265 AWI SKO, 2013 WL 2318890 (E.D. Cal. May 28, 2013) ........ 21

*Gumbs v. Litton Loan Servicing et al.*,
No. 2:09–cv–01159–GEB–GGH, 2010 WL 1992199 (E.D. Cal. May 13, 2010) ........ 15

*Harris v. Bd. of Supervisors, Los Angeles Cnty.*,
366 F.3d 754 (9th Cir. 2004) ........ 9

*Keller v. City of Fremont*,
719 F.3d 931 (8th Cir. 2013) ........ 11

*Lawson-Ross v. Great Lakes Higher Ed. Corp.*,
No. 1:17-CV-253-MW/GRJ, 2018 WL 5621872 (N.D. Fla. Sept. 20 2018) ........ 12

*Linsley v. FMS Inv. Corp.*,
No. 3:11cv961 (VLB), 2012 WL 1309840 (D. Conn. June 25, 2012) ........ 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 8, 9

*Madrigal v. Nationstar Mortgage*,
No. 1:15–cv–00809–SAB, 2017 WL 951799 (E.D. Cal. Mar. 13, 2017) ........ 18

*Marks v. Ocwen Loan Servicing*,
No. C 07–2133 SI, 2009 WL 975792 (N.D. Cal. Apr. 10, 2009) ........ 17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........ 5, 10

*Nelson v. Great Lakes Ed. Servs., Inc.*,
No. 3:17-CV-00183-NJR-SCW, 2017 WL 6501919 (S.D. Ill. Dec. 19 2017) ........ 12

*Novak v. Warner Bros. Pictures LLC*,
No. CV074000GAFPLAX, 2008 WL 11411639 (C.D. Cal. Oct. 20, 2008), *aff'd sub nom. Novak v. Warner Bros Pictures, LLC*, 387 F. App'x 747 (9th Cir. 2010) ........ 21

*Pritikin v. Dept. of Energy*,
254 F.3d 791 (9th Cir. 2001) ........ 10

*Reiydelle v. J.P. Morgan Chase Bank, N.A.*,
No. 12-CV-06543-JCS, 2014 WL 312348 (N.D. Cal. Jan. 28, 2014) ........ 23

*Resnick v. Hyundai Motor Am., Inc.*,
No. CV 16-00593-BRO, 2017 WL 6549931 (C.D. Cal. Aug. 21, 2017) ........ 25

*Ruiz v. Cent. Mortg. Co.*,
No. CV 14–08627 MMM, 2015 WL 12683873 (C.D. Cal. Apr. 2, 2015) ........ 15, 16

*Scott v. Pasadena Unified School Dist.*,
306 F.3d 646 (9th Cir. 2002) ........ 6, 7

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ........ 9

*Spreewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 6

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 6

*Texas v. United States*,
523 U.S. 296 (1988) ........ 6, 7

*Wash. Envtl. Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) ........ 10

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) .......... 9

**California Cases**

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal.4th 163 (Cal. 1999) .......... 25

*Jones v. Aetna Cnty. & Surety Co.*,
26 Cal.App.4th 1717 (Cal. App. 1994) .......... 19

*Ky. Fried Chicken of Cal. v. Super. Ct.*,
14 Cal. 4th 814 (Cal. 1997) .......... 15

*Ladd v. Cnty. of San Mateo*,
12 Cal. 4th 913 (Cal. 1996) .......... 15

*Retired Employees Assn. of Orange Cnty., Inc. v. Cty. of Orange*,
52 Cal. 4th 1171, 266 P.3d 287 (2011) .......... 21

*Saunders v. Super. Ct.*,
27 Cal.App.4th 832 (Cal. App. 1994) .......... 24

*Smith v. State Farm Mut. Auto. Ins. Co.*,
93 Cal.App.4th 700 (Cal. App. 2001) .......... 24

*Stanley v. Richmond*,
35 Cal. App. 4th 1070 (Cal. App. 1995) .......... 17

**Other State Cases**

*Moreno v. Citibank, N.A.*,
No. C 09–5339 CW, 2010 WL 1038222.......... 17

**Federal Statutes**

20 U.S.C.
§ 1078-3(b)(1)(F).......... 12
§ 1083(e)(1) .......... 12
§ 1083(e)(2) .......... 12
§ 1087f(b)(2).......... 23
§ 1098g .......... 11, 12, 25

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

**California Statutes**

Cal. Bus. & Prof. Code
§ 17200 .......... 24

Cal. Civ. Code
§ 1559 .......... 18
§ 1619 .......... 21
§ 1620 .......... 21
§ 1621 .......... 21

**Other Authorities**

34 C.F.R. § 668.41(b) .......... 12

34 C.F.R. § 674.31 .......... 12

34 C.F.R. § 674.42 .......... 12

34 C.F.R. § 682.205 .......... 12

34 CFR § 685.205(b)(9) .......... 13, 14

83 Fed. Reg. 10619 .......... 12

83 Fed. Reg. 10621 .......... 12

Fed. R. Civ. P. Rule 12(b) .......... 2, 3

Fed. R. Civ. P. 12(b)(1) .......... 1, 25

Fed. R. Civ. P. 12(b)(6) .......... 1, 5, 25

Local Rule 7-3 .......... 2

Local Rule 8 .......... 5, 6

Local Rule 8-3 .......... 2

United States Constitution Article III .......... 5, 8, 9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Nelnet submits the following Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss (the "Motion") Plaintiff Lisa Winebarger's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I. INTRODUCTION

This is a case of overreach. In the Complaint, Plaintiff throws different theories and allegations against differently situated defendants against the wall to see what sticks. None of the theories or allegations properly lie against Nelnet.

Plaintiff is a borrower of federally-held student loans from the United States Department of Education (the "DOE"). The terms of Plaintiff's loans are governed by the standard-form agreements entered into by and between Plaintiff and the DOE. Nelnet is a loan servicer who, for a short time, serviced Plaintiff's student loans for the DOE. Nelnet does not and did not set the terms of the loans. Nelnet does not and did not contract directly with borrowers of federally-held student loans; it is simply a loan servicer. Indeed, Nelnet does not even make a determination of how payments should be categorized by the DOE or others. It simply services the loans.

