**Pierce Bainbridge Beck Price & Hecht LLP**
Thomas D. Warren (SBN 160921)
Janine Cohen (SBN 203881)
355 S. Grand Ave., Suite 4400
Los Angeles, California 90071
Tel: (213) 262-9333
twarren@piercebainbridge.com
jcohen@piercebainbridge.com

Jonathan A. Sorkowitz (admitted *pro hac vice*)
277 Park Ave., 45th Floor
New York, New York 10172
Tel: (212) 484-9866
jsorkowitz@piercebainbridge.com

*Attorneys for Plaintiff and for the proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LISA WINEBARGER, JENISE OVERMIER,** and **PETER GANNON,** on behalf of themselves and all others similarly situated**,**

Plaintiffs,

v.

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, NELNET SERVICING, LLC,** and **NELNET, INC.**

Defendants.

Case No. 19-cv-01503-JFW-RAO
Hon. John F. Walter

**PLAINTIFFS' OPPOSITION TO DEFENDANTS NELNET SERVICING, LLC AND NELNET INC.'S MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT**

**Date:** August 5, 2019
**Time:** 1:30 p.m.
**Courtroom:** 7A
**Judge:** Hon. John F. Walter

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTS ..... 2

III. ARGUMENT ..... 5

A. Ms. Winebarger Has Adequately Pleaded Standing and Ripeness ..... 5

1. Ms. Winebarger Has Alleged an Injury in Fact ..... 6

2. Ms. Winebarger's Claims Are Ripe for Adjudication ..... 11

3. Ms. Winebarger Has Alleged Injuries Traceable to Nelnet ..... 11

B. Ms. Winebarger's State-Law Claims Are Not Preempted ..... 13

C. Ms. Winebarger's Common-Law Causes of Action Must Proceed ..... 15

1. Negligence ..... 15

2. Breach of Contract ..... 17

3. Breach of Implied-in-Fact Contract ..... 19

4. Breach of Fiduciary Duty ..... 21

D. Ms. Winebarger's California UCL Claim Must Proceed ..... 22

E. Nelnet's Motion to Strike Fails ..... 23

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ........ 5

*ABS Entm't, Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) ........ 23, 24

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011) ........ 13

*Alisu Investments, Ltd. v. TriMas Corp.*,
No. 16-686-MWF (PJWx), 2019 WL 856396 (C.D. Cal. Jan. 16, 2019) ........ 22

*Allen v. Wright*,
468 U.S. 737 (1984) ........ 5, 12

*Alvarez v. BAC Home Loans Serv., L.P.*,
228 Cal. App. 4th 941 (Cal. Ct. App. 2014) ........ 17

*Application Grp., Inc. v. Hunter Grp., Inc.*,
72 Cal. Rptr. 2d 73 (1998) ........ 22

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........ 13

*Barnum Timber Co. v. U.S. E.P.A.*,
633 F.3d 894 (9th Cir. 2011) ........ 12

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ........ 9

*Bernhardt v. County of Los Angeles*,
279 F.3d 862 (9th Cir. 2002) ........ 6

*Biakanja v. Irving*,
49 Cal.2d 647 (1958) ........ 16, 17

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) ........ 17

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ... 9

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) ... 14, 15

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ... 5, 6

*Chen v. Allstate Ins. Co.*,
819 F.3d 1136 (9th Cir. 2016) ... 9

*Clark v. State Farm Mut. Auto. Ins. Co.*,
231 F.R.D. 405 (C.D. Cal. 2005) ... 24

*Clinton v. Select Portfolio Servicing, Inc.*,
225 F. Supp. 3d 1168 (E.D. Cal. 2016) ... 16

*Cnty. of Santa Clara v. Astra USA, Inc.*,
588 F.3d 1237 (9th Cir. 2009) ... 18

*Cobb v. Ocwen Loan Servicing, LLC*,
No. EDCV16-1659-JGB(KKx), 2016 WL 11520305 (C.D. Cal. Dec. 9, 2016) ... 21

*In re Coleman*,
560 F.3d 1000 (9th Cir. 2009) ... 11

*Daniel v. Navient Solutions, LLC*,
328 F. Supp. 3d 1319 (M.D. Fla. 2018) ... 14, 22

*Del E. Webb Corp. v. Structural Materials Co.*,
123 Cal. App. 3d 593 (Cal. Ct. App. 1981) ... 19

*Edmond v. Am. Educ. Servs.*,
No. 10cv0578, 2010 WL 4269129 (D.D.C. Oct. 28, 2010) ... 20

*Edwards v. Ocwen Loan Servicing, LLC*,
24 F. Supp. 3d 21 (D.D.C. 2014) ... 20

*Ehrlich v. BMW of N. Am., Inc.*,
801 F. Supp. 2d 908 (C.D. Cal. 2010) ... 25

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ... 25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)........................................................................ 9

*Genna v. Sallie Mae, Inc.*,
No. 11-cv-7371 (LBS), 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012)........................................................................ 14, 15

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal. App. 4th 809 (Cal. Ct. App. 2007)........................................................................ 19

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999)........................................................................ 18

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016)........................................................................ 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................ 5, 10

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018)........................................................................ 13

*Marques v. Wells Fargo Home Mortg., Inc.*,
No. 09-cv-1985-L(RBB), 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010)........................................................................ 18, 19

*Martinez v. Flagstar Bank, FSB*,
No. 2:15-cv-01934-KJM-CKD, 2016 WL 3906810 (E.D. Cal. July 19, 2016)........................................................................ 17

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)........................................................................ 12

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
No. 18-1531, 2019 WL 2636822 (7th Cir. June 27, 2019)........................................................................ 14

*O'Shea v. Littleton*,
414 U.S. 488 (1974)........................................................................ 9

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018)........................................................................ 16

*Pennsylvania v. Navient Corp.*,
354 F. Supp. 3d 529 (M.D. Pa. 2018)........................................................................ 14

*Petty v. Countrywide Home Loans, Inc.*,
No. 3:12cv6677, 2013 WL 1837932 (S.D. W.Va. May 1, 2013) .................. 20

*Requa v. Regents of Univ. of Calif.*,
213 Cal. App. 4th 213 (Cal. Ct. App. 2012)................................................. 20

*Rhodeman v. Ocwen Loan Servicing, LLC*,
No. EDCV 18-2363 JGB (KKx), 2019 WL 2067227 (C.D. Cal. May 6, 2019)............................................................................................... 23

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947)....................................................................................... 13

*Robinson v. Deutsche Bank Nat'l Trust Co.*,
932 F. Supp. 2d 95 (D.D.C. 2013)................................................................. 20

