**Pierce Bainbridge Beck Price & Hecht LLP**
Thomas D. Warren (SBN 160921)
Janine Cohen (SBN 203881)
355 S. Grand Ave., Suite 4400
Los Angeles, California 90071
Tel: (213) 262-9333
twarren@piercebainbridge.com
jcohen@piercebainbridge.com

Jonathan A. Sorkowitz (admitted *pro hac vice*)
277 Park Ave., 45th Floor
New York, New York 10172
Tel: (212) 484-9866
jsorkowitz@piercebainbridge.com

*Attorneys for Plaintiffs and for the proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LISA WINEBARGER, JENISE OVERMIER,** and **PETER GANNON,** on behalf of themselves and all others similarly situated**,**

Plaintiffs,

v.

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, NELNET SERVICING, LLC,** and **NELNET, INC.**

Defendants.

Case No. 19-cv-01503-JFW-RAO
Hon. John F. Walter

**PLAINTIFFS' OPPOSITION TO DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**Date:** August 12, 2019
**Time:** 1:30 p.m.
**Courtroom:** 7A
**Judge:** Hon. John F. Walter

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTS ........ 2

III. ARGUMENT ........ 4

A. Plaintiffs Adequately Plead Standing and Ripeness, and Ms. Winebarger's Claims Are Not Moot ........ 4

1. Plaintiffs Have Alleged an Injury in Fact ........ 4

2. PHEAA's Arguments About Standing Lack Merit ........ 6

3. Plaintiffs' Claims Are Ripe for Adjudication ........ 9

4. Ms. Winebarger's Claims Are Not Moot ........ 10

5. State Statutes Do Not Strip This Court of Jurisdiction ........ 12

B. Plaintiffs' State-Law Claims Are Not Preempted ........ 13

C. Plaintiffs' Common-Law Causes of Action Must Proceed ........ 14

1. Negligence ........ 14

2. Breach of Fiduciary Duty ........ 17

3. Breach of Contract ........ 19

4. Breach of Implied-in-Fact Contract ........ 20

D. Plaintiffs' Statutory Causes of Action Must Proceed ........ 22

1. Equal Credit Opportunity Act ........ 22

2. California UCL ........ 22

3. District of Columbia Consumer Protection Procedures Act ........ 24

E. PHEAA's Challenge to the Class Action Allegations Fails ........ 25

IV. CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABS Entm't, Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) .......... 25

*Adam A. Weschler & Son, Inc. v. Klank*,
561 A.2d 1003 (D.C. 1989) .......... 24

*Alvarez v. BAC Home Loans Serv., L.P.*,
228 Cal. App. 4th 941 (Cal. Ct. App. 2014) .......... 16

*D.C. ex rel. Am. Combustion, Inc. v. Transam. Ins. Co.*,
797 F.2d 1041 (D.C. Cir. 1986) .......... 12, 13

*Application Grp., Inc. v. Hunter Grp., Inc.*,
72 Cal. Rptr. 2d 73 (1998) .......... 23

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .......... 8

*Bayatfshar v. ARINC, Inc.*,
961 F. Supp. 2d 206 (D.D.C. 2013) .......... 20

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
857 F.3d 939 (D.C. Cir. 2017) .......... 24

*Begay v. Kerr-McGee Corp.*,
682 F.2d 1311 (9th Cir. 1982) .......... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 25

*Bernhardt v. County of Los Angeles*,
279 F.3d 862 (9th Cir. 2002) .......... 9, 11

*Biakanja v. Irving*,
49 Cal.2d 647 (1958) .......... 15, 16, 17

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .......... 9

*BNSF Ry. Co. v. O'Dea*,
572 F.3d 785 (9th Cir. 2009) .......... 13

*Burton v. Time Warner Cable Inc.*,
No. CV 12-06764 JGB AJWX, 2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .......... 7

*California Trout, Inc. v. U.S. Bureau of Reclamation*,
115 F. Supp. 3d 1102 (C.D. Cal 2015) .......... 11

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) .......... 19

*Carl's Jr. Restaurants LLC v. 6Points Food Servs. Ltd.*,
No. CV 15-9827-GHK (ASx), 2016 WL 3671116 (C.D. Cal. July 7, 2016) .......... 12

*Cent. Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) .......... 5

*Cervantez v. Sullivan*,
963 F.2d 229 (9th Cir. 1992) .......... 22

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) .......... 14

*Chen v. Allstate Ins. Co.*,
819 F.3d 1136 (9th Cir. 2016) .......... 11

*Chen v. Bell-Smith*,
768 F. Supp. 2d 121 (D.D.C. 2011) .......... 24

*Chicago & N.W.R. Co. v. Whitton*,
80 U.S. (13 Wall.) 270 (1871) .......... 12

*Clinton v. Select Portfolio Serv., Inc.*,
225 F. Supp. 3d 1168 (E.D. Cal. 2016) .......... 14

*Cnty. of Santa Clara v. Astra USA, Inc.*,
588 F.3d 1237 (9th Cir. 2009) .......... 19

*Cobb v. Ocwen Loan Servicing, LLC*,
No. EDCV16-1659-JGB(KKx), 2016 WL 11520305 (C.D. Cal. Dec. 9, 2016) .......... 17

*In re Coleman*,
560 F.3d 1000 (9th Cir. 2009) .......... 10

*Contra Costa Cty. Deputy Sheriffs Ass'n v. Mitchoff*,
No. 15-CV-00261-TEH, 2015 WL 1322577 (N.D. Cal. Mar. 24, 2015) .......... 8

*Cunningham v. D.C. Sports & Entm't Comm'n*,
No. Civ. A. 03-839RWRJMF, 2005 WL 3276306 (D.D.C. Nov. 30, 2005) .......... 15

*Daniel v. Navient Solutions, LLC*,
328 F. Supp. 3d 1319 (M.D. Fla. 2018) .......... 13, 18, 19

*Del E. Webb Corp. v. Structural Materials Co.*,
123 Cal. App. 3d 593 (Cal. Ct. App. 1981) .......... 20

*E.J. Friedman Co. v. United States*,
No. CV 90-3912 RG(Ex), 1992 WL 548137 (C.D. Cal. Apr. 2, 1992) .......... 12

*Frazier v. Aegis Wholesale Corp.*,
No. C-11-4850 EMC, 2011 WL 6303391 (N.D. Cal. Dec. 16, 2011) .......... 23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 11

*Genna v. Sallie Mae, Inc.*, No. 11-cv-7371 (LBS),
2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012) .......... 13, 14

*Gerbery v. Wells Fargo Bank, N.A.*,
No. 13-CV-614-MMA DHB, 2013 WL 3946065 (S.D. Cal. July 31, 2013) .......... 7

*Goonewardene* v. *ADP, LLC*,
434 P.3d 124 (Cal. 2019) .......... 16, 17

*High v. McLean Fin. Corp.*,
659 F. Supp. 1561 (D.D.C. 1987) .......... 15

*Howard v. Riggs Nat'l Bank*,
432 A.2d 701, 709 (D.C. 1981) .......... 24

*Hughes v. Abell*,
794 F. Supp. 2d 1 (D.D.C. 2010).............................................................. 15

*Jacobs v. Clark County Sch. Dist.*,
526 F.3d 419 (9th Cir. 2008) .................................................................. 10

*Kashmiri v. Regents of Univ. of Calif.*,
156 Cal. App. 4th 809 (Cal. Ct. App. 2007)................................................. 21

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999) ................................................................ 19

*Ladas v. Cal. State Auto. Ass'n*,
23 Cal. Rptr. 2d 810 (Cal. Ct. App. 1993).................................................. 21

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) .................................................................... 5

*Low v. LinkedIn Corp.*,
No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........................................................................................... 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................. 4

*Marques v. Wells Fargo Home Mortg., Inc.*,
No. 09-cv-1985-L(RBB), 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010) ................................................................................... 19, 20