Plaintiff alleges five causes of action against Nelnet: (1) negligence; (2) breach of fiduciary duty; (3) breach of contract; (4) breach of implied in fact contract; and (5) unfair deceptive trade practices. These claims are all related to the possible future discharge of Plaintiff's loans under the Public Service Loan Forgiveness ("PSLF") program. As will be seen below, Plaintiff's claims are not ripe, and she lacks standing to allege these claims against Nelnet. To the degree that she has standing to allege any claims, these claims are preempted as a matter of law. Finally, to the degree that the claims are not preempted, they fail to state a claim against Nelnet for which relief can be granted. Accordingly, Plaintiff's Complaint must be dismissed against Nelnet.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural History

Plaintiff filed her Complaint on February 28, 2019. On March 26, 2019, Plaintiff and Nelnet filed a stipulation pursuant to Local Rule 8-3 agreeing to an extension of time for Nelnet to respond to the Complaint up to and including April 26, 2019. (ECF #9). In response, Nelnet files this Motion seeking to dismiss the five causes of action against Nelnet. Pursuant to Local Rule 7-3, counsel for the parties conferred regarding Nelnet's Motion on April 18, 2019. Counsel for Plaintiff informed Nelnet that Plaintiff opposes this Motion.

### B. Factual Allegations

The following facts and allegations establish Plaintiff's claims against Nelnet should be dismissed:

- Student loans for which the federal government—specifically, the Department of Education—is the lender and owner of the promissory note are known as "Direct Loans." (Compl. ¶¶ 11, 33). The federal government lends Direct Loans pursuant to Master Promissory Notes ("MPN") owned by the federal government. Each borrower completes an MPN before loan proceeds are disbursed. (*Id.* ¶ 36).
- To finance law school, Plaintiff took out several Direct Loans. (*Id.* ¶ 11).[2]
- Following law school, Plaintiff has been employed as an attorney for a not-for-profit organization since April 1, 2013. (*Id.* ¶¶ 13-15).

[2] Attached is one of Plaintiff's MPNs for her Direct Loans, with confidential personal information redacted as an exhibit to the Declaration of Jonathan Sandler. (Ex. A). As Plaintiff acknowledges, all of her MPNs are standardized and contain the same language. (Compl. ¶ 48). Because the Complaint quotes and relies on the language of an MPN and the MPNs are the underlying loan agreements at issue, they are incorporated by reference and are properly considered under Rule 12(b). *See Branch v. Tunnell*, 14 F.3d 449, at 453 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

- Under the PSLF program, a public service worker's Direct Loan debt is forgiven entirely after 120 qualifying payments. (*Id.* ¶ 46). A Direct Loan payment counts as a "qualifying payment" toward PSLF when it is: (i) for the full monthly amount due under the qualifying payment plan; (ii) made within fifteen days of the due date; and (iii) made while the borrower is working for a "covered employer" (or multiple covered employers) in full time position. (*Id.* ¶ 47).
- In 2012, DOE awarded PHEAA an exclusive contract to manage the PSLF program. (*Id.* ¶ 27).
- Plaintiff's loans were initially serviced by ACS Education Services. She was approved for an IDR plan in April 2013, and made her first qualifying payment toward PSLF in May 2013. (*Id.* ¶ 83).
- In July 2013, Plaintiffs loans were transferred to a new servicer: Nelnet Servicing, LLC. (*Id.* ¶ 85).
- In 2009, DOE awarded contracts to PHEAA and Nelnet to service Direct Loans. Specifically, Nelnet's indirect subsidiaries Nelnet Servicing LLC and Great Lakes Educational Loan Services are two of four private sector companies to which DOE awarded a contract to service student loans owned by DOE. (*Id.* ¶ 30). These contracts require the servicers to comply with all applicable laws in servicing federal student loans. (*Id.* ¶¶ 62, 63).[3]
- Immediately upon transfer to Nelnet, Nelnet placed Plaintiff's loans in a 60-day administrative forbearance. That forbearance ended in or about

[3] Nelnet Servicing, LLC's 2009 servicing contract with the DOE (the "2009 Servicing Contract") is attached as an exhibit to the Declaration to Jonathan Sandler. (Ex. B). The Complaint directly quotes the 2009 Servicing Contract, and it therefore is incorporated by reference. (Compl. ¶¶ 63–64). Moreover, Plaintiff's third cause of action against Nelnet asserts that she may enforce the 2009 Servicing Contract as a third-party beneficiary. Thus, it is properly considered under Rule 12(b). *Tunnell*, 14 F.3d at 453. The 2009 Servicing Contract is also publically available at https://www2.ed.gov/policy/gen/leg/foia/contract/nelnet-061709.pdf.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

September 2013. Plaintiff alleges that Nelnet did not disclose the placement of the forbearance to her at the time.[4] (*Id.* ¶ 86).

- In July 2016, Plaintiff submitted an Employment Certification form for PSLF. In August 2016, Plaintiffs loans were therefore transferred to PHEAA. (*Id.* ¶ 89).
- As the exclusive servicer for the loans of public-servant borrowers tracking toward PSLF, PHEAA is responsible for managing all aspects of borrowers' interaction with the PSLF program, guiding borrowers in pursuing employment certification, evaluating borrowers' qualifying payments, and submitting borrowers' loan forgiveness applications to DOE. (*Id.* ¶ 57).
- Plaintiff alleges that, as of early February 2019, she has made at least 59 on-time qualifying payments for the full amount billed by her loan servicer under a qualifying payment plan, while working for a covered employer. (*Id.* ¶ 97). In other words, Plaintiff alleges she must make another 61 monthly qualifying payments to be eligible for PSLF.
- PHEAA has allegedly furnished Ms. Winebarger with fluctuating payment counts that do not reflect the full number of qualifying payments she believes she has made. (*Id.* ¶ 2). In October 2018, Plaintiff's billing statement from PHEAA stated that she had made 54 qualifying payments toward PSLF, with the November 2018 statement reflecting 20 qualifying payments, and the December 2018 statement reflecting 26 qualifying payments. (*Id.* ¶¶ 93-95).
- Plaintiff alleges that she and the putative classes have been harmed by Defendants' actions in two ways: (1) they will be required to make more student loan payments than they otherwise would have to make because they have not been credited with the full amount of qualifying payments that they have made; and (2) because of the failure to credit the full amount of

---

[4] Should this action proceed to discovery, Nelnet believes the evidence will demonstrate that the forbearance was timely disclosed to Plaintiff.

qualifying payments, they are unable to make rational and informed decisions as they weigh whether and when to consider private sector (i.e. non-PSLF-eligible) employment. *E.g.*, (*Id.* ¶ 125).