*Romo v. Wells Fargo Bank, N.A.*,
No. 15-cv-03708-EMC, 2016 WL 324286 (N.D. Cal. Jan. 27, 2016) ........................................................................................................... 16

*Rosales v. FitFlop USA, LLC*,
882 F. Supp. 2d 1168 (S.D. Cal. 2012) ......................................................... 24

*Ruiz v. Cent. Mortg. Co.*,
No. CV 14–08627 MMM (SSx), 2015 WL 12683873 (C.D. Cal. Apr. 2, 2015)............................................................................................... 16

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009)........................................................... 25

*Scott v. Pasadena Unified Sch. Dist.*,
306 F.3d 646 (9th Cir. 2002) ........................................................................... 5

*Sec'y of State for Def. v. Trimble Navigation Ltd.*,
484 F.3d 700 (4th Cir. 2007) ......................................................................... 18

*Silicon Image, Inc. v. Analogix Semiconductor*,
642 F. Supp. 2d 957 (N.D. Cal. 2008)........................................................... 10

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 ( 2016), *as revised* (May 24, 2016) .............................. 6, 8, 10

*Sweet v. Johnson*,
169 Cal. App. 2d 630 (Cal. Ct. App. 1959).................................................... 11

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ... 25

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ... 5

*Tietsworth v. Sears, Roebuck and Co.*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ... 25

*Tobon v. Nationstar Mortg. LLC*,
No. 2:16-cv-08936-ODW (GJS), 2017 WL 8114978 (C.D. Cal. Apr. 4, 2017) ... 21

*US W. Commc'ns v. MFS Intelenet, Inc.*,
193 F.3d 1112 (9th Cir. 1999) ... 11

*Warth v. Seldin*,
422 U.S. 490 (1975) ... 5

**Statutes**

20 U.S.C. § 1087e ... 3, 5

20 U.S.C. § 1098g ... 13, 14

Cal. Bus. & Prof. Code § 17200 ... 22, 23

**Federal Rules**

34 C.F.R. § 685.219(a) ... 16, 18

34 C.F.R. § 685.219(c)(1) ... 3

C.D. Cal. L.R. 23-3 ... 2, 23, 24

Fed. R. Civ. P. 12(b) ... 1

Fed. R. Civ. P. 12(f) ... 1

Fed. R. Civ. P. 23 ... 23, 24

**Other Authorities**

Zack Freeman, "99% of Borrowers Rejected Again for Student Loan Forgiveness," *Forbes*, May 1, 2019 (*available at* https://www.forbes.com/sites/zackfriedman/2019/05/01/99-of-borrowers-rejected-again-for-student-loan-forgiveness/#1e94cfa8b16b) .......... 1

Plaintiff Lisa Winebarger respectfully submits this memorandum in opposition to Defendants Nelnet Servicing, LLC and Nelnet, Inc.'s (collectively "Nelnet") Motion to Dismiss and Strike Plaintiffs' First Amended Complaint Pursuant to Federal Rules 12(b)(1), 12(b)(6) and 12(f)(2) (ECF No. 54) ("Mot.").

## I. INTRODUCTION

Public servants throughout the U.S. are saddled with onerous student debt and, because of the limited financial benefits available in government or nonprofit jobs, they often have little ability to repay that debt. In response to this problem, Congress enacted a unique program: Public Service Loan Forgiveness ("PSLF"). PSLF was designed to enable public servants who faithfully made on-time and full payments on an eligible payment plan for ten years to have their loan balances forgiven. Yet the PSLF program has been beset by systemic problems from the first, culminating in the denial of over 99% of applications.[1]

Many of these issues lie at the feet of the student loan servicers who administer these loans for the federal government as lender. In particular, this class action targets an oft-reported problem wherein borrowers who file PSLF-related paperwork inexplicably receive credit for fewer qualifying payments than they have made. Although Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") services loans for borrowers seeking PSLF, Defendants Nelnet Servicing, LLC and its parent company Nelnet, Inc. contribute to this problem by keeping insufficient or inaccurate records which they transfer to PHEAA when a borrower files PSLF paperwork.

Nelnet's principal contention is that borrowers deprived of credit for qualifying payments do not have standing to raise claims against Nelnet or that such claims are not ripe, because they have not yet made ten years of payments and

[1] *See* FAC ¶ 65; Zack Freeman, "99% of Borrowers Rejected Again for Student Loan Forgiveness," *Forbes*, May 1, 2019 (*available at* https://www.forbes.com/sites/zackfriedman/2019/05/01/99-of-borrowers-rejected-again-for-student-loan-forgiveness/#1e94cfa8b16b).

thus have not yet been injured. Put simply, Nelnet argues that, although these borrowers are being improperly deprived of credit, they have no legal recourse because the situation might, at some undefined time, be rectified before the problem becomes irreparable. Nelnet thus argues that current harms do not matter because the playing field may change in the future. That is not the law.

Nelnet also contends that its conduct cannot be challenged by borrowers because it is a mere loan servicer answerable only to the lender (here, the Department of Education). This approach ignores the unique nature of the PSLF program and its purpose to benefit public servant borrowers—a purpose unanimously expressed in the statutory basis for the program, its legislative history, the implementing regulations, public statements by the government and the servicers alike, and the nature of the program. The PSLF program is expressly and intentionally different from a normal loan where the lender's purpose is only to retrieve interest from borrowers. The lender is the U.S. government, and Congress has modified its role and that of the servicers who implement the program.

Nelnet also tries two other discredited tactics. First, it argues that the claims against it are preempted by the Higher Education Act. Several district courts have held loan servicers such as Nelnet answerable for their conduct notwithstanding the Higher Education Act. Second, Nelnet looks to strike the class allegations here under Local Rule 23-3. This effort fails because Local Rule 23-3 has been invalidated by the Ninth Circuit.

Plaintiffs respectfully request that the motion to dismiss and strike be denied.

## II. FACTS

The Public Service Loan Forgiveness program was established by Congress in 2007 to assist public servants with their student loan burdens. First Amended Class Action Complaint ("FAC") (ECF No. 44) ¶ 58. *See also* H. Rpt. 110-210 at 39, 48-49 (detailing program's purpose of encouraging public service by reducing

student debt); FAC ¶¶ 76-78 (debt servicers' contracts make reference to purpose of program to benefit borrowers). Under the PSLF program, student loan borrowers who make 120 loan payments for the full monthly amount due under a qualifying payment plan, within fifteen days of the due date, while the borrower is working for a "covered employer" (generally a public-sector or nonprofit entity), will have the balance of their Direct Loans[2] forgiven. FAC ¶¶ 59-60. To wit, federal regulations provide that a borrower may obtain loan forgiveness if he or she (i) is not in default on the loan for which forgiveness is requested; (ii) is employed full-time by a public service organization when the 120 payments are made and at the time of loan forgiveness; (iii) makes 120 payments on eligible Direct Loans within 15 days of the payment due date; and (iv) makes the 120 payments on certain payment plans. 34 C.F.R. § 685.219(c)(1). *See also* 20 U.S.C. § 1087e (setting forth requirements for PSLF as required term of William D. Ford Federal Direct Loan Program).