*Marshall v. Marshall*,
547 U.S. 293 (2006)................................................................................ 12

*Martinez v. Flagstar Bank, FSB*,
No. 2:15-cv-01934-KJM-CKD, 2016 WL 3906810 (E.D. Cal. July 19, 2016) ......................................................................................... 16

*Mushala v. US Bank, N.A.*,
No. CV 18-1680, 2019 WL 1429523 (D.D.C. Mar. 29, 2019) ....................... 24

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
No. 18-1531, 2019 WL 2636822 (7th Cir. 2019)........................................... 13

*Nw. Envt'l Def. Ctr. v. Gordon*,
849 F.2d 1241 (9th Cir. 1988) ................................................................ 10

*O'Shea v. Littleton*,
414 U.S. 488 (1974)........................................................................................ 8

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018) ........................................................ 15

*Pennsylvania v. Navient Corp.*,
354 F. Supp. 3d 529 (M.D. Pa. 2018)........................................................... 13

*In re Remicade Antitrust Litig.*,
345 F. Supp. 3d 566 (E.D. Pa. 2018)............................................................ 13

*Requa v. Regents of Univ. of Calif.*,
213 Cal. App. 4th 213 (Cal. Ct. App. 2012).................................................. 20

*Rhodeman v. Ocwen Loan Servicing, LLC*,
No. EDCV 18-2363 JGB (KKx), 2019 WL 2067227 (C.D. Cal.
May 6, 2019)................................................................................................. 23

*Rice v. Sunbeam Prod., Inc.*,
No. CV 12-7923-CAS(AJWx), 2013 WL 146270 (C.D. Cal. Jan.
7, 2013) ......................................................................................................... 23

*Robinson v. Bank of Am.*,
No. 12-CV-00494-RMW, 2012 WL 1932842 (N.D. Cal. May 29,
2012) ............................................................................................................. 14

*Romo v. Wells Fargo Bank, N.A.*,
No. 15-cv-03708-EMC, 2016 WL 324286 (N.D. Cal. Jan. 27,
2016) ............................................................................................................. 15

*Sagana v. Tenorio*,
384 F.3d 731 (9th Cir. 2004) ......................................................................... 25

*Scott v. Pasadena Unified Sch. Dist.*,
306 F.3d 646 (9th Cir. 2002) ........................................................................... 9

*Sec'y of State for Def. v. Trimble Navigation Ltd.*,
484 F.3d 700 (4th Cir. 2007) ......................................................................... 19

*Silicon Image, Inc. v. Analogix Semiconductor*,
642 F. Supp. 2d 957 (N.D. Cal. 2008)............................................................. 6

*Smith v. Washington Post Co.*,
962 F. Supp. 2d 79 (D.D.C. 2013)................................................................. 20

*Song Fi, Inc. v. Google Inc.*,
72 F. Supp. 3d 53 (D.D.C. 2014) .......... 13

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) .......... 4, 6

*Sweet v. Johnson*,
169 Cal. App. 2d 630 (Cal. Ct. App. 1959) .......... 6

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) .......... 9

*Thomas v. SmithKline Beecham Corp.*,
297 F. Supp. 2d 773 (E.D. Pa. 2003) .......... 4

*Tobon v. Nationstar Mortg. LLC*,
No. 2:16-cv-08936-ODW (GJS), 2017 WL 8114978 (C.D. Cal. Apr. 4, 2017) .......... 18

*Turner v. JPMorgan Chase, N.A.*,
No. TDC-14-0576, 2015 WL 5021390 (D. Md. Aug. 21, 2015) .......... 22

*U.S. Fid. & Guar. Co. v. Lee Investments LLC*,
641 F.3d 1126 (9th Cir. 2011) .......... 12

*Wagner v. Church*,
208 F. Supp. 3d 1138 (D. Haw. 2016) .......... 12

*Way v. J.P. Morgan Chase Bank, N.A.*,
No. 216CV02244TLNKJN, 2018 WL 2117630 (E.D. Cal. May 8, 2018) .......... 15

*Williams v. Purdue Pharma Co.*,
297 F. Supp. 2d 171 (D.D.C. 2003) .......... 24

**Statutes**

73 Pa. Cons. Stat. § 2270.3 .......... 17

73 Pa. Cons. Stat. § 2270.4 .......... 17

73 Pa. Cons. Stat. § 2270.5 .......... 12

15 U.S.C. § 1691(a) .......... 22

20 U.S.C. § 1087e ........ 2

20 U.S.C. § 1098g ........ 13

28 U.S.C. § 1332 ........ 12

Cal. Bus. & Prof. Code § 17200 ........ 23

Cal. Bus. & Prof. Code § 17204 ........ 23

D.C. Code § 28-3901 ........ 24

D.C. Code § 28-3904 ........ 25

D.C. Code § 28-3905 ........ 13, 25

**Federal Rules**

34 C.F.R. § 685.219 ........ 2, 15, 16, 19

C.D. Cal. L.R. 23-3 ........ 2, 25

Fed. R. Civ. P. 12(b) ........ 25

**Other Authorities**

Federal Student Aid, Income-Driven Plans Questions and Answers, *available at* https://studentaid.ed.gov/sa/ repay-loans/understand/plans/income-driven/questions (last accessed July 18, 2019) ........ 10

H. Rpt. 110-210 at 39, 48-49 ........ 2

Wright & Miller, 13A Fed. Practice and Proc. § 3531.4 ........ 5

Zack Freeman, "99% of Borrowers Rejected Again for Student Loan Forgiveness," *Forbes*, May 1, 2019 (*available at* https://www.forbes.com/sites/zackfriedman/2019/05/01/99-of-borrowers-rejected-again-for-student-loan-forgiveness/#1e94cfa8b16b) ........ 1

Plaintiffs respectfully submit this memorandum in opposition to Defendant Pennsylvania Higher Education Assistance Agency's ("PHEAA") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 60) ("Mot.").

## I. INTRODUCTION

Public servants throughout the United States are saddled with onerous student debt. Because of the limited financial benefits available in government and nonprofit jobs, they often have little ability to repay that debt. In response to this problem, Congress enacted a unique program: Public Service Loan Forgiveness ("PSLF"). PSLF was designed to enable public servants who faithfully make on-time and full payments on an eligible payment plan for ten years to have their loan balances forgiven. Yet the PSLF program has been beset by systemic problems from the outset, culminating in the denial of over 99% of applications.[1]

This class action targets an oft-reported problem wherein borrowers who file PSLF-related paperwork inexplicably receive credit for fewer qualifying payments than they have made. This problem lies primarily at the feet of Defendant PHEAA, which services loans for borrowers who seek PSLF and issues these payment counts. PHEAA is directly responsible for the counting at issue here—on which the federal government ultimately relies when it forgives loans—and is shortchanging many thousands, maybe even millions, of public-servant borrowers.

PHEAA's principal response is that borrowers deprived of credit for qualifying payments do not have standing to raise claims against PHEAA, or that such claims are not ripe, if they have not yet made ten years of payments. Put simply, PHEAA argues that the situation might, at some undefined time, be rectified. In other words, PHEAA contends that current harms do not matter because the playing field may change in the future. That is not the law.

[1] *See* FAC ¶ 65; Zack Freeman, "99% of Borrowers Rejected Again for Student Loan Forgiveness," *Forbes*, May 1, 2019 (*available at* https://www.forbes.com/sites/zackfriedman/2019/05/01/99-of-borrowers-rejected-again-for-student-loan-forgiveness/#1e94cfa8b16b).