## III. STANDARD OF REVIEW

Here, Plaintiff's claims fail as a matter of law and should be dismissed under both Rule 12(b)(1) and Rule 12(b)(6).

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Under Article III of the Constitution, federal courts lack jurisdiction over claims that do not present an actual "case or controversy." *Allen v. Wright*, 468 U.S. 737, 750 (1984). "Two components of the Article III case or controversy requirement are standing and ripeness." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). Here, Plaintiff cannot show either. The concepts of standing and ripeness are closely related, as ripeness prevents courts from hearing cases where certain contingent future events must occur for the plaintiff to suffer an injury-in-fact, which is the first prong in the standing analysis. *Id*. ("In this way, ripeness and standing are intertwined."). A "plaintiff may [not] rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation omitted). As will be seen below, Plaintiff cannot meet this threshold burden. Her claims are not ripe and she has not suffered any concrete injury to date that is traceable to Nelnet.

### B. Rule 12(b)(6) – Failure to State a Claim for Relief

A motion to dismiss under Rule 12(b)(6) is governed by Rule 8's pleading standards. *See Dichter-Mad Family Partners, LLP v. U.S.*, 707 F. Supp. 2d 1016, 1025 (C.D. Cal. 2010), *aff'd* 709 F.3d 749 (9th Cir. 2013). Under Rule 8, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

In determining whether a complaint states a plausible claim for relief, the Court must draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. The Court should not accept as true those allegations which state only legal conclusions. *Id*. at 678–79. "Rule 8 . . . does not unlock the doors for a plaintiff armed with nothing more than conclusions." *Starr v. Baca*, 652 F.3d 1202, 1219 (9th Cir. 2011) (citing *Ashcroft*, *supra*). Furthermore, "a court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, dismissal is appropriate when the plaintiff has failed to assert "a cognizable legal theory or [an] absence of sufficient facts alleged under a cognizable theory." *Ballistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 2009). As demonstrated below, Plaintiff fails to state a claim for relief against Nelnet because her claims are both preempted and deficient as a matter of law.

## IV. ARGUMENT

### A. This Court lacks subject matter jurisdiction because Plaintiff's claims are not ripe and because Plaintiff lacks standing

Ripeness and standing prevent courts from adjudicating abstract or speculative disagreements. Here, the Complaint implicates both doctrines, but satisfies neither.

#### 1. Plaintiff's claims are not ripe because any alleged injuries she may suffer are contingent upon future events and she suffers no hardship having her claims dismissed

Claims are not ripe if they rely "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1988). The underlying purpose of the ripeness doctrine is "to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

(1967)). Ripeness is a two-part inquiry, requiring courts to consider: (1) the fitness of issues for judicial review; and (2) the hardship to the parties of withholding court consideration. *Id*. Claims are not fit for judicial review if they are remote and abstract. *Texas*, 523 U.S. at 301. Moreover, a party does not suffer hardship if there is no immediate harm to the party's interests should the court decline jurisdiction. *Id*. at 301–02.

Plaintiff alleges that as of February 2019, she has made 59 qualifying payments for PSLF. (Compl. ¶¶ 91, 97). Using Plaintiff's own calculation of qualifying payments, Plaintiff would not be eligible for loan forgiveness until nearly *five years from now*—after she makes her March 2024 payment. Reaching eligibility by this date, however, is contingent on multiple and mandatory speculative requirements all being consistently satisfied every month until March 2024. Such contingencies make her claims unfit for judicial review.

To reach the point where Plaintiff makes her first alleged "overpayment" in April 2024, Plaintiff will need to make consecutive, full payments, every month until this date. (Compl. ¶ 47) (explaining plaintiff must pay the full monthly amount under the IDR plan to count as a qualifying payment). In other words, Plaintiff will need to make more than 50 additional and consecutive qualifying monthly payments to even be eligible. Further, Plaintiff will need to remain employed by a "covered employer" until this time. (Compl. ¶ 47). Finally, this alleged future injury rests on the notion that, if payments have been miscounted, that PHEAA cannot remedy the miscounting in the next five years.

This Court, and indeed Plaintiff herself, cannot possibly know whether Plaintiff will make the next 59 monthly consecutive payments in full. She might miss a month because she has other debt that needs to be satisfied. There are any number of events that might occur that would prevent Plaintiff from making the requisite payments in order to be qualified. In addition, while Plaintiff acknowledged that in order to qualify for PSLF, she "does not realistically have the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

freedom" to leave qualified employment until her loans are forgiven (Compl. ¶ 98), there is no way for the Court to anticipate whether she will stay in a qualified employment for the next five years. She might change employers or become unemployed. Any number of unforeseen events can occur in the interim that may impact Plaintiff's decision-making or options.

Plaintiff will not sustain any hardship if this Court finds it lacks jurisdiction under Article III. Plaintiff does not allege—and there simply is no conceivable possibility—that Plaintiff will be immediately harmed if this Court finds her claims unripe. Significantly, it remains possible that if certain contingencies do occur, Plaintiff will not be harmed at all. Thus, if this Court declines jurisdiction, Plaintiff will not suffer any hardship now or in the near-term.

As it stands, the Complaint essentially asks this Court to weigh in on an abstract disagreement Plaintiff has regarding the number of qualified payments she has made under PSLF and how payments will be counted if everything else occurs as it must over the next five years. This Court should not. Plaintiff's claims against Nelnet are not ripe and should be dismissed.

**2. Plaintiff lacks standing because she has not adequately alleged an injury-in-fact and, even if she has, her alleged injuries are not traceable to Nelnet**

A plaintiff has the burden of establishing standing by alleging the following three elements: (1) an injury-in-fact; (2) a causal connection between the injury and conduct complained of, *i.e.*, that it is fairly traceable to the conduct of defendant; and (3) that a favorable decision will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). These elements are "[…] an indispensable part of the plaintiff's case[.]" *Id*. at 561.