Defendant PHEAA, doing business under the trade name FedLoan Servicing, has an exclusive contract with the U.S. Department of Education ("DOE") to act as loan servicer for borrowers who pursue loan forgiveness under the PSLF program. FAC ¶¶ 75-81. One of PHEAA's responsibilities as it services those loans is to continuously account for how many of the 120 required payments borrowers have made—a determination on which DOE ultimately relies in forgiving or not forgiving loans. FAC ¶¶ 73-74. The FAC alleges a nationwide pattern and practice by PHEAA of undercounting student loan borrowers' qualifying payments toward PSLF, as described in government reports. FAC ¶¶ 82-93.

Nelnet Inc., and its subsidiary Nelnet Servicing LLC, are loan servicers which service student loans owned by the DOE (*i.e.,* Direct Loans). FAC ¶¶ 42-

[2] Direct Loans are loans extended by the U.S. government as lender under the William D. Ford Direct Loan Program. FAC at ¶¶ 46-51.

43. Nelnet has a contract with the DOE to perform its servicing function. FAC ¶¶ 43, 75-81. When a borrower submits an Employment Certification Form indicating interest in the PSLF program, all of the borrower's Direct Loans are transferred from their current servicer (for example, Nelnet) to FedLoan Servicing (PHEAA). FAC ¶ 94. When servicers such as Nelnet transfer borrowers' accounts to PHEAA, that transfer includes information on the borrower's loans and payment history. Nelnet often sends such information in incorrect or incomplete form, which is a contributing factor to PHEAA's nationwide pattern and practice of undercounting qualifying payments. FAC ¶¶ 95-98.

Plaintiff Lisa Winebarger[3] is a California resident and public interest attorney who began making payments toward her Direct Loans in January 2013. FAC ¶ 99. She planned to seek PSLF when taking out her initial loans and has entered the PSLF program; she does not realistically have the freedom to pursue non-PSLF employment options until her loans are forgiven. FAC ¶¶ 14, 116. While serviced by Nelnet, Ms. Winebarger missed the opportunity for three months of qualifying payments because Nelnet placed her in administrative forbearance without telling her, which caused her to make a payment that was then treated as a nonqualifying prepayment. FAC ¶ 105. Her loans were serviced by Nelnet from July 2013 to August 2016, when they were transferred to PHEAA after she filed an Employment Certification Form. FAC ¶¶ 103, 106.

Since the transition to PHEAA, Ms. Winebarger has received statements from PHEAA that gave her credit for fewer qualifying payments than she made. FAC ¶ 100. Her payment count fluctuated from 54 in October 2018 (four fewer than the then-correct total) to 20 in November 2018 (thirty-nine fewer) to 26 in December 2018 (thirty-four fewer). FAC ¶¶ 111-113. Ms. Winebarger's payment count has again been modified, but she has been harmed not only by PHEAA's

[3] Plaintiffs Peter Gannon and Jenise Overmier's claims are against Defendant PHEAA only.

failure to provide credit for her qualifying payments but also by the inability to plan her financial future due to the uncertainty involved. FAC ¶ 116. The amount of loans and interest thereon that Ms. Winebarger is required to pay over time increases when her account is undercredited. *See, e.g.*, FAC ¶ 163. Ms. Winebarger expects this undercrediting to reoccur. *Id.*

## III. ARGUMENT

### A. Ms. Winebarger Has Adequately Pleaded Standing and Ripeness

The Article III "case or controversy" requirement requires that plaintiffs have standing and that claims be "ripe" for adjudication. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Standing entitles a litigant to have a court determine the merits of a dispute and depends on whether the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A "personal stake" exists if there is (1) a concrete injury in fact, that is (2) fairly traceable to the challenged conduct, and (3) likely redressed by a favorable decision.[4] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The related doctrine of ripeness contains constitutional and prudential components, where the former "coincides squarely with standing's injury in fact prong," *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000), and the latter turns on "'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). The "rationale" of the ripeness doctrine is "to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.*

Nelnet argues in overlapping fashion that Ms. Winebarger's claims are not

[4] Nelnet does not argue that Ms. Winebarger has not met the redressability prong.

ripe and that she lacks standing because she has not set forth (1) an injury in fact or (2) traceability of the injury to Nelnet's conduct. Mot. at 7-10. Yet this dispute is anything but abstract for Ms. Winebarger, and Nelnet views the FAC narrowly and inaccurately in making these arguments. As described below, Ms. Winebarger has abundantly pleaded that she meets each of the requirements for standing, such that she has a clear personal stake in the controversy at hand and her claim is ripe for decision. Indeed, the issues raised in this matter go to her fundamental ability to make a living and make decisions about her life, career, and future. While Nelnet repeatedly speculates about the allegations in the FAC, on a 12(b)(1) motion, "the [c]ourt may not speculate as to the plausibility of the plaintiff's allegations." *Chandler*, 598 F.3d 1115, 1121 (9th Cir. 2010) (citing *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)).

1. Ms. Winebarger Has Alleged an Injury in Fact

In general, to establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548. Injury in fact is primarily an issue in cases that involve the enforcement of public rights, which "involve duties to the whole community, considered as a community, in its social aggregate capacity." *See id.* at 1551 (Thomas, J. concurring) (internal quotations and citation omitted). In cases like this one, on the other hand, where a plaintiff seeks to enforce *private* rights, injury in fact is almost never an issue, because any infringement of a private right is capable of legal redress, even those that involve only intangible harms or cause only nominal damages. *Id*. (noting that, "[i]n a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded").

In any event, Ms. Winebarger has adequately alleged that she has been

harmed. As alleged in the FAC, Ms. Winebarger's loans were serviced by Nelnet from July 2013 to August 2016. FAC ¶¶ 103-107. Once her loans were transferred to PHEAA, there were repeated problems with undercrediting her qualifying payments. *Id.* ¶¶ 111-113. While her loans were with Nelnet, Ms. Winebarger missed the opportunity for up to three months of qualifying payments because Nelnet placed her in administrative forbearance without telling her, which caused her to make a payment that was then treated as a nonqualifying prepayment. *Id.* ¶ 105. Ms. Winebarger alleges that the transfer of inaccurate, inconsistent, or unreliable information from Nelnet to PHEAA causes undercounting of borrowers' payments. *Id.* ¶¶ 96-97.