PHEAA also claims its conduct cannot be challenged by borrowers because it is a mere loan servicer answerable only to the lender (here, the Department of Education). This approach ignores the unique nature of the PSLF program and its purpose to benefit public-servant borrowers—a purpose unanimously expressed in the statutory basis for the program, its legislative history, the implementing regulations, public statements by the government and the servicers alike, and the nature of the program. The PSLF program is intentionally different from a normal loan, where the lender's purpose is only to retrieve interest from borrowers. PHEAA's contract gives it PSLF-specific duties to further the program's unique goals, and it is responsible for its wholesale breach of those duties.

PHEAA also tries two other discredited tactics. First, it argues that the Higher Education Act preempts the claims against it. But several district courts have held that loan servicers such as PHEAA must answer for their conduct notwithstanding the Higher Education Act. Second, PHEAA looks to dismiss the class allegations here under Local Rule 23-3. This effort fails for several reasons, not least of which is that Local Rule 23-3 has been invalidated by the Ninth Circuit.

Plaintiffs respectfully request that PHEAA's Motion to Dismiss be denied.

## II. FACTS

The PSLF program was established by Congress in 2007 to assist public servants with their student loan burdens. First Amended Class Action Complaint ("FAC") (ECF No. 44) ¶ 58. *See also* H. Rpt. 110-210 at 39, 48-49 (detailing program's purpose of encouraging public service by reducing student debt). Under the PSLF program, student loan borrowers may have the balance on their federal Direct Loans forgiven if they make 120 loan payments for the full monthly amount due under a qualifying payment plan, within fifteen days of the due date, while the borrower is working for a "covered employer," which is generally a public-sector or nonprofit entity. *See* FAC ¶¶ 59-60; 34 C.F.R. § 685.219(c)(1) (listing requirements for qualifying payment); 20 U.S.C. § 1087e (same).

PHEAA has an exclusive contract with the U.S. Department of Education ("DOE") to act as loan servicer for borrowers who are pursuing loan forgiveness under the PSLF program. FAC ¶¶ 75-81. In connection with this status, PHEAA holds itself out as a source of information and guidance to borrowers with respect to their Direct Loans and the PSLF program. *See* FAC ¶ 69 (listing specific statements to this effect). One of PHEAA's responsibilities is to account for how many of the 120 required payments borrowers have made—a determination on which DOE relies in forgiving or not forgiving loans. FAC ¶¶ 73-74. The FAC alleges a nationwide pattern and practice by PHEAA, described in government reports, of undercounting student loan borrowers' qualifying payments toward PSLF. FAC ¶¶ 82-93.

Plaintiff Lisa Winebarger is a California resident and public-interest attorney who began making payments toward her Direct Loans in January 2013. FAC ¶ 99. She has received statements from PHEAA which give her credit for fewer than the qualifying payments she has actually made. FAC ¶ 100. Her payment count fluctuated from 54 in October 2018 (four fewer than the then-correct total) to 20 in November 2018 (thirty-nine fewer) to 26 in December 2018 (thirty-four fewer). FAC ¶¶ 111-113. Ms. Winebarger's payment count has again been modified, but she has been harmed by PHEAA's failure to provide credit for her qualifying payments and the inability to plan her financial future. FAC ¶ 116.

Plaintiff Peter Gannon is a District of Columbia resident and federal government attorney who also has received credit from PHEAA for fewer qualifying payments than he has made (29 qualifying payments credited vs. 36 made). FAC ¶¶ 117-125. Plaintiff Jenise Overmier is also a District of Columbia resident and an academic librarian at a nonprofit university. She has made 49 qualifying payments through enrollment in PHEAA's automatic payment system and has never directed a payment toward some loans but not others. FAC ¶ 132. Yet Ms. Overmier has received credit at various times for different payment totals

among her multiple loans—including two different qualifying payment counts ten days apart, both of which included significant undercrediting. FAC ¶¶ 129-131.

## III. ARGUMENT

### A. Plaintiffs Adequately Plead Standing and Ripeness, and Ms. Winebarger's Claims Are Not Moot

#### 1. Plaintiffs Have Alleged an Injury in Fact

Standing requires a litigant to have a "personal stake" in a dispute's outcome by alleging (1) a concrete injury in fact, that is (2) fairly traceable to the challenged conduct, and would be (3) likely redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). PHEAA does not argue that Plaintiffs have not met the traceability or redressability prongs. To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016).

Plaintiffs allege that, in keeping with its existing, ongoing pattern and practice, PHEAA wrongly undercredited Plaintiffs multiple times for qualifying PSLF payments. FAC ¶¶ 111-13, 118, 121, 130-31. This practice has harmed Plaintiffs in several ways. First, PHEAA's practice of undercrediting qualifying payments is itself a present harm. In other contexts, courts have recognized plaintiffs' standing to sue over rights that similarly had yet to "vest" in order to challenge a threat to their vesting. *See, e.g., Thomas v. SmithKline Beecham Corp.*, 297 F. Supp. 2d 773, 799–801 (E.D. Pa. 2003) (finding standing for employees with colorable claim that they would fulfill requirements for future benefits who alleged that defendant failed "to keep track of vesting and eligibility credits"). Undercrediting also increases the amount of interest borrowers will have to pay overall, because the lifespan of their loans increases. Logically, some of that interest is already on the borrowers' accounts and is presently owed. FAC ¶¶ 163,

169, 177, 185, 194, 199, 204.

Second, Plaintiffs expect that they will be required to make more than 120 payments before their loans are forgiven, if they are at all. *Id.* ¶¶ 163, 169, 177, 185, 194, 199, 204. PHEAA does not appear to contest that this is a real, compensable injury in fact, quibbling only that they may fix the problem in the future. But PHEAA's practices create an increased risk of harm at the least—undercrediting can be expected to reoccur because it already has occurred to these borrowers several times. *Id.* ¶¶ 111-13, 118, 121, 130-31. The Ninth Circuit has recognized that a credible threat of harm is sufficient to constitute actual injury. *See* *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002) ("[P]laintiffs need not wait until the natural resources are despoiled before challenging the government action leading to the potential destruction"). Plaintiffs thus seek declaratory and injunctive relief in this matter, as well as damages. While PHEAA effectively asks the Court to deny standing until a plaintiff hits 121 credited payments, it would be grossly unfair to require Plaintiffs to wait until they are paying hundreds of dollars a month that they do not rightfully owe—a significant hardship to those on a public-interest salary—to first bring suit.

Third, PHEAA's denial of earned credit requires Plaintiffs to expend time and effort—which have actual value—to try to fix PHEAA's mistakes. *See, e.g.,* *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (time and effort spent monitoring credit card statements after a data breach to check for fraudulent charges constituted cognizable injury). Fourth, PHEAA's misconduct creates current uncertainty and emotional distress, as Plaintiffs cannot effectively plan their careers or their lives with no idea when or if their loans will be forgiven, despite doing everything that the program requires. FAC ¶¶ 116, 124, 134, 163, 170, 178, 186, 195, 200, 205; Wright & Miller, 13A Fed. Practice and Proc. § 3531.4 ("The anticipation of future injury may itself inflict present injury. Living with fear and uncertainty is itself a burden."). These harms are real

and directly attributable to PHEAA. Id. ¶¶ 159, 162, 168, 176, 184, 193, 198, 203.

2. PHEAA's Arguments About Standing Lack Merit

PHEAA incorrectly argues that Plaintiffs have not alleged an injury in fact because Plaintiffs' inability to plan their lives and the likelihood that Plaintiffs will have to overpay before their loans are forgiven are "hypothetical," "speculative," or not "immediate," "actual and imminent." Mot. at 7-9. PHEAA is wrong for at least three reasons.