Plaintiff's allegations fail to satisfy the first two prongs of the standing requirement. First, and for similar reasons to why her claims are not ripe, Plaintiff has not sufficiently alleged an injury-in-fact because any injuries she may suffer are

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

not actual or imminent. Second, her alleged injuries, if any, are not traceable to Nelnet because—as Plaintiff implicitly recognizes in her Complaint—Nelnet does not count or furnish information regarding qualified loan payments for the purpose of the PSLF-eligibility.

**a. <u>Plaintiff has not alleged that she suffered an injury-in-fact because her alleged injuries are not actual or imminent</u>**

Plaintiff alleges that, as a result of miscounting of her qualified payments and being provided with varying information regarding how many qualified payments she has made, she has suffered two injuries. First, she alleges that she will have to make more than the 120 required payments to have her loans forgiven (Compl. ¶¶ 97, 125, 130, 137, 144, 156). Second, she alleges that she cannot make "rational and informed decisions as to whether and when to consider private sector (i.e. non-PSLF eligible) employment." (Compl. ¶ 98) (also alleging "Plaintiff does not realistically have the freedom to look beyond employment at PSLF-eligible covered employers ***until her loan is forgiven***.") (emphasis added); *see also* (Compl. ¶¶ 125, 130, 137, 144, 156). These alleged injuries are not sufficient to confer standing.

"[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000)). Furthermore, the harm must be "actual or imminent." *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 760 (9th Cir. 2004) (citing *Lujan* 504 U.S. at 560). In other words, the injury must not be conjectural or hypothetical. *Lujan*, 504 U.S. at 560; *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (internal citations omitted).

Here, Plaintiff has not suffered an injury-in-fact as any harm she would

suffer would not occur for five years and assumes that she continues to qualify for PSLF: her claimed injuries are neither actual nor imminent. *See* (Compl. ¶¶ 97, 98, 125, 130, 137, 144, 156). Injuries that may or may not occur in the coming five years are neither actual nor imminent; they are conjecture. Accordingly, Plaintiff does not allege she has suffered an injury-in-fact, and her claims must be dismissed.

**b. Plaintiff's alleged injuries are not traceable to Nelnet because PHEAA exclusively administers the PSLF program**

Plaintiff's allegations preclude the possibility that her two alleged injuries—the possibility that she will make more than 120 payments before receiving PSLF loan forgiveness and her inability to make informed choices about when to leave the public sector—are attributable to Nelnet. Thus, Plaintiff lacks standing to bring claims against Nelnet.

The traceability (or causation) prong requires a plaintiff to demonstrate that each defendant's conduct caused plaintiff's injuries. *See, e.g.*, *Pritikin v. Dept. of Energy*, 254 F.3d 791, 798 (9th Cir. 2001). "To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya*, 658 F.3d at 1070 (citing *Allen* 468 U.S. at 757); *see also Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) (affirming dismissal of plaintiffs' claims under the traceability prong when they "offer only vague, conclusory statements" with respect to how the challenged conduct caused their injuries). Ultimately, it is not enough that the plaintiff's injuries are traceable to the conduct of a single, named defendant, but that each defendant engaged in conduct that caused the plaintiff's harm. *See Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1106 (E.D. Cal. Aug. 5, 2002) (dismissing certain claims as to some defendants because the alleged injuries were not traceable the conduct of those defendants).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

Here, Plaintiff alleges PHEAA is the "exclusive loan servicer for borrowers actively pursuing PSLF." (Compl. ¶ 2); *see also* (Compl. ¶ 27). Further, "As the exclusive servicer for the loans of public-servant borrowers tracking toward PSLF, ***PHEAA*** . . . ***is responsible for managing all aspects of borrowers' interaction with the PSLF program***." (Compl. ¶ 57) (emphasis added). Plaintiff further recognizes that "PHEAA . . . characterizes whether each payment qualifies for PSLF[,]" and that "DOE relies on PHEAA's determinations in evaluating whether to grant loan forgiveness[.]" (Compl. ¶¶ 60–61). Finally, Plaintiff asserts that PHEAA—not Nelnet—has provided her with varying numbers of qualified payments such that she cannot make informed life decisions. (Compl. ¶¶ 93–98).

All of Plaintiff's causes of action and alleged injuries pertain to her eligibility for PSLF. Notably, Plaintiff does not allege Nelnet counts qualified payments, furnishes information regarding qualified payments, or in any other way controls her eligibility for PSLF. Nor could Plaintiff plausibly make such allegations, as she alleges PHEAA is "exclusively" responsible for administration of the PSLF program. (Compl. ¶¶ 2, 27, 57, 60–61). Plaintiff's claimed injuries therefore are not traceable to any conduct by Nelnet. Because she lacks standing, her claims against Nelnet must be dismissed.

**B. Each of Plaintiff's claims against Nelnet is expressly preempted under 20 U.SC. § 1098g of the HEA because the Complaint's allegations against Nelnet relate to Nelnet's alleged failure to communicate information to Plaintiff**

Even if Plaintiff did have standing to bring her claims, her claims would be preempted. The Supremacy Clause of the United States Constitution grants Congress "virtually unfettered power to preempt state laws…by enacting a statute containing an express preemption provision." *Keller v. City of Fremont*, 719 F.3d 931, 939 (8th Cir. 2013) (quoting *Arizona v. United States*, 132 S. Ct. 2492, 2498 (2012)) (internal quotation marks omitted).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

Congress included such an express preemption provision in the Higher Education Action ("HEA") by providing that "[l]oans made, insured, or guaranteed pursuant to a program authorized by title IV of the [HEA] ***shall not be subject to any disclosure requirements of any state law***." 20 U.S.C. § 1098g (emphasis added). Section 1098g embodies the Congressional imperative for uniformity in student loan servicing, especially where "[f]ederal law provides a carefully crafted disclosure regime specifying what information must be provided in the context of federal loan programs." Office of the Secretary, Department of Education; Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 83 Fed. Reg. 10619, 10621 (March 12, 2018) (citing 20 U.S.C. §§ 1078-3(b)(1)(F), 1083(e)(1) and (2), and 34 C.F.R. §§ 668.41(b), 674.31, 674.42, and 682.205).