These practices result in actual injury and harm in several ways. Ms. Winebarger expects that she will be required to make more than 120 payments before her loans are forgiven, if they are at all. *Id.* ¶¶ 163, 169, 177, 185, 194, 199, 204. This longer-term issue, which is itself compensable with damages, also has present effects in that the amount of interest Ms. Winebarger is required to pay is added to her balance every month, and the total amount she is required to pay on her loans thus increases day by day when the loan term is extended. *Id.* ¶¶ 163, 169, 177, 185, 194, 199, 204. Nelnet's conduct also creates an increased risk of harm in the future—the problem can be expected to reoccur because it already has occurred several times. *Id.* ¶¶ 111-13, 116. Plaintiffs thus seek declaratory and injunctive relief in this matter, as well as damages. Further, PHEAA's denial of earned credit requires Ms. Winebarger to expend time and effort—which have actual value—to try to fix the mistakes. *See, e.g.*, *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (finding that time and effort spent monitoring credit card statements after a data breach to check for fraudulent charges, *i.e.* addressing the issues caused by defendant's actions, constitute cognizable injuries). The failure to properly service Ms. Winebarger's loans also

results in current uncertainty and emotional distress, as she cannot effectively plan her post-PSLF career and future with no idea when or if her loans will be forgiven, despite doing everything that the program requires. *Id.* ¶ 116.

2. Nelnet's Arguments About Standing Lack Merit

Nelnet argues that Ms. Winebarger lacks standing because any alleged injury is "neither actual nor imminent." Mot. at 9. Nelnet maintains that any harm will only occur in five years, if at all, and assumes that Ms. Winebarger will continue to qualify for PSLF and that PHEAA will miscount her payments. *Id.* Nelnet is wrong for at least five reasons.

First, because Nelnet violated Ms. Winebarger's private rights, she may maintain an action without a particularized showing of injury. *Spokeo*, 136 S. Ct. at 1552 (Thomas, J. concurring) ("Our contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the 'injury-in-fact' requirement."). That said, Ms. Winebarger has alleged particularized injury as discussed above.

Second, it is not speculative that Ms. Winebarger will continue in the PSLF program and meet its requirements. Ms. Winebarger has alleged that she intended to use PSLF before she took out her loans, she has consistently made qualifying payments for many years, and she intends to continue to do so; indeed, she has alleged that she has no practical option to do otherwise as long as the possibility of PSLF exists. FAC ¶¶ 14, 115-16. Ms. Winebarger also realistically expects to be undercredited again, given that her payments have been undercredited repeatedly, recent government reports document widespread undercrediting problems in the PSLF program, and the policies and practices that led to her injuries have not changed. FAC ¶¶ 96-97, 111-16. This is not a speculative chain of possibilities but rather the logical consequence of the allegations in the Complaint. Ms. Winebarger thus has alleged sufficient facts to show a likelihood that she will

be injured in the future, as necessary for the declaratory and injunctive relief sought. "Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Ms. Winebarger has alleged not only that she has been undercredited for qualifying loan payments repeatedly, but that many others who participate in the program have been undercredited as well, FAC ¶¶ 82-98, 111-113, which supports a finding that future injury is likely and should be addressed by this Court.

Third, Nelnet's entire line of argument assumes that no past injury is alleged that should be remedied. But Ms. Winebarger has alleged past, present, and future harms from Nelnet placing her into forbearance and Nelnet and PHEAA repeatedly undercrediting her qualifying payments, which justify damages and injunctive relief. Nelnet's arguments to the contrary rely on an incorrectly narrow view of the allegations. Ms. Winebarger's qualifying payments were repeatedly and consistently undercounted until she filed this lawsuit. To the extent that PHEAA has (temporarily) fixed her qualifying payment number,[5] this does not render her claims moot or defeat standing. Nor does it create a jurisdictional issue. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice'") (citation omitted); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143 (9th Cir. 2016) ("'[t]o the extent that defendants may avoid a class action by "picking off" the named plaintiffs, the class claims are "inherently transitory" and evade review, making an exception to the mootness rule appropriate.'") (citation

[5] Ms. Winebarger does not concede that her qualifying payment count is correct at this point, although the most recent count appears to have significantly reduced the number of omitted qualifying payments. In any event, defendants are not free to "pick off" named plaintiffs to avoid class action litigation. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669-71 (2016) (unaccepted offer of judgment to named plaintiff for individual relief did not moot class action claim).

omitted).

Fourth, Nelnet erroneously argues that Plaintiffs' future injury is not "imminent" because it will not occur for five years. Mot. at 9. But imminence does not mean that the injury must occur this second or this year. Rather, imminence is "a somewhat elastic concept" which has been stated alternatively as "*certainly* impending," rather than speculative. *Lujan*, 504 U.S. at 564 n. 2. Imminence, which, in any event, is not required when actual harm is clear, "has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Id*. The acts necessary for future injury here are in some sense in Ms. Winebarger's control, *i.e.*, whether she will continue to participate in PSLF as she has thus far for five more years, but the timeline is clearly not indefinite. And unlike in *Lujan*, Ms. Winebarger remains presently exposed to the threat of injury and cannot avoid injury through any act of her own while participating in the program. Under these circumstances, the threat that Ms. Winebarger will be undercredited before she makes 120 qualifying payments and will therefore be denied timely loan forgiveness is neither speculative nor indefinite.

Fifth, Ms. Winebarger alleges that Nelnet's conduct gives rise to claims for negligence, breach of fiduciary duty, breach of contract, breach of implied-in-fact contract, and statutory violations. These claims constitute private legal wrongs that are appropriate for judicial resolution, whether or not the damages they cause are easily quantifiable. *See* *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016) ("the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure"); *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 964 (N.D. Cal. 2008) ("Even where no actual damages can be established, a plaintiff who has established that a

contract was breached is entitled to an award of nominal damages as the breach itself is a 'legal wrong that is fully distinct from the actual damages.'") (citing *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (Cal. Ct. App. 1959)).