First, injury in fact is primarily an issue in cases that involve the enforcement of *public* rights, which "involve duties owed 'to the whole community, considered as a community, in its social aggregate capacity.'" *See* *Spokeo*, 136 S. Ct. at 1551 (Thomas, J. concurring) (citation omitted). Any infringement of a *private* right, on the other hand, is amenable to legal redress, even those that involve intangible harms or cause only nominal damages. *Id*. at 1552 (noting that "courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded"). Plaintiffs allege that PHEAA's conduct creates claims for negligence, breach of fiduciary duty, breach of contract, and statutory violations. These claims are actionable private legal wrongs, even if the damages are not easily quantifiable. *See* *id.* at 1549 ("the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure"); *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 964 (N.D. Cal. 2008) ("a plaintiff who has established that a contract was breached is entitled to an award of nominal damages as the breach itself is a 'legal wrong that is fully distinct from the actual damages.'") (citing *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (Cal. Ct. App. 1959)).

Second, PHEAA wrongly asserts that Plaintiffs allege no past injury other than uncertainty, which it argues is not an injury. Mot. at 7-8. But PHEAA's cynical dismissal of the "fear" felt by Plaintiffs and others in their position need not be accepted by this Court. Mot. at 9. Plaintiffs' inability to make informed

decisions about their lives due to the uncertainty created by PHEAA is a real injury, and the cases PHEAA cites do not suggest otherwise. In *Gerbery v. Wells Fargo Bank, N.A.*, No. 13-CV-614-MMA DHB, 2013 WL 3946065, at *7 (S.D. Cal. July 31, 2013), the plaintiff lacked standing in part because he did not specify what other, better loan he could have obtained, which was necessary to identify and measure the extent of his injury. Here, Plaintiffs have not alleged damages based on measurement of an alternative, non-PSLF career path. Rather, Plaintiffs allege that PHEAA's ongoing misconduct harms their ability to make life decisions. FAC ¶¶ 116, 125, 135, 164. *Gerbery* does not support the idea that Plaintiffs must plead with particularity the myriad ways in which the mismanaged PSLF program adversely affects their daily lives. *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB AJWX, 2013 WL 3337784, at *7-8 (C.D. Cal. Mar. 20, 2013) is off point as well. There, a former customer alleged that Time Warner Cable's retention of his personal information after he closed his account deprived him of the ability to make informed privacy decisions. The court called this an "informational injury," which, to be actionable, required the defendant to have denied a request for information, which it had not. The court thus rejected the claim as a mere procedural injury. *Id*. Here, by contrast, PHEAA's mismanagement of the PSLF program is not an abstract procedural requirement; Plaintiffs live with these harms now, and they impact the current and future financial and career choices they can afford to make.

Third, PHEAA erroneously argues that Plaintiffs' future injury is not "immediate" and is "too theoretical" because it will not occur until 2023, if at all. Mot. at 9. But it is not theoretical that Plaintiffs will continue to meet the requirements of the PSLF program. Plaintiffs have alleged that they intended to use PSLF before they took out their loans, they have consistently made qualifying payments for years, they intend to continue to do so, and they have no other practical options if the possibility of PSLF exists. FAC ¶¶ 14, 17-19, 21-22, 24,

26, 30, 116, 128, 135. When this case was filed, Plaintiffs each were undercredited by PHEAA, and they realistically expect to be again, given that they have been undercredited repeatedly, recent government reports document widespread PSLF undercrediting problems, and the policies and practices that led to their injuries have not changed. FAC ¶¶ 96-97, 111-16, 118, 121, 130-31. An increased risk or likelihood of future harm here is not a chain of speculative possibilities, but is rather the probable consequence of the allegations. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

PHEAA again relies on inapposite authority to argue otherwise. In *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011), the court rejected the plaintiff's claim that he was damaged by the collection and tracking of his internet browsing history as "too theoretical" because his browsing history had not been transmitted to any third party. The plaintiff also did not allege any mechanism for how his information could be transferred, that transfer had happened before, that he was harmed, or that the defendant's existing policies created the harm. *Id*. In contrast, Plaintiffs here have alleged that PHEAA has repeatedly undercredited them and others due to poor recordkeeping and other failures, FAC ¶¶ 82-98, which supports a finding that future injury is likely and should be addressed with declaratory and injunctive relief.

In the other case on which PHEAA relies, the plaintiff alleged that the defendants failed to negotiate in good faith with an employee association group. *Contra Costa Cty. Deputy Sheriffs Ass'n v. Mitchoff*, No. 15-CV-00261-TEH, 2015 WL 1322577, *8 (N.D. Cal. Mar. 24, 2015). The court found that the claim was not ripe because the statutory negotiation period had not begun, and the plaintiff could not seek injunctive relief because it had not alleged that defendants had taken any adverse action. Here, Plaintiffs are well into their loan terms and have alleged

repeated "adverse actions." For this same reason, PHEAA's citation to *Birdsong* is unpersuasive. There, the court rejected the plaintiffs' claim that iPods could cause hearing loss because they did "not claim that they, or anyone else, ha[d] suffered or [we]re substantially certain to suffer hearing loss from using an iPod." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009). Plaintiffs here have alleged that they and countless others have been harmed by PHEAA's chronic mismanagement of the PSLF program. The threat that Plaintiffs will be undercredited before they make 120 qualifying payments and will therefore be denied timely forgiveness is neither speculative nor indefinite.

3. Plaintiffs' Claims Are Ripe for Adjudication

The doctrine of ripeness contains constitutional and prudential components, where the former "coincides squarely with standing's injury in fact prong," *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000), and the latter turns on "'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citation omitted). The "rationale" of the ripeness doctrine is "to prevent courts . . . from entangling themselves in abstract disagreements." *Id.* Here, the record is adequate to allow the Court to rule on the merits. *Id.* (discussing how "inadequacy of the record" affects ripeness where constitutional issues are concerned).

In arguments substantially identical to those regarding injury in fact, PHEAA argues that Plaintiffs' claims are not ripe because they depend on two contingencies: (1) that Plaintiffs will make 120 qualifying payments; and (2) that PHEAA will not correct Plaintiffs' payment counts by the time that happens. Mot. at 9-10. The first is speculation that Plaintiffs will not continue to do what they have committed to and continued to do in pursuing PSLF, which is unwarranted on a 12(b)(1) motion and is addressed above. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002) ("'We need not, and do not, speculate

as to the plausibility of [plaintiff's] allegations.'") (citation omitted). The second concedes that PHEAA has undercredited Plaintiffs but suggests that this injury is not actionable because PHEAA might fix its mistakes in the future. As addressed below, such an occurrence would not moot Plaintiffs' claims. PHEAA also assumes that no actual injury has yet occurred, but Plaintiffs' allegations do not require further factual development for this Court to consider and decide whether PHEAA's policies and practices violate Plaintiffs' rights. Further, Plaintiffs would face hardship without the Court's consideration of a remedy for both their past harms, which are unquestionably ripe, and their future harms, as they would have to continue to commit to a payment plan for several more years without any certainty that their loans would be forgiven even if they completed it.[2] *See In re Coleman*, 560 F.3d 1000, 1010 (9th Cir. 2009) (finding claims ripe where debtor would have to "commit[] to a Chapter 13 plan for three to five years without any guarantee that her student loans will be discharged at the end of this time period").

4. Ms. Winebarger's Claims Are Not Moot

A case becomes moot if "'requisite personal interest' . . . ceases to exist at any point during the litigation." *Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 425 (9th Cir. 2008). However, the burden to establish mootness is high. *See Nw. Envt'l Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988) (stating that the central "question is whether there can be *any* effective relief.") (emphasis in original). PHEAA incorrectly asserts that Ms. Winebarger's claims are moot because she "concedes her payment count is no longer inaccurate." Mot. at 10.

[2] These payment plans often do not significantly touch the balance of the debt or even the interest over the ten-year time frame. *See* Federal Student Aid, Income-Driven Plans Questions and Answers, *available at* https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven/questions (last accessed July 18, 2019) ("Under all of the income-driven repayment plans, your monthly payment amount may sometimes be less than the amount of interest that accrues on your loans . . . [A]ny unpaid interest not covered by your monthly payment will be capitalized (added to your loan principal balance) according to rules that vary depending on the repayment plan.")