The Ninth Circuit has held that § 1098g expressly preempts state statutory and common law claims insofar as they are "improper-disclosure claims." *Chae v. SLM Corp.*, 593 F. Supp. 936, 942 (9th Cir. 2010) (affirming dismissal of plaintiff's UCL claims asserting Sallie Mae made misleading communications about its loan-servicing practices). District courts have subsequently applied *Chae*'s reasoning in dismissing claims under the guise of state law seeking to impose disclosure requirements on servicers beyond the disclosures required under the HEA. *See Lawson-Ross v. Great Lakes Higher Ed. Corp.*, No. 1:17-CV-253-MW/GRJ, 2018 WL 5621872, at *1 (N.D. Fla. Sept. 20 2018) (finding plaintiff's state common law claims preempted because "[c]laims that a servicer provided inaccurate information is no different than a claim that Great Lakes failed to make proper disclosures."); *Nelson v. Great Lakes Ed. Servs., Inc.*, No. 3:17-CV-00183-NJR-SCW, 2017 WL 6501919, at *3 (S.D. Ill. Dec. 19 2017) (determining that state common law claims premised on Great Lake's alleged failure to communicate information about income-driven repayment options were preempted); *and Linsley v. FMS Inv. Corp.*, No. 3:11cv961 (VLB), 2012 WL 1309840, at *6 (D. Conn. June 25, 2012)

(dismissing plaintiff's complaint alleging that disclosures—which were compliant with the HEA—were misleading).

While it is difficult to decipher exactly what Plaintiff contends Nelnet did wrong in her five causes of action against Nelnet, it appears that the claims amount to improper-disclosure claims, which are expressly preempted by the HEA. The complained-of conduct in each of Plaintiff's causes of action against Nelnet includes Nelnet's alleged failure to "communicate significant information to borrowers."[5] (Compl. ¶¶ 122, 123, 128, 134, 141, and 154).

Plaintiff's sole specified grievance with Nelnet appears to concern Nelnet's alleged failure to disclose information to her related to placing her loans in an administrative forbearance in 2013. (Compl. ¶¶ 86–89). The HEA's regulations and Nelnet's servicing contract, however, provide Nelnet the discretion to apply the administrative forbearance *without* notifying Plaintiff or obtaining her permission. *See* 34 CFR § 685.205(b)(9) ("In certain circumstances, the Secretary grants forbearance without requiring documentation from the borrower. These circumstances include but are not limited to . . . (9) A period of up to 60 days necessary for the Secretary to collect and process documentation supporting the borrower's request for a . . . change in repayment plan"); 2009 Servicing Contract at 59 ("There is authority in the DL for unlimited discretionary forbearances.). Here, when Plaintiff's loans were transferred from ACS Education Services ("ACS") to Nelnet in July 2013, ACS did not provide Nelnet the information necessary to continue Plaintiff's IDR payment plan. *See* (Compl. ¶¶ 83-85). Accordingly, Nelnet placed Plaintiff's Direct loans in administrative forbearance

[5] The other complained-of conduct consistent through each cause of action is that Nelnet allegedly failed to: accurately count qualifying payments towards PSLF, maintain accurate records of payment timing and amounts, and/or maintain accurate records of other information pertinent to qualifying payments. (Compl. ¶¶ 78, 122, 123, 128, 134, 141, and 154). However, as discussed in Section IV.A.2.b, *supra*, PHEAA exclusively administers the PSLF program, and thus, Nelnet could not have engaged in the conduct related to PSLF administration in each of Plaintiff's five causes of action against Nelnet.

pursuant to § 685.205(b)(9). Moreover, should this action proceed, the evidence will demonstrate that—despite not being required to notify Plaintiff of the forbearance—Nelnet did in fact notify Plaintiff. Thus, while Plaintiff may attempt to portray her claims premised on this conduct as something other than requiring Nelnet to make disclosures above-and-beyond those required by the HEA, they are precisely just that, and are therefore analogous to the above-referenced cases that were dismissed on similar allegations.[6]

Plaintiff's common law and UCL claims are attempts to impose additional disclosure requirements on Nelnet beyond those required under the HEA. They are thus improper-disclosure claims and are expressly preempted. All of Plaintiffs claims must be dismissed with prejudice.

**C. Even if this Court has jurisdiction and Plaintiff's claims against Nelnet are not preempted, Plaintiff's claims still each fail as a matter of law**

Each of the fives causes of action against Nelnet in Plaintiff's shotgun pleading fail to state a claim for relief and, therefore, must be dismissed.

**1. Plaintiff's negligence claim against Nelnet must be dismissed with prejudice because she has not adequately alleged, nor could she, that Nelnet owes her a general duty of care and that she has suffered damages**

Plaintiff asserts that Nelnet was negligent in servicing her federal student loans because Nelnet's actions did not meet the duty of care required for PSLF-eligible borrowers like her. Plaintiff is wrong, and her negligence claim fails for lack of duty and lack of damages.

[6] While it appears that Plaintiff's sole issue with Nelnet temporarily placing her loans in forbearance is Nelnet's alleged failure to disclose the forbearance, to the extent Plaintiff contends the placement of the forbearance without her consent forms the basis of her claims, such claims are still preempted under the obstacle preemption doctrine as articulated in *Chae*.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

The elements of a negligence cause of action are: (1) a duty of care; (2) a breach of that duty; (3) causation; and (4) damages. *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (Cal. 1996). "[T]he existence of a duty is a question of law for the court." *Ky. Fried Chicken of Cal. v. Super. Ct.*, 14 Cal. 4th 814, 819 (Cal. 1997).

The Central District of California has recognized the long-standing view under California law that loan servicers do not owe general duties of care to borrowers. *Ruiz v. Cent. Mortg. Co.*, No. CV 14–08627 MMM (SSx), 2015 WL 12683873, at *11 (C.D. Cal. Apr. 2, 2015). In *Ruiz*, the court found no duty existed as a matter of law and dismissed plaintiff's negligence claim against his mortgage loan servicer because plaintiff merely made vague allegations that his servicer was negligent in its maintenance of account records. 2015 WL 12683873, at *11. Significantly:

> Ruiz pleads no facts plausibly suggesting that CMC acted beyond the role of a conventional loan servicer. Indeed, his allegations suggest it did not; the complaint alleges that CMC owed Ruiz a duty of care to "maintain[ ] proper and accurate loan records" and "discharge ... the maintenance, accounting, and serving of the records." These duties, which Ruiz asserts are duties of care, merely describe the traditional duties of a loan servicer; absent factual allegations that CMC acted beyond the traditional role of a loan servicer, no duty of care can arise under California law.