3. Ms. Winebarger's Claims Are Ripe for Adjudication

"A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999). In arguments substantially identical to those regarding injury-in-fact, Nelnet argues that Ms. Winebarger's claims are not ripe because she will not be eligible for loan forgiveness until 2024, and that the alleged undercrediting must reoccur for her to be harmed at all. Mot. at 7-8. This argument requires Nelnet to impermissibly engage in extensive speculation about Ms. Winebarger's future actions and assume that no injury has yet occurred. But as discussed in more detail above, Ms. Winebarger has alleged a presently-extant violation of her personal legal rights. Ms. Winebarger has alleged "final" harms resulting from Nelnet's conduct that are in no way contingent on eligibility for loan forgiveness and thus "do not require further factual development." Further, Ms. Winebarger would face hardship in not having the Court's consideration of a remedy even for her future alleged harms, as she would effectively be committing to a specified payment plan under her current circumstances without any certainty of forgiveness even if she meets all PSLF requirements. *See In re Coleman*, 560 F.3d 1000, 1010 (9th Cir. 2009) (describing the hardship to a debtor as "committing to a Chapter 13 plan for three to five years without any guarantee that her student loans will be discharged at the end of this time period").

4. Ms. Winebarger Has Alleged Injuries Traceable to Nelnet

To establish traceability, a plaintiff must "establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'"

*Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citing *Allen*, 468 U.S. at 757). In this calculation, "[w]hat matters is not the 'length of the chain of causation,' but rather the 'plausibility of the links that comprise the chain.'" *Id.* (citations omitted).

As alleged in the FAC, Ms. Winebarger missed the opportunity for three months of qualifying payments, which is directly traceable to Nelnet's actions. FAC ¶ 105. Once her loans were transferred from Nelnet to PHEAA, she was undercredited repeatedly for qualifying payments. FAC ¶¶ 111-113. Ms. Winebarger alleges that the transfer of inaccurate, inconsistent, and unreliable information from Nelnet to PHEAA causes undercounting of borrowers' payments, including her own. *Id.* ¶¶ 94-98. The mechanism for the injury is alleged: Nelnet keeps incomplete, inadequate, or incorrect records, and in part as a result of Nelnet's failures, PHEAA undercounts qualifying payments. These alleged harms are directly attributable to Nelnet's practices. *Id.* ¶¶ 161-62, 168, 176, 184, 198.

Nelnet argues that the harm is not traceable to them because PHEAA manages the PSLF program. Mot. at 10-11. But standing does not require the defendant's action to be the "sole source" of injury. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 901 (9th Cir. 2011). And Nelnet ignores all of the allegations in the Complaint about Nelnet's own conduct. Nelnet says that Ms. Winebarger "does not allege Nelnet . . . furnishes information regarding qualified payments," Mot. at 11, but this is an unfairly narrow construction of the allegations. The theory of traceability for Nelnet's conduct can be succinctly summarized as "garbage in, garbage out." PHEAA has reported that "inconsistencies in the information obtained from other loan servicers increase the risk of miscounting qualifying payments." FAC ¶ 97. The precise degree to which Nelnet and other servicers' provision of inaccurate information causes the undercrediting issue will be

explored in discovery, but on the face of the FAC, Nelnet's contribution to the alleged harms is neither attenuated nor conclusory.

**B. Ms. Winebarger's State-Law Claims Are Not Preempted**

Nelnet argues that Ms. Winebarger's state-law claims are preempted by the Higher Education Act, which states that loans like the ones at issue here "shall not be subject to any disclosure requirements of any state law." 20 U.S.C. § 1098g. Nelnet is wrong for the simple reason that Ms. Winebarger, and absent class members, are not seeking to impose any disclosure requirement. Ms. Winebarger is not claiming simply that Nelnet failed to disclose information to her about the loan program, but rather that she is being deprived of credit that she ought to be given under federal law for qualifying payments.[6] Claims based on Nelnet's provision of information *to PHEAA* that facilitated this undercrediting do not impose the type of 'disclosure requirement' § 1098g contemplates, and courts have now held that such claims are not preempted.

Nelnet's argument relies exclusively on the concept of express preemption (as opposed to field or conflict preemption). Mot. at 11-13. In analyzing express preemption, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). As such, because consumer protection law is "a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1191 (9th Cir. 2018) (quoting *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011)). *See also* Astiana, 783 F.3d at 758 (finding "little difficulty" in concluding that the Food, Drug and

---

[6] To the extent Ms. Winebarger alleges that she was placed in administrative forbearance without being told, her complaint is not about a "disclosure" subject to preemption, but about Nelnet accepting a payment while the loan was in forbearance and the downstream effects of that act.

Cosmetic Act did not expressly preempt claims under state consumer protection statutes for false and misleading product labeling despite language in the FDCA that prohibited states from imposing labeling "requirements").

With respect to the provision at issue here, courts have recognized that "[t]he HEA and its associated regulations only require that particular disclosures are to be made in the delivery of federal student loans and generally prescribes how those disclosures should be made. It does not preempt the enforcement of a statute of general applicability under a state's traditional police power . . . ." *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 549-50 (M.D. Pa. 2018). *See also* *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, No. 18-1531, 2019 WL 2636822, at *8 (7th Cir. June 27, 2019) (language of HEA weighs against attributing to Congress a desire to preempt state law broadly, permitting claims that servicer steered borrowers into payment plans that were to the servicers' advantage and borrowers' detriment); *Daniel v. Navient Solutions, LLC*, 328 F. Supp. 3d 1319, 1324 (M.D. Fla. 2018) (because it is possible to comply with both the HEA and state law, and complying with state law would not interfere with the purposes of the HEA, claims that loan servicer offered incorrect information and recommendations regarding PSLF eligibility were not preempted by § 1098g); *Genna v. Sallie Mae, Inc.*, No. 11-cv-7371 (LBS), 2012 WL 1339482, at *9 (S.D.N.Y. Apr. 17, 2012) (section 1098g did not preempt state-law consumer protection claims regarding misstatements to consumers regarding auto-debiting).

Ms. Winebarger claims that Nelnet failed to provide accurate records to PHEAA, which contributed to the undercounting of the qualifying payments she made under federal law and regulations. FAC ¶¶ 94-98. She does not allege any misstatement to her at all, let alone by omission. This does not implicate § 1098g.

In the face of contrary case law, Nelnet relies primarily on *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010). *Chae* is distinguishable. In *Chae*, plaintiffs

did "not contend that California law prevents Sallie Mae from employing any of the three loan-servicing practices at issue. We consider these allegations in substance to be a challenge to the allegedly-misleading method Sallie Mae used to communicate with the plaintiffs about its practices." *Id.* at 942. Ms. Winebarger's claims against Nelnet are squarely a challenge to "loan-servicing practices at issue" rather than solely the way they are communicated. She challenges the failure to credit her for payments she made, and Nelnet's contribution to that failure, not by making misleading disclosures to her, but by providing a bad accounting of payments to PHEAA.