First, Ms. Winebarger does not concede that her qualifying payment count is correct, although her most recent statement shows a smaller number of omitted qualifying payments. Regardless, a temporary fix by PHEAA would not affect Ms. Winebarger's ability to seek relief for past injury or forward-looking injunctive and declaratory relief. *See California Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1115-1116 (C.D. Cal 2015) (stating that even if one request for relief is met, "injunctive and declaratory relief remain available for [ ] claims where the challenged action is ongoing"); *Bernhardt*, 279 F.3d at 872 ("A live claim for nominal damages will prevent dismissal for mootness.").

Second, defendants are not free to "pick off" named plaintiffs to avoid class action litigation by voluntarily, selectively, and temporarily fixing problems. Ms. Winebarger's qualifying payments were repeatedly and consistently undercounted at least until she filed this lawsuit. Whatever action PHEAA takes now does not render her claims moot or defeat standing, nor does it create a jurisdictional issue; otherwise PHEAA could selectively fix the account of every borrower that came forward to challenge PHEAA's policies and practices. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice'") (citation omitted). PHEAA's own authority disallows this. *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143 (9th Cir. 2016) ("'To the extent that defendants may avoid a class action by 'picking off' the named plaintiffs, the class claims are 'inherently transitory' and evade review, making an exception to the mootness rule appropriate.'") (citation omitted). Courts will not dismiss claims where the defendant voluntarily addresses the harm but cannot satisfy the "'heavy burden of persua[ding]' the court that that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189 (citation omitted). PHEAA has not provided any basis to conclude that the policies and practices that

led to the undercrediting have been satisfactorily addressed and will not reoccur.

5. State Statutes Do Not Strip This Court of Jurisdiction

PHEAA argues statutory venue provisions strip this Court of jurisdiction over: (i) Plaintiffs' negligence claims to the extent those claims are grounded in duties imposed by Pennsylvania law, and (ii) Plaintiffs' claims brought pursuant to the District of Columbia's Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq*. (the "CPPA"). Mot. at 15, 24. PHEAA is wrong.

The Pennsylvania statute *does not* require actions to be brought in that state. 73 Pa. Cons. Stat. § 2270.5(b) says "[a]n action to enforce any liability created by [FCEUA] *may* be brought in any court of competent jurisdiction in [Pennsylvania]." "'May' is a permissive verb, and thus the provision PHEAA cites "does not mean that [plaintiffs] 'must' or 'shall' file suit in [Pennsylvania]." *Carl's Jr. Restaurants LLC v. 6Points Food Servs. Ltd.*, No. CV 15-9827-GHK (ASx), 2016 WL 3671116, at *4 (C.D. Cal. July 7, 2016). *See also* *E.J. Friedman Co. v. United States*, No. CV 90-3912 RG(Ex), 1992 WL 548137, at *3 (C.D. Cal. Apr. 2, 1992) (use of "may" "imparts no mandate").

PHEAA's argument also fails on supremacy clause grounds. "Pursuant to the supremacy clause" the federal diversity jurisdiction statute at 28 U.S.C. § 1332 "preempts any contrary state law." *U.S. Fid. & Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1132-33 (9th Cir. 2011) (quoting *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982)). "Jurisdiction . . . cannot be defeated by the extraterritorial operation of a [state] statute, even though it created the right of action." *Marshall v. Marshall*, 547 U.S. 293, 314 (2006). This is so even when a state statute purports in "mandatory terms" to vest jurisdiction in a non-federal court. *D.C. ex rel. Am. Combustion, Inc. v. Transam. Ins. Co.*, 797 F.2d 1041, 1045 (D.C. Cir. 1986). Accordingly, the Supreme Court and the Ninth Circuit "have long held" that states may not strip the federal courts of jurisdiction. *Wagner v. Church*, 208 F. Supp. 3d 1138, 1143 (D. Haw. 2016) (citing *Marshall*, 547 U.S. at

313; *Chicago & N.W.R. Co. v. Whitton*, 80 U.S. (13 Wall.) 270, 286 (1871); and *BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 788 (9th Cir. 2009)).

This is also true of the CPPA, even though the D.C. Code is an act of Congress. *See* *D.C. ex rel. Am. Combustion*, 797 F.2d at 1045-46. Congress has not "expressly provide[d]" that federal court jurisdiction over CPPA claims is improper: CPPA's "shall be brought" language does not suffice as a "clear[] state[ment]" of Congressional intent to restrict jurisdiction. *Id.* at 1043, 1045-47. Thus, D.C. Code § 28-3905(k)(2) "does not deprive federal courts of jurisdiction over CPPA claims," which "may be brought anywhere that a court has jurisdiction," including federal courts outside the District of Columbia. *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 64-65 (D.D.C. 2014) (ordering CPPA claim transferred to N.D. Cal.) (collecting cases); *accord* *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 590 (E.D. Pa. 2018) (rejecting "Defendants' argu[ment] that Plaintiffs fail to meet the venue requirements of [CPPA]").

**B. Plaintiffs' State-Law Claims Are Not Preempted**

PHEAA argues that Plaintiffs' state-law claims are preempted by the Higher Education Act's statement that loans like the ones at issue here "shall not be subject to any disclosure requirements of any state law." Mot. at 11 (citing 20 U.S.C. § 1098g). But Plaintiffs do not seek to impose any disclosure requirement. Plaintiffs are not claiming that PHEAA failed to disclose information to them, but rather that they are being deprived of credit they ought to be given under federal law.

PHEAA asserts express and conflict preemption. Mot. at 11-13. PHEAA's express preemption argument is essentially the same as Nelnet's and fails for the same reasons. *See* Plaintiff's Opposition to Nelnet's Motion to Dismiss (ECF No. 60) ("Nelnet Opp.") at 13-15 (citing *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 549-50 (M.D. Pa. 2018); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, No. 18-1531, 2019 WL 2636822, at *8 (7th Cir. 2019); *Daniel v. Navient Solutions, LLC*, 328 F. Supp. 3d 1319, 1324 (M.D. Fla. 2018); *Genna v. Sallie Mae, Inc.*, No.

11-cv-7371 (LBS), 2012 WL 1339482, at *9 (S.D.N.Y. Apr. 17, 2012)).

As to conflict preemption, PHEAA argues it should not be subject to state consumer protection laws because Congress wanted the law applying to loan servicing to be uniform, relying primarily on *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) and statements by the DOE. Mot at 12-13. *Genna*, 2012 WL 1339482 at *8-*9, rejected this argument for reasons equally applicable here. The court in *Genna* distinguished *Chae* because *Chae* dealt with collection activities, not loan servicing. The statements at issue in *Chae* were expressly governed by federal regulations which prescribed their content. The *Genna* court recognized that varying those requirements via consumer-protection law would conflict with relevant regulations, but PHEAA's accounting of qualifying payments is not similarly regulated, nor does PHEAA contend that it is. *See Genna*, 2012 WL 1339482 at *9 (distinguishing *Chae*, where "plaintiffs challenged written statements that were explicitly regulated and sanctioned by federal law"). Plaintiffs' claims are therefore compatible with the HEA and not preempted.

### C. Plaintiffs' Common-Law Causes of Action Must Proceed

#### 1. Negligence

PHEAA argues that Plaintiffs cannot claim negligence because PHEAA has no duty of care to Plaintiffs. Mot. at 14. Yet PHEAA plainly owes duties to borrowers to accurately count payments toward PSLF based on common law, its servicing contract, and Pennsylvania statute. *See* FAC ¶ 160.