*Id.* In reaching this conclusion, the court recognized "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *The principle that a financial institution owes no duty to a borrower has been extended to loan servicers*." *Id.* at *11 (emphasis added) (internal citations and quotations omitted). Other courts in the Ninth Circuit have reached the same conclusion. *See, e.g., Gumbs v. Litton Loan Servicing et al.*, No. 2:09–cv–01159–GEB–GGH, 2010 WL 1992199, at *5 (E.D. Cal. May 13, 2010) (rejecting plaintiff's assertion that a "general duty not to harm another is owed to everyone" and dismissing plaintiff's

complaint when there were no allegations the defendants exceeded their traditional role as loan servicers); *Azzini v. Countrywide Home Loans*, No. 09cv787 DMS (CAB), 2009 WL 5218042, at *2 (S.D. Cal. Dec. 29, 2009) (dismissing plaintiff's negligence claim against a loan servicer applying the same reasoning).

Here, Plaintiff alleges that Nelnet owes "a duty of care to Plaintiff and the Class and/or the Nelnet Sub-Class to use reasonable care in counting qualified payments toward PSLF, communicating significant information to borrowers, maintaining accurate records of payment timing and amounts, and/or maintaining accurate records of other information pertaining to qualifying payment eligibility including employment status and repayment plan type." (Compl. ¶ 122). Additionally, Plaintiff alleges this duty arises from Nelnet's servicing contract with the federal government. (Compl. ¶ 122). Notwithstanding, the Complaint "merely describes the traditional duties of a loan servicer," making Plaintiff's allegations akin to those that were dismissed in *Ruiz*. The Complaint contains no allegations that Nelnet once acted beyond its traditional role as a loan servicer. Without such allegations, like *Ruiz*, Plaintiff has not plausibly alleged that Nelnet owed her a general duty of care.

Moreover, Plaintiff has not asserted the *prima facie* elements of a negligence claim because she has not alleged she suffered damages. Plaintiff makes the conclusory assertion that the "Plaintiff and the Nelnet Sub-Class have been harmed by Nelnet's breach of the applicable standard of care" because they will have to make more student loan payments than otherwise required for PSLF, and because they cannot make informed life decisions about joining the private sector. (Compl. ¶¶ 124–125). These assertions do not evince that the Plaintiff *has suffered* damages by any purported breach of duty by Nelnet.

Accordingly, Plaintiff's negligence claim fails for two reasons and must be dismissed.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

**2. Plaintiff's breach of fiduciary duty claim must be dismissed with prejudice because she has not adequately alleged, nor could she, that Nelnet owes her a fiduciary duty and that she has suffered damages**

Plaintiff seemingly alleges that—by holding itself out as and acting as a federal student loan servicer—Nelnet owes a fiduciary duty to Plaintiff and that Nelnet breached that duty. Like her deficient negligence claim, this claim too fails for lack of duty and lack of damages.

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (Cal. App. 1995). Analogous to the general duty analysis discussed above, as a matter of law, California courts do not recognize a fiduciary duty owed by loan servicers to borrowers. *See Moreno v. Citibank, N.A.*, No. C 09–5339 CW, 2010 WL 1038222, at* 3 (N.D. Cal. Mar. 10, 2010) ("Courts have [ ] concluded that loan servicers do not owe a fiduciary duty to borrowers."); *Marks v. Ocwen Loan Servicing*, No. C 07–2133 SI, 2009 WL 975792, at *7 (N.D. Cal. Apr. 10, 2009) ("[A] loan servicer does not owe a fiduciary duty to a borrower beyond the duties set forth in the loan contract.").

Here, Plaintiff alleges that certain representations made by Nelnet are the source of its fiduciary duty. (Compl. ¶ 127). These representations include: "[Nelnet] works with [DOE] to help you achieve your educational goals"; Nelnet is "here for" borrowers; and Nelnet "has designed its servicing operations to comply with the Higher Education Act." (Compl. ¶¶ 56a–c). Plaintiff also asserts that because Nelnet has a call center to address borrower's questions and concerns, that it holds itself out as a source of information and guidance to borrowers. (Compl. ¶ 56b). It is unclear, however, how these representations abrogate the clear principle that loan servicers do not owe fiduciary duties to borrowers. All of the above-listed

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

representations are attempts by Nelnet to inform borrowers of its traditional functions as a federal loan servicer. Importantly, Plaintiff makes no allegations that these representations are anything other than Nelnet advertising and reaffirming these duties. Absent any allegations that Nelnet exceeded its traditional duties as a loan servicer, no fiduciary duty exists as a matter of law.

Moreover, Plaintiff provides the same conclusory allegations regarding damages as she does in her negligence cause of action. *Compare* (Compl. ¶¶129–130); *with* (Compl. ¶¶124–125). Again, assuming *arguendo* that Plaintiff has plausibly alleged Nelnet owed and breached its fiduciary duty owed to Plaintiff, these contentions cannot be construed to evince that Plaintiff has been damaged.

Because Nelnet, as Plaintiff's former student loan servicer, does not owe her a fiduciary duty as a matter of law, and because she has not plausibly alleged she has suffered damages, her fiduciary duty claim must be dismissed.

**3. Plaintiff's breach of contract claim must be dismissed with prejudice because she has not adequately alleged, nor could she, that Nelnet's servicing contract with the DOE manifests a clear intent that borrowers may enforce its provisions**

The contract that underpins Plaintiff's breach of contract cause of action is the contract between *Nelnet and the DOE*. Plaintiff is not a party to the contract. Therefore, Plaintiff can only assert this claim as a third-party beneficiary. Plaintiff, however, does not qualify.

A party does not and cannot state a breach of contract claim premised on a third-party beneficiary theory if it merely alleges that it benefited from a contract between other parties. *E.g., Madrigal v. Nationstar Mortgage*, No. 1:15–cv–00809–SAB, 2017 WL 951799, *7 (E.D. Cal. Mar. 13, 2017). Under California law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. This code provision reinforces the general common-law principle that ***intended*** as opposed to

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

***incidental*** beneficiaries can sue to enforce contracts between other parties. *Jones v. Aetna Cnty. & Surety Co.*, 26 Cal.App.4th 1717, 1724–25 (Cal. App. 1994) ("[t]he fact that the third party is only incidentally named in the contract or that the contract, if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement.").