*Chae* is also inapposite because the forms, coupon books, and billing statements at issue in that case were expressly governed by federal regulations under the HEA, which prescribed their content. Nelnet's provision of information in transfers to PHEAA is not, and Nelnet does not contend that it is. *See* Genna, 2012 WL 1339482, at *9 (distinguishing *Chae* because, in *Chae*, "plaintiffs challenged written statements that were explicitly regulated and sanctioned by federal law"). Rather than challenge the form of legally mandated disclosures, or complain that she was not provided some piece of information by Nelnet, Ms. Winebarger alleges that Nelnet derailed her progress toward PSLF by supplying incorrect information to PHEAA. Her claims are not preempted.

### C. Ms. Winebarger's Common-Law Causes of Action Must Proceed

#### 1. Negligence

Nelnet claims that Ms. Winebarger's "negligence claim fails for lack of duty and lack of damages." Mot. at 14. On both counts, Nelnet is wrong. As discussed above, *supra* at III.A, Plaintiffs suffered cognizable damages traceable to Nelnet.

Nelnet claims that loan servicers do not owe general duties of care to borrowers. Mot. at 14 (citing *Ruiz v. Cent. Mortg. Co.*, No. CV 14–08627 MMM

(SSx), 2015 WL 12683873, at *11 (C.D. Cal. Apr. 2, 2015)). But this rule of thumb is not categorical: "[w]hether a duty of care exists is a question of law to be determined on a case-by-case basis." *Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1172 (E.D. Cal. 2016). California courts "balanc[e] various factors" to assess whether loan servicers owe borrowers a duty of care: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1056 (S.D. Cal. 2018) (citing *Biakanja v. Irving*, 49 Cal.2d 647 (1958)). All six factors favor Plaintiff here.

First, the purpose of the PSLF program is to benefit the borrowers. *See* 34 C.F.R. § 685.219(a) (PSLF "is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans."). This purpose contrasts with the conventional relationship between lender, loan servicer, and borrower, in which the sole purpose of the lender is to receive repayment with interest. Borrowers like Ms. Winebarger are transferred from Nelnet to FedLoan Servicing (PHEAA) when they have filed an Employment Certification Form specifically targeting PSLF. Nelnet cannot claim ignorance that these transfers are being made in the context of a program that Congress created for the express purpose of assisting public servants.

Second, for the same reason, it is foreseeable that providing unsound information in a transfer to FedLoan may create undercrediting that harms borrowers building toward 120 qualifying payments. *Cf.* *Romo v. Wells Fargo Bank, N.A.*, No. 15-cv-03708-EMC, 2016 WL 324286, at *9 (N.D. Cal. Jan. 27, 2016) (in context of application for loan modification, "most federal district

courts" have found that servicer has a duty of care to borrowers) (discussing *Alvarez v. BAC Home Loans Serv., L.P.*, 228 Cal. App. 4th 941 (Cal. Ct. App. 2014)).

Third and Fourth, as discussed *supra* at III.A, Nelnet—which contributed to the miscounting of Ms. Winebarger's qualifying payments—injured her, in a fashion traceable to Nelnet's conduct.

Fifth, Nelnet's conduct was blameworthy because "borrowers' ability to protect [their] own interests" in the accurate accounting of qualifying payments is "practically nil." *Alvarez*, 228 Cal. App. 4th at 949 ("it is highly relevant" that a loan servicer "holds all the cards"). In the context of Congress' attempt to alleviate the heavy burden of student loan debt on public servants, negligence or malfeasance which defeats or defers this goal for borrowers flies in the face of not just the private interests of individual borrowers, but public policy as well.

Sixth, imposing a duty on Nelnet prevents future harm insofar as it would "reign in" [sic] miscounting and "mitigate [Nelnet's] incentives to mis- or under-inform borrowers." *Martinez v. Flagstar Bank, FSB*, No. 2:15-cv-01934-KJM-CKD, 2016 WL 3906810, at *7 (E.D. Cal. July 19, 2016) (describing the servicer's duty of care for loan modifications).

Because all six *Biakanja* factors favor Ms. Winebarger, this Court should recognize Nelnet's duty of care. She has stated a claim for negligence.

2. Breach of Contract

As Nelnet notes, Plaintiffs "wish[ing] to sue under a government contract must demonstrate that [they are] intended beneficiar[ies]" and not merely "incidental one[s]." Mot. at 17 (quoting *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016)). Although "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries" this rule is far from absolute; parties may overcome it by showing "a clear intent to the

contrary." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999).

To evaluate such "clear intent," courts "examin[e] . . . the contract as a whole" to assess its "text and purpose" in light of the "circumstances of the transaction." *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1245 (9th Cir. 2009), *rev'd on other grounds,* 563 U.S. 110 (2011). Further, "when a contract is mandated by a federal statute, examination of intent includes the 'governing statute and its purpose.'" *Id.* (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 706 (4th Cir. 2007)). "That the [a]greement does not expressly state that it was entered into for the borrowers' benefit . . . [is] not fatal to Plaintiff's claim." *Marques v. Wells Fargo Home Mortg., Inc.*, No. 09–cv–1985–L(RBB), 2010 WL 3212131, at *4 (S.D. Cal. Aug. 12, 2010) (noting the "analysis of intended beneficiary status is not conditioned on such 'formalistic recitals'"). If, taken together, these items demonstrate an intent to benefit the third party, "the third party is an intended beneficiary with the right to enforce the contract, even if the contract does not expressly grant the third party the right to sue." *Id.*

Again, the purpose of the PSLF program is to benefit borrowers. *See* 34 C.F.R. § 685.219(a) (noting the aim of the program is "forgiving the remaining balance of their Direct loans"). Indeed, the "core mission" of the loan program is to "ensure that all eligible individuals benefit from federal financial assistance." Mot., Ex. B, at 23 (Nelnet's 2009 servicing contract). Nelnet, of course, knew of this aim when transferring loans to PHEAA, as these transfers are triggered by the filing of an Employment Certification Form. *See Marques*, 2010 WL 3212131, at *4 (finding that contract was for benefit of third-party borrowers because the enabling act "directed the Treasury to implement a plan to maximize assistance to homeowners and encourage mortgage servicers to take advantage of government programs to minimize foreclosures").

Further, the individual servicing contracts impose duties and expectations geared to benefit the borrower. The contracts state that the "intent" of the Department of Education is to "provide[] [the] best of business services" and ensure that "borrowers will receive the highest quality support." FAC ¶¶ 77–78. The contracts also require that servicers shall: (i) "maintain proper controls over payment posting and accounting activities"; (ii) "establish a system and processes to correctly record all transactions on their database"; and (iii) "support servicing of all Direct Loans," including by "respond[ing to] and resolv[ing] customer complaints," and by providing information and counseling with respect to student loans that "respond to ... questions and requests timely and accurately." *Id.* at 30, 52. These goals and duties to borrowers—along with the aims of the governing laws—further show that Plaintiffs are beneficiaries of the servicing contracts, may sue to enforce them, and may recover damages. *See* *Marques*, 2010 WL 3212131, at *4–5 (finding that contract was for third party's benefit when the contract "goes beyond the hortatory pronouncements" and directs that servicer "shall" take actions to benefit borrowers).