##### a. *Common Law Duty to Prevent Foreseeable Harm*

PHEAA claims loan servicers do not owe general duties of care to borrowers. Mot. at 15. This rule of thumb is not categorical: "[w]hether a duty of care exists is a question of law to be determined on a case-by-case basis." *Clinton v. Select Portfolio Serv., Inc.*, 225 F. Supp. 3d 1168, 1172 (E.D. Cal. 2016). *See also Robinson v. Bank of Am.*, No. 12-CV-00494-RMW, 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012) (claim stated where bank "went beyond its role as a

'silent' lender in its dealings with plaintiff"); *Cunningham v. D.C. Sports & Entm't Comm'n*, No. Civ. A. 03-839RWRJMF, 2005 WL 3276306 (D.D.C. Nov. 30, 2005) (existence of a duty of care depends on the facts and circumstances of each case).

The Court must "balanc[e] various factors" to assess whether loan servicers owe borrowers a duty of care: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1056 (S.D. Cal. 2018)) (citing *Biakanja v. Irving*, 49 Cal.2d 647 (1958)). *See also High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1569-70 (D.D.C. 1987) (duty of care implicated where defendant lender "held itself out as the possessor of some skill in a public calling"); *Hughes v. Abell*, 794 F. Supp. 2d 1, 10 (D.D.C. 2010) (negligence adequately pleaded against lender). Here, all six factors favor Plaintiffs.[3]

First, and most fundamentally, the purpose of the PSLF program is to benefit borrowers. *See* 34 C.F.R. § 685.219(a) (intent "to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans"). This purpose contrasts with the conventional relationship between lender, loan servicer, and borrower, in which the sole purpose of the lender is to receive repayment with interest. Borrowers are transferred from other servicers to PHEAA when they file PSLF-specific paperwork. FAC ¶ 40.

Second, for the same reason, it is foreseeable that miscounting the number of qualifying payments and misinforming borrowers will harm them. *Cf. Romo v. Wells Fargo Bank, N.A.*, No. 15-cv-03708-EMC, 2016 WL 324286, at *9 (N.D.

---

[3] PHEAA's failure even to address several of the *Biakanja* factors is fatal to its argument. *See Way v. J.P. Morgan Chase Bank, N.A.*, No. 216CV02244TLNKJN, 2018 WL 2117630, at *8 (E.D. Cal. May 8, 2018).

Cal. Jan. 27, 2016) ("most federal district courts" have found that servicer has a duty of care to borrowers applying for loan modifications) (discussing *Alvarez v. BAC Home Loans Serv., L.P.*, 228 Cal. App. 4th 941 (Cal. Ct. App. 2014)).

Third and Fourth, as discussed above, PHEAA, by miscounting Plaintiffs' qualifying payments, caused certain injury to them which is closely connected to this deprivation of credit.

Fifth, PHEAA's conduct was blameworthy because "borrowers' ability to protect [their] own interests" in the accurate accounting of qualifying payments is "practically nil." *Alvarez*, 228 Cal. App. 4th at 949 ("[I]t is highly relevant" that a loan servicer "holds all the cards."). In the context of Congress' attempt to alleviate the heavy burden of student loan debt on public servants, negligence or malfeasance which defeats or defers this goal for borrowers flies in the face of not just the private interests of individual borrowers, but public policy as well.

Sixth, imposing a duty on PHEAA prevents future harm insofar as it would eliminate PHEAA's financial incentive to undercount payments and rein in its misconduct. *See Martinez v. Flagstar Bank, FSB*, No. 2:15-cv-01934-KJM-CKD, 2016 WL 3906810, at *7 (E.D. Cal. July 19, 2016) (describing servicer's duty of care for loan modifications).

b. *The Servicing Contracts*

Citing *Goonewardene* v. *ADP, LLC*, 434 P.3d 124, 138–40 (Cal. 2019), PHEAA rightly points out that California courts consider "a host of factors" to decide if a contract creates a duty of care. Mot. at 16. Yet PHEAA misrepresents *Goonewardene*, because, as the court there noted, the main points to consider are the six *Biakanja* factors discussed *supra*. Because all six factors favor finding a common law duty of care, they support finding a duty under the contract as well.

*Goonewardene* is also distinguishable on its facts. *First*, unlike employees served by a payroll processor, these Plaintiffs are in a program designed for their benefit. *See* 34 C.F.R. § 685.219(a). *Second*, Plaintiffs' ability to protect

themselves is "practically nil"; in *Goonewardene* labor statutes protected the employees' rights. 434 P.3d at 139-40. PHEAA argues that Plaintiffs may enforce their rights through the Administrative Procedures Act, Mot. at 16, but of course PHEAA, the wrongdoer here, is a private servicer not subject to the APA. *Third*, PHEAA states—without evidentiary support—that a duty of care to borrowers would "cause loan servicers to favor borrowers over the Department." Mot. at 17. This is a question of fact, and anyway, again, the very purpose of PSLF is to favor borrowers. Because PHEAA's arguments lack merit, and because the *Biakanja* factors favor plaintiffs, the servicing contract creates a duty of care.

c. *Pennsylvania Fair Credit Extension Uniformity Act*

PHEAA does not contest that the Pennsylvania Fair Credit Extension Uniformity Act creates a duty to borrowers but argues it is inapplicable because PHEAA is "acting as a loan servicer, not a creditor or debt collector." Mot. at 15. PHEAA, in its unique position as the recorder of qualifying payments for DOE, falls within the FCEUA definitions of *either* a "creditor," 73 Pa. Cons. Stat. § 2270.3 ("A person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed") or a "debt collector," *id.* ("A person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor"). The statute thus charges PHEAA with a duty to refrain from unfair practices. *See* 73 Pa. Cons. Stat. § 2270.4(a)–(b).

2. Breach of Fiduciary Duty

As with negligence, PHEAA argues Plaintiffs cannot state a claim for breach of fiduciary duty because PHEAA owed no such duty. Mot. at 19. Not so. Although a loan servicer does not owe fiduciary obligations to a borrower by default, a fiduciary relationship can arise if the servicer "expressly invites the borrower's reliance, confidence or trust . . . ." *Cobb v. Ocwen Loan Servicing,*

*LLC*, No. EDCV16-1659-JGB(KKx), 2016 WL 11520305, at *7 n.5 (C.D. Cal. Dec. 9, 2016); *see Tobon v. Nationstar Mortg. LLC*, No. 2:16-cv-08936-ODW (GJS), 2017 WL 8114978, at *4 (C.D. Cal. Apr. 4, 2017) (duty arises when the defendant "exceed[s] the scope of its conventional role as a loan servicer"). A fiduciary duty arises when a servicer "h[olds] itself out to customers as having expertise regarding their repayment options and, in fact, provided customers with advice regarding loan repayment, and specifically whether the program they were in would qualify them to have their loans forgiven." *See Daniel*, 328 F. Supp. 3d at 1325 (plaintiffs adequately alleged student loan servicer owed fiduciary duty).

PHEAA fills such a role. Unlike servicers overseeing common loans, PHEAA is the "exclusive servicer for the loans of public-servant borrowers tracking toward PSLF"—the borrowers have no choice. FAC ¶ 70. Thus, PHEAA "manag[es] all aspects of borrowers interaction with the PSLF program," including "guiding borrowers in pursuing employment certification, evaluating borrowers' qualifying payments, and submitting borrowers' loan forgiveness applications to DOE." *Id*. PHEAA takes pains to let borrowers know it is their PSLF resource. *See*, *e.g.*, FAC ¶ 69d (noting that PHEAA's FedLoan website invites borrowers to "[c]ontact a PSLF Specialist," and states, "[w]e are here to help you with every step of the process. Contact one of our Public Service Loan Forgiveness specialists at 855-265-4038 for more information."); 69e (pointing out that PHEAA informs borrowers transferred to FedLoan that it "will calculate and provide [borrowers] with notification of the number of qualifying payments [they] have made during the period(s) of qualifying employment"). It even advertises a dedicated Office of Consumer Advocacy, which it claims provides "assistance to consumers with problems and concerns related to their student loans that are owned or serviced by PHEAA." *Id.* ¶ 69g. As such, Ms. Winebarger alleges that PHEAA "did not merely service Plaintiffs' loans by sending Plaintiffs invoices and collecting their payments" and sets forth "facts from which a jury could find [a fiduciary]

relationship arose." *Daniel*, 328 F. Supp. 3d at 1325.