In the context of contracts between private parties and the federal government, when a contract in essence restates statutory obligations, individuals who benefit from the contract are incidental beneficiaries and, therefore, cannot sue under the contract. *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 118 (2011). The Supreme Court has made this rule clear: "[T]he modern jurisprudence permitting intended beneficiaries to sue does not generally apply to contracts between a private party and the government[.]" *Armstrong v. Exceptional Child Care, Inc.*, 135 S. Ct. 1378, 1387 (2015). Interpreting *Astra*, the Ninth Circuit held:

> A third party that wishes to sue under a government contract must demonstrate that it is an intended beneficiary of the contract, rather than merely an incidental one. This is 'a comparatively difficult task' a party that benefits from a government contract ***is presumed to be an incidental beneficiary***, and that presumption may not be overcome without showing '***a clear intent to the contrary***.' The clear-intent hurdle is a high bar: 'even a showing that the contract operates to the third parties' benefit and was entered into with them in mind' may not suffice. Instead, a putative third-party beneficiary must demonstrate an intent on the part of the contracting parties ***to 'grant [it] enforceable rights***.'"

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016) (emphasis added) (internal citations and quotations omitted).

Here, Plaintiff's breach of contract claim relies on the same flawed logic that was rejected in *Astra* and *Caltex*. Plaintiff contends that "Defendants' Servicing Contracts with DOE make clear that the Contracts are entered into for the benefit of student borrowers[.]" (Compl. ¶ 132) ("DOE contracts with Defendants specifically

to service the loans of student borrowers."); *see also* (Compl. ¶¶ 64–67). Plaintiff further alleges that Nelnet's servicing contract specifically requires it to meet all statutory and legislative requirements. (Compl. ¶¶ 63a–e). According to Plaintiff, then, Nelnet's servicing contract with the DOE just restates its statutory obligations—which reinforces that Plaintiff's allegations are analogous to the allegations that failed in *Astra* and *Caltex*.

Plaintiff's allegations thus are insufficient to meet the "clear intent" bar set forth in *Caltex*, as the Complaint contains no allegations that Nelnet's servicing contract with DOE provides borrowers with the right to enforce its terms. And amendment here would be futile because there is no provision in Nelnet's servicing contract with the DOE that evinces the intent to confer borrowers with enforcement rights. Plaintiff's contract claim must accordingly be dismissed with prejudice.

Moreover, even if Plaintiff is a third-party beneficiary (which she is not), Plaintiff's claim still fails. Plaintiff alleges that "Nelnet breached . . . the Servicing Contracts . . . by failing to accurately count qualifying payments toward PSLF, communicate significant information to borrowers, maintain accurate records of payment timing and amounts, and/or maintain accurate records of other information pertinent to qualifying payment eligibility including employment status and repayment plan type." (Compl. ¶ 134). These vague allegations focus exclusively on Nelnet's alleged actions or omissions with respect to Plaintiff's qualifying payments for the PSLF program. However, as Plaintiff acknowledges, PHEAA is the "exclusive loan servicer for borrowers actively pursuing PSLF" and the "DOE awarded PHEAA an exclusive contract to manage . . . the PSLF program" (Compl. ¶¶ 2, 27). Plaintiff does not allege any specific provisions of *Nelnet's* servicing contract with the DOE that it purportedly breached—nor could she. Thus, Nelnet's servicing contract cannot be the basis for Plaintiff's claim. *See* (Compl. ¶ 68). Further, Plaintiff's alleged future potential damages are not sufficient to sustain a contract claim.

**4. Plaintiff's breach of implied contract claim fails for lack of mutual assent, consideration, and damages**

Without any basis in law, Plaintiff contends that she has a contract with Nelnet. (Compl. ¶¶ 139, 140). Specifically, Plaintiff alleges that Nelnet's servicing of federal student loans on behalf of the government and Nelnet's statements concerning its traditional federal loan servicing obligations created an "implied-in-fact contract" between her and Nelnet, which Nelnet breached by failing to properly service her loans causing her damages. (Compl. ¶¶ 139–144). Plaintiff is incorrect.

Under California law, "[a] contract is either express or implied." Cal. Civ. Code § 1619. Yet, "[t]he essential elements of an implied-in-fact contract and an express contract are the same—mutual assent and consideration." *Novak v. Warner Bros. Pictures LLC*, No. CV074000GAFPLAX, 2008 WL 11411639, at *19 (C.D. Cal. Oct. 20, 2008), *aff'd sub nom. Novak v. Warner Bros Pictures, LLC*, 387 F. App'x 747 (9th Cir. 2010). The only difference between the two contract types is "the mode of manifesting assent." *Bergman v. Bank of Am.*, No. C-13-00741 JCS, 2013 WL 5863057, at *15 (N.D. Cal. Oct. 23, 2013) (quoting *Retired Employees Assn. of Orange Cnty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178, 266 P.3d 287, 290 (2011)). Whereas an express contract is established through written or spoken words, an implied contract is established by the parties' conduct. *Gilbert v. Chase Home Fin.*, LLC, No. 1:13-CV-265 AWI SKO, 2013 WL 2318890, at *3 (E.D. Cal. May 28, 2013); *see also* Cal. Civ. Code §§ 1620, 1621. "Accordingly, a contract implied in fact consists of obligations *arising from a mutual agreement and intent to promise* where the agreement and promise have not been expressed in words." *Retired Employees*, 266 P.3d at 290 (emphasis added) (internal quotations omitted). Like the contract formation requirements, the elements for a cause of action for breach of an express or implied contract are also the same: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff." *Gilbert*, 2013 WL

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

2318890, at *3 (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011)).