3. Breach of Implied-in-Fact Contract

"Whether or not an implied contract has been created is determined by the act [sic] and conduct of the parties and all the surrounding circumstances involved and is a question of fact." *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 611-12 (Cal. Ct. App. 1981). *See also* *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 829 (Cal. Ct. App. 2007) (implied-in-fact contract between university and students a question of fact). Nelnet asserts that "courts have roundly rejected the theory that student loan servicers have contractual relationships with borrowers by virtue of servicing borrowers' loans." Mot. at 19-20. But neither the lone case Nelnet cites, nor the cases cited therein, deal with the unique circumstances of student loans serviced under the PSLF program, as

discussed below. *See* *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 24 (D.D.C. 2014) (mortgage); *Petty v. Countrywide Home Loans, Inc.*, No. 3:12cv6677, 2013 WL 1837932, at *1 (S.D. W.Va. May 1, 2013) (home refinancing); *Robinson v. Deutsche Bank Nat'l Trust Co.*, 932 F. Supp. 2d 95, 99 (D.D.C. 2013) (mortgage); *Edmond v. Am. Educ. Servs.*, No. 10cv0578, 2010 WL 4269129, at *1 (D.D.C. Oct. 28, 2010) (unconsolidated private student loan). None of these cases makes any categorical statement that a loan servicer can never enter into an implied-in-fact contract with a borrower.

A breach of an implied-in-fact contract is adequately pleaded where the plaintiff, as here, supplies sufficient facts from which the breach of a mutually-agreed upon promise on the part of the defendant may be implied.[7] *See* *Requa v. Regents of Univ. of Calif.*, 213 Cal. App. 4th 213, 228 (Cal. Ct. App. 2012) (university's various benefit booklets and handbooks regarding health insurance for retirees constituted promise to offer benefits described).

The nature of the relationship between student loan borrowers who seek PSLF and their servicers gives rise to an implied-in-fact contract. In its Servicing Contracts with DOE, Nelnet expressly agreed, in exchange for consideration, to undertake various responsibilities related to Direct Loans for the benefit of borrowers, as described above. *See also* FAC ¶¶ 75-81 (discussing servicing contracts). In turn, and as contemplated in the Servicing Contracts, Nelnet committed to provide sound support and information.[8] FAC ¶ 69. In particular,

---

[7] Nelnet disputes only the *formation* of an implied-in-fact contract, not its breach. *See* Mot. at 18-20. Thus, if the Court finds—as it should—that the Complaint adequately pleads the existence of an implied-in-fact contract, there is no reason to dismiss.

[8] DOE made the Servicing Contracts themselves easily available to borrowers on the Internet at least as early as February 2016, explaining that loan servicers including Nelnet "are responsible for collecting payments on a loan, advising borrowers on resources and benefits to better manage their federal student loan obligations, responding to customer service inquiries, and performing other administrative tasks associated with maintaining a loan on behalf of [DOE]." *See* https://web.archive.org/web/20160309030530/https://studentaid.ed.gov/sa/about/

with respect to borrowers like Ms. Winebarger who are transferred to FedLoan Servicing on the basis of their pursuit of PSLF, Nelnet knows that its loan transfers are meant to facilitate a program designed by Congress for the benefit of borrowers, not solely the federal government.

An exchange of promises is implied. Nelnet receives a small fraction of the interest and fees paid to DOE by borrowers serviced under the Contracts. Nelnet handles its interaction with borrowers and PHEAA (as transferee) properly for borrowers' benefit. From these facts, taken together, the Court may fairly imply the existence of actionable contractual responsibilities that Nelnet owed to the borrowers of the Direct Loans it serviced.

4. Breach of Fiduciary Duty

As it did for Plaintiffs' negligence claim, Nelnet argues that the breach of fiduciary duty claim "fails for lack of duty and lack of damages." Mot. at 15. Again, Nelnet's arguments lack merit. As described *supra* at III.A, Plaintiffs suffered damages from Nelnet's conduct.

Although the loan servicer does not have fiduciary obligations to the borrower as a default rule, a fiduciary relationship can arise if the servicer "expressly invites the borrower's reliance, confidence or trust." *Cobb v. Ocwen Loan Servicing, LLC*, No. EDCV16-1659-JGB(KKx), 2016 WL 11520305, at *7 n.5 (C.D. Cal. Dec. 9, 2016); *see Tobon v. Nationstar Mortg. LLC*, No. 2:16-cv-08936-ODW (GJS), 2017 WL 8114978, at *4 (C.D. Cal. Apr. 4, 2017) (noting that a duty arises when the defendant "exceed[s] the scope of its conventional role as a loan servicer"). A fiduciary duty arises when a servicer "h[olds] itself out to customers as having expertise regarding their repayment options and, in fact, provided customers with advice regarding loan repayment, and specifically whether the program they were in would qualify them to have their loans forgiven."

---

data-center/business-info/contracts/loan-servicing.

*See* Daniel, 328 F. Supp. 3d at 1325 (finding that plaintiffs adequately alleged that a student loan servicer had a fiduciary duty to borrowers).

Nelnet fills such a role. *See*, *e.g.*, FAC ¶ 69a (noting that Nelnet "works with [DOE] to help [borrowers] achieve [borrowers'] educational goals" and explaining that "[Nelnet] provides customer service on your federal student loans, so we answer your questions, offer solutions if [borrowers are] having trouble paying, and process your payments"); 69b (noting Nelnet's claims that it is "here for student loan borrowers who have questions regarding their loans, and offers extensive answers to borrowers' frequently asked questions"). As such, Ms. Wineberger alleges that Nelnet "did not merely service Plaintiffs' loans by sending Plaintiffs invoices and collecting their payments" and sets for forth "facts from which a jury could find [a fiduciary] relationship arose." *Daniel*, 328 F. Supp. 3d at 1325.