3. Breach of Contract

Third parties may sue under government contracts if they can show that there is a "clear intent" for them to benefit under the contrast.[4] *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) (noting that although "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries," this rule is far from absolute; parties may overcome it by showing "a clear intent to the contrary").

To evaluate such "clear intent," courts "examin[e] . . . the contract as a whole" to assess its "text and purpose" in light of the "circumstances of the transaction." *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1245 (9th Cir. 2009), *rev'd on other grounds,* 563 U.S. 110 (2011). Further, "when a contract is mandated by a federal statute, examination of intent includes the 'governing statute and its purpose.'" *Id.* (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 706 (4th Cir. 2007)). "That the [a]greement does not expressly state that it was entered into for the borrowers' benefit . . . [is] not fatal to Plaintiff's claim." *Marques v. Wells Fargo Home Mortg., Inc.*, No. 09-cv-1985-L(RBB), 2010 WL 3212131, at *4 (S.D. Cal. Aug. 12, 2010) (noting the "analysis of intended beneficiary status is not conditioned on such 'formalistic recitals'"). If, taken together, these items demonstrate an intent to benefit the third party, "the third party is an intended beneficiary with the right to enforce the contract, even if the contract does not expressly grant the third party the right to sue." *Id.*

Again, the purpose of the PSLF program is to benefit borrowers. *See* 34 C.F.R. § 685.219(a) (aim of the program is "forgiving the remaining balance of their Direct loans"). Indeed, the "core mission" of the loan program is to "ensure

[4] Contrary to PHEAA's suggestion that California law governs, Mot. at 19, federal common law controls the rights of third parties seeking to sue under a federal contract. *See* *Caltex Plastics, Inc.* v. *Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016).

that all eligible individuals benefit from federal financial assistance." Mot., Ex. 1, at 22 (2009 servicing contract). PHEAA, as the exclusive PSLF servicer, of course knows of this aim. *See* Marques, 2010 WL 3212131, at *4 (contract was for benefit of third-party borrowers where enabling act "directed the Treasury to implement a plan to maximize assistance to homeowners and encourage mortgage servicers to take advantage of government programs to minimize foreclosures").

Further, the individual servicing contracts state that DOE's "intent" is to "provide[] best of business services" and ensure that "borrowers will receive the highest quality support." FAC ¶¶ 77–78. The contracts also require that servicers shall: (i) "maintain proper controls over payment posting and accounting activities"; (ii) "establish a system and processes to correctly record all transactions on their database"; and (iii) "support servicing of all Direct Loans," including by "respond[ing to] and resolv[ing] customer complaints," and by providing information and counseling with respect to student loans that "respond to . . . questions and requests timely and accurately." Mot. Ex. 1 at 30, 52. Plaintiffs are thus beneficiaries of the servicing contracts, may sue to enforce them, and may recover damages. *See* Marques, 2010 WL 3212131, at *4-5 (contract which "goes beyond the hortatory pronouncements" and directs that servicer "shall" take actions to benefit borrowers is for borrower's benefit).

4. Breach of Implied-in-Fact Contract

"Whether or not an implied contract has been created is determined by the act[s] and conduct of the parties and all the surrounding circumstances involved and is a question of fact." *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 611-12 (Cal. Ct. App. 1981); *accord Bayatfshar v. ARINC, Inc.*, 961 F. Supp. 2d 206, 213 (D.D.C. 2013). Breach of an implied-in-fact contract is adequately pleaded where plaintiffs allege sufficient facts to imply breach of a mutually agreed-upon promise by the defendant. *See, e.g.*, *Smith v. Washington Post Co.*, 962 F. Supp. 2d 79, 88 (D.D.C. 2013); *Requa v. Regents of Univ. of*

*Calif.*, 213 Cal. App. 4th 213, 228 (Cal. Ct. App. 2012); *Kashmiri v. Regents of Univ. of Calif.*, 156 Cal. App. 4th 809, 829 (Cal. Ct. App. 2007).

As PHEAA rightly states, for rights to arise under an implied-in-fact contract, the facts must imply all the elements of a contract.[5] Mot. at 21. Those elements are satisfied in this case. PHEAA services the loans of Plaintiffs and the class *precisely because* those borrowers acted affirmatively—by submitting an Employment Certification Form—to confer on PHEAA the exclusive right to service their loan, along with all the attendant benefits and responsibilities, and to receive benefits in return. *See* FAC ¶¶ 70-73. PHEAA, in its PSLF-specific contract with DOE, consciously acknowledged and took on the responsibilities and benefits of this arrangement. *See* FAC ¶¶ 40, 81. In practical effect, PHEAA extended an offer to Plaintiffs and other borrowers: PHEAA would get the exclusive right to add (or retain) the borrower's loans in its portfolio and earn fees thereon for the life of the loan; and in exchange, the borrower would gain access to PHEAA's supposed specialized knowledge and experience with respect to the PSLF program, including PHEAA's supposed ability to provide borrowers with an accurate accounting of their progress toward loan forgiveness.[6] And in practical effect, borrowers accepted this offer by submitting an ECF. From these facts, taken together, a factfinder may reasonably find that Plaintiffs and PHEAA formed an enforceable contract, and thus the claim is well-pled.[7]

---

[5] PHEAA disputes only the *formation* of an implied-in-fact contract, not its breach. *See* Mot. at 20-21. Since the Complaint adequately pleads the existence of an enforceable implied-in-fact contract, there is no reason to dismiss.

[6] A promise to provide accurate accounting is quintessentially "definite enough that a court can determine the scope of the duty and the limits of performance," *Ladas v. Cal. State Auto. Ass'n*, 23 Cal. Rptr. 2d 810, 814 (Cal. Ct. App. 1993)—numbers are either right or wrong. PHEAA's vagueness argument (Mot. at 20-21) therefore falls short.

[7] An exchange of promises also is implied for reasons that apply to Direct Loan servicers more generally, as detailed in the Nelnet Opp. at 20-21.

**D. Plaintiffs' Statutory Causes of Action Must Proceed**

1. Equal Credit Opportunity Act

The ECOA is breached when: (a) a creditor; (b) discriminates against an applicant; (c) "because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a). Plaintiffs allege all three elements.

A "creditor" includes, among others, "any person who regularly arranges for the extension, renewal, or continuation of credit," or "any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." *Id.* § 1691a(e). PHEAA claims it is not a creditor, Mot. at 13, but Plaintiffs allege that it takes part in a "creditor['s]" activities. FAC ¶ 39. For example, PHEAA's power to determine PSLF qualifying payments for the DOE is participation in the decision to continue credit, because loans are forgiven on this basis.

Plaintiffs also allege "facts from which the Court could infer" that PHEAA discriminated against them because they participate in the PSLF program. *See* *Turner v. JPMorgan Chase, N.A.*, No. TDC-14-0576, 2015 WL 5021390, at *6 n.2 (D. Md. Aug. 21, 2015). PHEAA services both borrowers who seek PSLF and others who do not, and it is compensated based on the volume of loans it services. FAC ¶ 82. PHEAA thus has a financial incentive to undercount Plaintiffs' PSLF-specific qualifying payments to delay loan forgiveness. *See id.*

Finally, PSLF is form a public assistance income. FAC ¶ 189; *see* *Cervantez v. Sullivan*, 963 F.2d 229, 234 (9th Cir. 1992) ("Income is commonly defined to include gain from the discharge of indebtedness."). PHEAA argues that Plaintiffs have no 'current' public assistance income, Mot. at 14, but cites no definition of 'current' income, much less any authority requiring income to be 'current.' PHEAA's view would permit discrimination against applicants who reasonably anticipate—but have not yet cashed a check for—public assistance.