Here, Plaintiff's allegations fail to demonstrate that *either* Plaintiff or Nelnet assented to a contract. Plaintiff asserts that "Defendants each held themselves out as a source of sound information and counseling with respect to student loans, and each acquiesced in DOE's statements that Defendants would be a source of sound information and counseling with respect to student loans." (Compl. ¶ 139). Plaintiff contends that, "[i]n so doing, . . . Nelnet created an implied-in-fact contract with Plaintiff . . . ." *Id.* While the Complaint is fatally vague, unclear, and conclusory as to the implied-in-fact contract, clearly absent from the pleading are what actions Nelnet allegedly took, when it took them, how it took them, or to whom they were directed. Even more significantly, it is unclear how Nelnet holding itself out as a loan servicer (which it is), or the DOE's statements concerning servicers' traditional functions, would manifest an intent by Nelnet to enter into a contract with any loan borrower—let alone Plaintiff in particular. Courts have roundly rejected the theory that student loan servicers have contractual relationships with borrowers by virtue of servicing borrowers' loans. *See, e.g.*, *Edwards v. Ocwen Loan Servicing*, LLC, 24 F. Supp. 3d 21, 28 (D.D.C. 2014) ("Judges around the country . . . have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract."); *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) ("The fact that Aurora entered into a contract with [the lender] to service Plaintiff's loan does not create contractual privity between Aurora and Plaintiff.").

Plaintiff attempts to bolster her contractual theory with the false assertion that, "[u]nder this implied-in-fact contract, *student loan borrowers placed their loan(s) to be serviced by* . . . *Nelnet* in exchange for which . . . Nelnet, among other things, committed to provide sound information and counseling with respect to student loans, to comply with applicable laws and regulations, and to maintain

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

accurate records of information pertinent to PSLF." (Compl. ¶ 140). Plaintiff's own allegations demonstrate that she did not "place[] [her] loan(s) to be serviced by . . . Nelnet." Instead, *the DOE* unilaterally transferred her loans to Nelnet for servicing pursuant to the DOE's servicing contract with Nelnet. *See* (Compl. ¶¶ 54, 55, 62, 63, 65, 83, 85, 86); *see also* 20 U.S.C. § 1087f(b)(2) ("The Secretary may enter into contracts for . . .the servicing and collection of loans made or purchased under this part."). Thus, Plaintiff did not—nor could she—choose Nelnet as her servicer. Further, the MPNs for Plaintiff's loans make obvious that the conduct Plaintiff asserts created a contract between her and Nelnet was nothing more than Nelnet's fulfillment of its obligations as the DOE's assigned servicer: "Our Direct Loan Servicing Center services, answers questions about, and processes payments on Direct Loans. We will provide you with the address and telephone number of the Direct Loan Servicing Center after the school notifies us that the first disbursement of your loan has been made." (Ex. A, at 3). In other words, Plaintiff does not—and cannot—allege that Nelnet's conduct manifested intent to create contract with her, nor does she plausibly allege that she assented to any such agreement.

Plaintiff's implied contract claim also fails for lack of consideration. "Doing or promising to do what one is already legally bound to do cannot be consideration for a promise." *Reiydelle v. J.P. Morgan Chase Bank, N.A.*, No. 12-CV-06543-JCS, 2014 WL 312348, at *12 (N.D. Cal. Jan. 28, 2014) (citing Witkin, Summary of California Law 10th (2005) Contracts § 218). As Plaintiff recognizes, Nelnet's servicing contract with the DOE "govern[s] [its] dealings with student borrowers" and Nelnet must comply with all applicable laws and regulations in servicing Plaintiff's federal student loans. (Compl. ¶¶ 62, 63, 135). Because Nelnet was already legally obligated to service Plaintiff's loans in accordance with its servicing contract and applicable law, any promises by Nelnet to Plaintiff to undertake such servicing-related actions cannot establish consideration.

Lastly, even if Plaintiff has adequately alleged a plausible contract—which

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

she has not—Plaintiff has not suffered actual damages. Instead, as described above, Plaintiff's alleged damages are highly speculative and may never come to pass.

**5. <u>Plaintiff's UCL claim must be dismissed because she has not alleged Nelnet acted Unlawfully or Unfairly</u>**

California's UCL prohibits unlawful, unfair, or fraudulent business practices. Cal. Bus. & Prof. Code § 17200. The UCL, however, is not an independent basis of liability; instead, the UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007). Plaintiff alleges that Nelnet has engaged in unlawful and unfair conduct under the UCL because of its practice of "failing to accurately count qualifying payments toward PSLF, communicate significant information to borrowers, and/or maintain accurate records of information pertinent to PSLF." (Compl. ¶ 154).

**a. <u>Because Plaintiff's common law claims fail, her UCL claim for "unlawful" conduct also fails</u>**

The "unlawful" prong proscribes "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Super. Ct.*, 27 Cal.App.4th 832, 838–839 (Cal. App. 1994). When a plaintiff asserts a UCL violation under the "unlawful" prong, if the underlying claims fail, then the UCL claim must also fail. *E.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 718 (Cal. App. 2001).

Here, Plaintiff's allegation that Nelnet's conduct was "unlawful" under the UCL is premised on her common law claims. (Compl. ¶ 154). But all of those claims fail in their entirety for myriad reasons. Thus, Plaintiff has failed to allege facts sufficient to support a finding that Nelnet acted "unlawfully," and her allegations under the UCL's "unlawful" prong must be dismissed with prejudice.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

**b. Plaintiff's UCL claim under the "unfairness" prong fails because she has not suffered any injury**

The "unfairness" prong does not give courts license to "impose their own notions of the day as to what is fair or unfair." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 182 (Cal. 1999). The following test is used to assess whether a business practice is "unfair": "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2017 WL 6549931, at *7 (C.D. Cal. Aug. 21, 2017).

For the reasons set forth above, Plaintiff has not yet suffered any injury—let alone a "substantial" injury—as required by the "unlawful" prong. It is therefore unnecessary to engage in the above-stated balancing test at this juncture. Plaintiff's UCL claim under the "unlawful" prong must be dismissed with prejudice.

## V. CONCLUSION

The Complaint does not present an actual "case or controversy" and must be dismissed under Rule 12(b)(1). In addition, all of her claims fail under Rule 12(b)(6) because they are improper-disclosures claims and are preempted by 20 U.S.C. § 1098g. Finally, Counts I, II, III, IV, and VI individually fail to state a claim upon which relief can be granted and must be dismissed under Rule 12(b)(6). Because amendment would be futile, dismissal should be with prejudice.

Dated: April 26, 2019

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Jonathan C. Sandler
JONATHAN C. SANDLER
Attorneys for Defendant
NELNET, INC.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067