**D. Ms. Winebarger's California UCL Claim Must Proceed**

Nelnet also challenges Ms. Winebarger's claims under the California Unfair Competition Law (UCL), which prohibits "unlawful . . . business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. "'Unlawful' practices" are "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Application Grp., Inc. v. Hunter Grp., Inc.*, 72 Cal. Rptr. 2d 73, 89 (1998). *See also* *Alisu Investments, Ltd. v. TriMas Corp.*, No. 16-686-MWF (PJWx), 2019 WL 856396, at *13 (C.D. Cal. Jan. 16, 2019) ("Conduct is 'unlawful' under the UCL if it 'violate[s] another 'borrowed' law' *i.e.*, 'virtually any state, federal or local law'"). Nelnet does not dispute that common law claims such as Nelnet's negligence, breach of contract, and breach of fiduciary duty can violate the UCL. Mot. at 21. Instead it reiterates its argument that it did not breach any duties or contracts or commit acts of negligence. Because Ms. Winebarger states a claim for all these causes of action, so too does she state a

claim that Nelnet engaged in unlawful practices. *See supra* at III.C.

In addition, the UCL proscribes "unfair" business practices. Cal. Bus. & Prof. Code § 17200. Nelnet's practice of providing unsound information to PHEAA, resulting in the deprivation of Ms. Winebarger's qualifying payments, is unfair. An unfair practice exists where consumer injury (a) "is substantial," (b) "is not outweighed by any countervailing benefit to consumers or to competition," and (c) "is not an injury the consumers themselves could reasonably have avoided." *Rhodeman v. Ocwen Loan Servicing, LLC*, No. EDCV 18-2363 JGB (KKx), 2019 WL 2067227, at *9 (C.D. Cal. May 6, 2019). Nelnet does not (and could not) argue that its contribution to the undercounting of qualifying payments "benefits consumers or competition." Mot. at 21. Nor does it explain how a consumer "could reasonably have avoided" improper counting. *Id.* Nelnet says only that Plaintiffs have not suffered "substantial injury" and thus it has not engaged in "unfair" practices. *Id.* This argument again fails because Ms. Winebarger suffered sufficient injury through persistent undercounting of her qualifying payments and the additional money she will be forced to pay. *See supra* at III.A.

### E. Nelnet's Motion to Strike Fails

Nelnet argues that the class action allegations in the FAC should be stricken for failure to comply with the 90-day time limit found in L.R. 23-3.[9] This argument is meritless. In *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 426-27 (9th Cir. 2018), the Ninth Circuit unambiguously "conclude[d] that the bright-line of Local Rule 23-3 is incompatible with Federal Rule of Civil Procedure 23," which requires only that a motion for class certification be filed "at an early practicable time."

Nelnet argues that because "nothing is preventing" Plaintiffs from filing for certification within 90 days (Mot. at 22-23), the class allegations here should

[9] Ninety days have not passed from the filing of Plaintiffs' First Amended Complaint, which was filed on June 7, 2019 (ECF No. 44). The time to file a motion under L.R. 23-3 should be calculated from that date in any event.

nevertheless be stricken. But the Ninth Circuit adopted no such distinction or limitation in *ABS*. Instead, citing authority that judges should "ignore local rules calling for specific time limits," the Court of Appeals targeted the bright-line nature of the rule itself. Its analysis does not make reference to the conduct of the plaintiffs. *Id.* at 427. Ultimately, *ABS* concludes that despite the discretion afforded to District Courts, L.R. 23-3 is incompatible with the Federal Rules by virtue of its hard-and-fast 90-day limit, and instead the flexible approach found on the face of Rule 23 is required. *Id.* In this case, the flexible approach is indeed necessary. Conclusively demonstrating commonality as to Nelnet requires discovery of Nelnet's internal analysis of these issues, communications on point, and payment data.

Nelnet also argues that the Nelnet Sub-Class and California Nelnet Sub-Class are not ascertainable because some of the members of those subclasses may have made few payments to Nelnet and therefore cannot be certain that Nelnet was directly responsible for the undercounting of their payments. Mot. at 23-24. This argument is not appropriate for a motion to strike. In the Ninth Circuit, as long as class action allegations "address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent," a motion to strike them is to be denied in favor of a Rule 23 motion for class certification. *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178-79 (S.D. Cal. 2012) (quoting *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005)). Nelnet's argument here is a quintessential class-certification argument that is inappropriate at this stage.

Further, these classes will be ascertainable at class certification. Nelnet wrongly likens this case to *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) and *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010). But in *Sanders*, the class included everyone who owned a product without

limiting it to those who have suffered a wrong—it included those who did not purchase the product, did not see advertisements, or suffered no damages. *Sanders*, 672 F. Supp. 2d at 991. Similarly, in *Tietsworth*, the class included all purchasers of a defective washing machine, even including those who had not experienced problems. *Tietsworth*, 720 F. Supp. 2d at 1146-47. In other words, those courts rejected classes where it was unclear whether all class members had been affected by the problem targeted in the class action. Here, by contrast, Nelnet targets subclasses of the overall class, which is defined with reference only to those borrowers who have indeed suffered undercrediting. FAC at ¶¶ 143-145. *See Ehrlich v. BMW of N. Am., Inc.*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (rejecting *Tietsworth* where Plaintiff had adequately alleged injury).

To the extent Nelnet argues it cannot ascertain whether the undercounting for each individual class member was attributable to *Nelnet's* actions, this is a mere rehash of Nelnet's traceability argument, which fails for the reasons stated above. *Supra* at III.A. Nor is it appropriate to examine the merits of these claims at the class-certification stage. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 488 (C.D. Cal. 2012) ("*Tietsworth* simply violated black-letter law by denying a motion for class certification based on the court's impression that defendant would win on the merits") (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (district court shall not determine whether class members could actually prevail on the merits of their claims)).

## IV. CONCLUSION

For all the foregoing reasons, the Motion should be denied.

Dated: July 15, 2019

Respectfully submitted,

**Pierce Bainbridge Beck Price & Hecht LLP**

By: */s/ Jonathan A. Sorkowitz*
Thomas D. Warren (SBN 160921)

Janine Cohen (SBN 203881)
355 S. Grand Avenue, Suite 4400
Los Angeles, CA 90017
Telephone: (213) 262-9333
twarren@piercebainbridge.com
jcohen@piercebainbridge.com

Jonathan A. Sorkowitz (*pro hac vice*)
277 Park Avenue, 45th Floor
New York, New York 10172
Telephone: (212) 484-9866
jsorkowitz@piercebainbridge.com

*Attorneys for Plaintiffs and for the proposed Class*

**Certificate of Service**

I certify that today, July 15, 2019, I electronically filed the foregoing **Plaintiffs' Opposition to Defendants Nelnet Servicing, LLC and Nelnet Inc.'s Motion to Dismiss and Strike First Amended Complaint Pursuant to F.R.C.P. 12(b)(1), 12(b)(6), and 12(f)(2)** using the Court's CM/ECF system. All counsel of record who are registered in the CM/ECF system will be served with this document by email.

*/s/ Jonathan A. Sorkowitz*
Jonathan A. Sorkowitz