2. California UCL

PHEAA also challenges Ms. Winebarger's claims under the California Unfair

Competition Law (UCL), claiming that because Ms. Winebarger "will be required" to make additional payments, she has not "suffered injury in fact" or "lost money or property" due to unlawful or unfair business practices. Cal. Bus. & Prof. Code § 17204. PHEAA argues that Plaintiffs lack standing because they "will be required" to make additional payments, and thus have not lost money or property. Mot. at 22. This is incorrect. Although plaintiffs may not have lost money "as a technical matter," PHEAA's actions—here the persistent and repeated miscounting of their payments—"puts [their] interest[s] in . . . jeopardy." *Frazier v. Aegis Wholesale Corp.*, No. C-11-4850 EMC, 2011 WL 6303391, at *11 (N.D. Cal. Dec. 16, 2011). This suffices to establish UCL standing.

PHEAA claims Winebarger "fails to identify any California policy violated by PHEAA's conduct," or how PHEAA violated it, and thus does not assert a UCL claim against it. Mot. at 23. PHEAA is incorrect. Violation of *any* law—including conduct actionable at common law—supports a UCL claim. *See Application Grp., Inc. v. Hunter Grp., Inc.*, 72 Cal. Rptr. 2d 73, 89 (1998). Because Plaintiffs have pleaded several such causes of action, so too do they state a claim that PHEAA engaged in unlawful practices. *See supra* at III.C.

In addition, the UCL proscribes "unfair" business practices. Cal. Bus. & Prof. Code § 17200. An unfair practice exists where consumer injury (a) "is substantial," (b) "is not outweighed by any countervailing benefit to consumers or to competition," and (c) "is not an injury the consumers themselves could reasonably have avoided." *Rhodeman v. Ocwen Loan Servicing, LLC*, No. EDCV 18-2363 JGB (KKx), 2019 WL 2067227, at *9 (C.D. Cal. May 6, 2019). PHEAA cites inapposite case law concerning a defective product rather than apply the appropriate balancing test. Mot. at 23 (citing *Rice v. Sunbeam Prod., Inc.*, No. CV 12-7923-CAS(AJWx), 2013 WL 146270, at *9 (C.D. Cal. Jan. 7, 2013)). Such silence is telling; PHEAA does not (and could not) argue that its undercounting of qualifying payments "benefits consumers or competition." Mot. at 21. Nor does

it explain how a consumer "could reasonably have avoided" undercounting. *Id.*

3. District of Columbia Consumer Protection Procedures Act

PHEAA posits that loan servicers can never be subject to liability under the D.C. CPPA, because they supposedly "are not merchants" as defined. Mot. at 24. In both cases cited by PHEAA, defendants were collecting debts on behalf of an entity that had acquired delinquent loans from the loans' originators. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 948 (D.C. Cir. 2017) (against "a debt collector, attempting to recoup funds on behalf of a creditor who did not itself provide Appellant with any credit"); *Mushala v. US Bank, N.A.*, No. CV 18-1680, 2019 WL 1429523, at *2 (D.D.C. Mar. 29, 2019) (against, in relevant part, a servicer retained only after originator had "declared the [] loan in default" and a separate entity had then "acquired the Note"). Here, by contrast, PHEAA services loans on behalf of the loan's originator. This distinction matters greatly.

Several courts, including the D.C. Circuit in *Baylor*, have acknowledged that a "merchant," for CPPA purposes, "'is not limited to the actual seller of the product or services complained of,' but only 'must be a person connected with the supply side of a consumer transaction.'" *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 142-43 (D.D.C. 2011) (quoting *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981)). *See also, e.g.*, *Baylor*, 857 F.3d at 948; *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1004 (D.C. 1989) (defendant auctioneer, despite selling for others, was "clearly 'connected with the supply side' of the transaction."); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 175 (D.D.C. 2003) (consumer-merchant relationship adequately pleaded despite lack of direct contact between consumer and defendant drug manufacturer).[8] Therefore, *Baylor* and *Mushala* must be read to turn on the factual reality that debt collectors acting on behalf of downstream acquirers of distressed debt have no connection to the original

[8] Loans made to consumers are transactions that fall within the CPPA's scope. *See* D.C. Code § 28-3901(a)(7) ("goods and services" include "consumer credit").

borrower-lender relationship and thus no "connect[ion] with the supply side" of the consumer transaction. PHEAA's servicing contracts explicitly contemplate engaging PHEAA as the supplier's consumer-facing agent for all manner of information flow and ancillary services relating to the loans the originator made to consumers. FAC ¶¶ 75-81. Because PHEAA is so intimately connected to the supply side of the loan transactions at issue, it is a "merchant" under the CPPA.[9]

### E. PHEAA's Challenge to the Class Action Allegations Fails

PHEAA argues that the FAC's class action allegations should be dismissed for failure to comply with the 90-day time limit found in L.R. 23-3. But there is no such procedural mechanism in Rule 12(b) as "dismissing" class action allegations. Such a challenge on the face of the pleadings is typically styled as a motion to strike under Rule 12(f), but no motion to strike has been noticed here.

This argument also fails for the same reasons Nelnet's identical one does: the Ninth Circuit has invalidated L.R. 23-3. *See* Nelnet Opp. at 23-24 (discussing *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 426-27 (9th Cir. 2018)). In any event, Plaintiffs Overmier and Gannon first made their claims in the FAC filed June 7, fewer than ninety days ago.

## IV. CONCLUSION

For all the foregoing reasons, the Motion should be denied.

---

[9] PHEAA also argues that the FAC does not "specify which CPPA section gives rise to PHEAA's alleged liability." Mot. at 25. The Ninth Circuit "long ago rejected the argument that a specific statute must be named" in a complaint, "describing it as an 'attempt to evoke wholly out-moded technical pleading rules.'" *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004). There can be no doubt that the FAC's Seventh Cause of Action provides PHEAA with "fair notice of what the [CPPA] claim is and the ground upon which it rests"—*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) by: (i) invoking, as PHEAA notes, the CPPA's private right of action (D.C. Code § 28-3905(k)); and (ii) tracking in its allegations the CPPA's prohibition against unfair practices (FAC ¶ 202). *See* D.C. Code § 28-3904 ("It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice.")). PHEAA, in its memorandum, seems to have had no problem raising arguments it deems relevant. To the extent further specificity is needed, Plaintiffs should be granted leave to amend their pleadings.

Dated: July 22, 2019

Respectfully submitted,

**Pierce Bainbridge Beck Price & Hecht LLP**

By: */s/ Jonathan A. Sorkowitz*
Thomas D. Warren (SBN 160921)
Janine Cohen (SBN 203881)
355 S. Grand Avenue, Suite 4400
Los Angeles, CA 90017
Telephone: (213) 262-9333
twarren@piercebainbridge.com
jcohen@piercebainbridge.com

Jonathan A. Sorkowitz (*pro hac vice*)
277 Park Avenue, 45th Floor
New York, New York 10172
Telephone: (212) 484-9866
jsorkowitz@piercebainbridge.com

*Attorneys for Plaintiffs and for the proposed Class*

**Certificate of Service**

I certify that today, July 22, 2019, I electronically filed the foregoing **Plaintiffs' Opposition to Defendant Pennsylvania Higher Education Assistance Agency's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Federal Rules 12(b)(1) and 12(b)(6)** using the Court's CM/ECF system. All counsel of record who are registered in the CM/ECF system will be served with this document by email.

*/s/ Jonathan A. Sorkowitz*
Jonathan A. Sorkowitz